# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| TIFFANY LEWIS, on behalf of herself and others similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> REGISTER.COM, INC., <br><br> *Defendant*. | Case No. 1:25-cv-00275-JPH-MJD <br><br> CLASS ACTION COMPLAINT <br><br> JURY TRIAL DEMANDED |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
### MOTION TO DISMISS AMENDED COMPLAINT

Defendant Register.com, Inc. ("Register"), by and through its undersigned counsel, and pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), respectfully moves this Court for an Order dismissing the Complaint filed by Plaintiff Tiffany Lewis ("Plaintiff") on behalf of herself and others similarly situated.[1] In support of this request, Register states the following.

### INTRODUCTION

This is a case in which Plaintiff seeks to drag Register – a Florida-based company – to court in Indiana to defend against allegations that it violated the Telephone Consumer Protection Act ("TCPA"). Plaintiff's allegations are based upon her receipt of approximately ten phone calls in October of 2024, which she claims were prerecorded or automated.

---

[1] Defendant specially appears for the purpose of contesting the Court's exercise of jurisdiction in this matter. The filing of this Motion to Dismiss should not be construed as a waiver of the right to contest the exercise of personal jurisdiction. *See Adams v. Jackson*, 218 F. Supp. 3d 1006, 1008 (N.D. Ind. 2002) (defendant did not waive the right to object to personal jurisdiction by filing a motion to dismiss).

1

Plaintiff's Complaint is facially deficient and fails to establish that the Court may exercise personal jurisdiction over Register. It recites conclusory allegations and elements of a cause of action but is devoid of plausible factual support for the assertion that Register intentionally directed its activities toward the state of Indiana or even that it intended to call Plaintiff in the first place. Plaintiff's requests for injunctive relief and treble damages fare no better than her underlying TCPA claim. Plaintiff has neither alleged an imminent threat of impending harm nor sufficiently pled facts supporting the argument that Register acted "willfully" or "knowingly" – a requirement for enhanced damages under the TCPA. Given these circumstances, and for the reasons stated below, Register respectfully requests that this Court dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6).

## FACTUAL BACKGROUND

This is a putative class action premised upon alleged violations of the TCPA, 47 U.S.C. § 227. Plaintiff's Amended Complaint ("Am. Compl.") ¶ 1.[2] Plaintiff, a resident of Indiana, claims that in October of 2024 she began receiving telephone calls to which she had not provided prior consent, and which were artificial or prerecorded in nature and placed to her mobile phone, in violation of the TCPA. Am. Compl. ¶¶ 13-16. Plaintiff alleges that she received the following prerecorded message on her cellphone:

---

[2] Plaintiff's Complaint, originally filed on February 11, 2025, named Newfold Digital, Inc. ("Newfold") as the defendant. ECF 1. Prior to filing an answer or other responsive pleading, Defense counsel informed Plaintiff's counsel that Newfold – the parent company of Register.com, Inc, – had been improperly named as the defendant given that Newfold did not make calls on behalf of its wholly owned subsidiary, Register.com, Inc. Accordingly, Plaintiff filed a Consent Motion to Substitute Party naming Register.com, Inc. as the defendant on April 3, 2025. ECF 10. The following day, April 4, 2025, the Court denied Plaintiff's Motion, instructing that Plaintiff should instead file an Amended Complaint naming the proper defendant. ECF 11. Plaintiff did so on April 5, 2024, naming Register.com, Inc. as the defendant. ECF 12. Apart from the substitution, Plaintiff's Amended Complaint remained substantively the same as the original Complaint.

> This is Register.com calling in regard to your existing account. We need your immediate assistance with your account in order to avoid a possible interruption of your active service…

*Id.* ¶ 16.

Plaintiff's Amended Complaint characterizes the message as "generic" and "robotic" with "no pauses or breaks in speech as is common in a normal live speech pattern." *Id.* ¶ 18. Given these characteristics, Plaintiff concluded that the calls and/or messages were "prerecorded in nature." *Id.* ¶ 19. According to the allegations in the Complaint, Plaintiff received "at least 10 such calls" throughout October of 2024 and that "at least some of the calls" used "an artificial or prerecorded voice." *Id.* ¶ 14-15. Plaintiff alleges that the purportedly prerecorded calls were made to her cellular telephone number – (321) XXX-9800 without her consent. *Id.* ¶ 13.

Register is a web technology company incorporated under the laws of Delaware with its principal place of business in Florida. *See* Declaration of Bethena Dasher ("Dasher Decl.") ¶¶ 5-6. Register offers online services, specifically domain hosting services, including domain name registration, domain name transfers, domain expiration protection, and domain privacy services. *Id.* at ¶ 4. Plaintiff alleges that she is not and never was a customer of Register and has never had an account with the Company. Am. Compl. ¶ 23. Plaintiff also alleges that she did not provide her phone number to Register, and that she did not provide Register with consent to place automated or prerecorded calls to her cell phone. *Id.* ¶ 25. Plaintiff's Complaint suggests that the alleged pre-recorded calls were not directed to her specifically, but instead that Register made calls to her cellphone number "intending to reach someone other than, and unknown to, Plaintiff." *Id.* ¶ 13.

Plaintiff seeks several forms of relief including statutory damages, treble damages, and injunctive relief on behalf of herself and a proposed class of similarly situated individuals. *Id.* at 8 ¶¶ (e)-(g).

## DISCUSSION

**1. Plaintiff's Claim Should be Dismissed Because the Court Lacks Personal Jurisdiction Over Register.**

Apart from the substantive deficiencies of the Complaint (discussed below), Plaintiff's suit fails a threshold procedural requirement – establishing that this Court may exercise personal jurisdiction over Register. Plaintiff did not and cannot either allege or establish that Register is "at home" in Indiana or that the Company intentionally directed its conduct at the forum state. In light of these circumstances, this Court should dismiss Plaintiff's claim pursuant to Fed. R. Civ. P. 12(b)(2).

Here, Plaintiff brings her claims for relief under the TCPA. *Id.* ¶ 1. Because the TCPA does not authorize nationwide service of process in private actions, *see* 47 U.S.C. § 227(b)(3), Indiana's law governs the Court's exercise of personal jurisdiction over Register. *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)); *Collazo v. Enterprise Holdings, Inc.*, 823 F.Supp.2d 865, 868 (N.D. Ind. 2011) (citing *Tamburo v. Dworkin*, 602 F.3d 693, 700 (7th Cir. 2010) ("A federal court's personal jurisdiction is determined by the laws of its forum state.")). Indiana's long-arm statute allows courts to exercise personal jurisdiction to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment of the Constitution. *LinkAmerica Corp., v. Cox*, 857 N.E.2d 961, 967 (Ind. 2006). Thus, the determinative issue is whether the Court's exercise of personal jurisdiction over Register comports with federal due process standards. *Tamburo*, 602 F.3d at 700.

When a defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing that the exercise of personal jurisdiction over the defendant is proper. *Harlem Ambassadors Productions, Inc. v. ULTD Entertainment LLC*, 281 F.Supp. 3d 689, 692 (N.D. Ill. 2017). To satisfy this burden, the plaintiff must make a *prima facie*

showing of supportive jurisdictional facts. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). To decide whether the exercise of personal jurisdiction would be proper, the Court may consider the "record in its entirety" including "the facts from the well-pleaded allegations in [the plaintiff's] complaint" and "declarations submitted by both parties." *B.D. ex rel. Myer v. Samsung SDI Co.*, 91 F.4th 856, 864 (7th Cir. 2024).

Under federal law, personal jurisdiction may be either "general" or "specific." *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction allows the court to hear "any and all claims" against out-of-state defendants when "their affiliations with the [forum] [s]tate are so 'continuous and systematic' as to render them essentially at home in the forum [s]tate." *Id.* By contrast, the exercise of specific personal jurisdiction requires a connection between the defendant's activities in the forum state and the subject of the underlying controversy. *Id.* (opining that the exercise of personal jurisdiction is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.").

Here, the Complaint is silent as to the theory of jurisdiction under which Plaintiff is operating. Indeed, Plaintiff's Complaint makes no allegation whatsoever as to the basis of the Court's exercise of personal jurisdiction over Register. Rather, in the section of the Complaint dedicated to "Jurisdiction and Venue" Plaintiff provides allegations related only to the Court's subject matter jurisdiction and the propriety of venue in this district. But the propriety of venue and the exercise of personal jurisdiction over an out-of-state defendant are not necessarily coextensive and should not be conflated. Here, neither the exercise of general nor specific personal jurisdiction over Register would be proper under the Fourteenth Amendment's due process standards.

### A. General Personal Jurisdiction is Not Satisfied Because Register Does Not Have Continuous and Systematic Contacts with the State of Indiana.

The exercise of general personal jurisdiction is permitted only when the defendant has "continuous and systematic general business contacts" with the forum state. *Collazo*, 823 F.Supp.2d at 869. Under this "stringent" standard, the defendant's contacts with the forum state must be "extensive" such that "it can be treated as present in the state for essentially all purposes." *Id.* (citing *UBID*, 623 F.3d at 425-26). Put differently, the Court may exercise general jurisdiction over a defendant only when the defendant's affiliations with the forum state are so "continuous and systematic" as to render it essentially at home in the forum state. *Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir. 2012). A corporation may also be considered "essentially at home" both where it is incorporated and where its principal place of business is located. *Id.* However, attenuated connections to the forum state are insufficient for the exercise of general personal jurisdiction. *Goodyear*, 564 U.S. at 929.

Register is not "at home" in the state of Indiana. Register is a company incorporated under the laws of Delaware with its principal place of business in Florida. *See* Dasher Decl. ¶¶ 5-6.[3] Moreover, Register's minimal affiliations with the state of Indiana come nowhere close to satisfying the stringent standard required for the exercise of general personal jurisdiction. The United States Supreme Court has found the exercise of general jurisdiction to be appropriate when the defendant-company maintained an office in the forum state; kept company files in the forum state; drew checks and distributed salaries via banks in the forum state; and supervised the company's business operations from the forum state. *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437, 447-48 (1952). The same circumstances do not exist here.

---

[3] This information is easily accessible via public records provided by Delaware's Division of Corporations, available at https://icis.corp.delaware.gov/ecorp/entitysearch/NameSearch.aspx.

Register owns no offices or real estate in the state of Indiana and it does not conduct its general business in the state. Dasher Decl. ¶¶ 7-8. Although Register has customers all over the country, including some who purport to reside in the state of Indiana, this alone is insufficient to constitute a "continuous and systematic" presence in the state. *See Tamburo,* 601 F.3d at 701. Register offers web-based services to businesses throughout the country, but it does not specifically target customers in Indiana and does not derive a significant portion of its profits from residents in the state. Dasher Decl. ¶ 9; *see Illinois v. Hemi Group LLC*, 622 F.3d 754, 758 (7th Cir. 2010) (finding no general personal jurisdiction over defendant, which operated several interactive websites to market cigarettes that were sold to customers in the forum state). Simply put, Register's contacts with Indiana are not so "sufficiently extensive and pervasive" so as to "approximate physical presence" in the forum state and permit the exercise of general personal jurisdiction. *Id.*

### B. Specific Personal Jurisdiction is Not Satisfied Because Register's Alleged Contact with the State of Indiana in Relation to this Dispute was Random, Fortuitous, and Attenuated.

The exercise of specific personal jurisdiction over Register is similarly improper because Plaintiff's Complaint fails to allege that Register made any kind of intentional contact with the forum state in relation to the allegations underlying this dispute. "To support an exercise of specific personal jurisdiction, the defendant's contacts with the forum state must *directly relate* to the challenged conduct or transaction." *Id.*(emphasis added). However, the defendant's contacts with the forum state cannot be merely "random, fortuitous, and attenuated." *Id.* (internal quotation marks omitted) (quoting *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008)). Rather, the plaintiff must establish that the defendant (1) purposefully directed its activities at the forum state or purposefully availed itself of the privilege of conducting business

in the forum; (2) the alleged injury arises out of or relates to the defendant's forum-related activities; and (3) the exercise of personal jurisdiction would be fair and would comport with traditional notions of fair play and substantial justice. *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012).

Plaintiff's Complaint is devoid of any allegations establishing that Register purposefully directed any substantial conduct toward the state of Indiana – let alone substantial conduct related to the instant dispute. The alleged contact with the forum state at issue here – the alleged prerecorded or automated calls placed to Plaintiff's purported cell phone number without consent – does not suffice for jurisdictional purposes because the contact was merely "random, fortuitous, and attenuated." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (internal citations omitted) ("While a single act can support specific jurisdiction so long as it creates a 'substantial connection' with the forum, a defendant does not consent to jurisdiction 'solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person.'"). Put differently, the contact with the forum state arose by virtue of the *Plaintiff's* unilateral conduct, not through any intentional conduct of Register.

Generally, a mere phone call or voicemail directed toward the forum state is considered insufficient to establish personal jurisdiction over an out-of-state defendant. *See Rogers v. City of Hobart, Indiana*, 491 F. Supp. 3d 351, 357-58 (N.D. Ill. 2020). More specifically, the "Seventh Circuit has not decided whether a message (or call) sent to a forum-state cell phone number and received in the forum state constitutes purposeful direction in a TCPA suite[.]" *Weiss v. Grand Campus Living, Inc.*, No. 118CV00434JRSTAB, 2019 WL 1206167, at *2–3 (S.D. Ind. Mar. 14, 2019). However, when determining whether the defendant's conduct was purposefully directed at the forum state, courts in this circuit have considered whether the conduct was (1) intentional; (2)

8

expressly aimed at the forum state; and (3) and undertaken with the defendant's knowledge that its effects would be felt in the forum state. *See, e.g.*, *Lowe v. CVA Pharmacy, Inc.*, 233 F. Supp. 3d 636, 645 (N.D. Ill. 2017).

"In TCPA cases, district courts in this circuit and elsewhere treat allegations of transmissions sent to a forum-state cell phone as a significant, but not dispositive, factor for determining whether the requirements for purposeful direction are met." *Weiss*, 2019 WL 1206167, at *2–3. By way of example, in *Sojka v. Loyalty Media LLC*, the court declined to exercise personal jurisdiction over the defendant when the defendant's relevant contact with the forum state arose from a promotional text message sent to a phone number with an Illinois area code that was in the possession of an individual physically located in the state of Illinois. Case No. 14-cv-770, 2015 WL 2444506, at *3-4 (N.D. Ill. May 20, 2015). The text message's promotion could only be obtained by signing up in the defendant's Colorado-based pizza shop and could only be redeemed in person in Colorado. *Id.* at *3. Moreover, because the defendant neither sold nor delivered its pizzas to customers in Illinois, the Court reasoned that it was not reasonably foreseeable that its promotional text messages would "reach customers as far away as Illinois." *Id.* Given these circumstances, the Court concluded that the defendant's text messages did not reflect intent to serve the Illinois market, and, therefore, could not be characterized as "purposefully directed" toward the forum state. *Id.*

Here, the degree of intentionality and foreseeability in the caller's contact with Illinois is even less than that in *Sojka*. In this case, the call at issue was allegedly placed to a phone number bearing a "321" area code, which is associated with Orlando, Florida – not Indiana.[4] Moreover, the alleged content of the call was in no way "local" to Indiana – i.e., related to or relevant to

---

[4] *See Area Code List*, AREACODE.ORG, (last accessed Apr. 23, 2025), https://areacode.org/.

conduct or business operation in Indiana. Rather, the content of the call, as alleged by the Plaintiff, related to "service" of an "account." Am. Compl. ¶ 16. Nothing in Plaintiff's Complaint alleges that the "account" referenced in the call was based in, or serviced through, the state of Indiana. Nor has Plaintiff alleged any facts supporting the inference that the calls were intentionally directed at Indiana. And in fact, Plaintiff's Complaint alleges she had no account with Register. *Id.* ¶ 23.

In this regard, the call in the instant case is akin to the messages contemplated by the court in *Fiorentine v. Sarton Puerto Rico, LLC*, 486 F. Supp.3d 377 (D.D.C. 2020). There, the plaintiff complained of receiving unsolicited text messages on his cell phone (which bore a Puerto Rico area code) while he resided in the District of Columbia. *Id.* at 380. The defendant, a Puerto-Rico-based company, objected to the exercise of personal jurisdiction in the District of Columbia given that there was "no connection" between the defendant and the District of Columbia, "nor any affiliation between the District of Columbia and the specific claims asserted by [p]laintiff." *Id.* at 381. The Court agreed with the defendant's position, explaining that the defendant's contact with the District of Columbia arose only "by virtue [of the plaintiff's] unilateral decision to move to [the] jurisdiction," and the complaint was devoid of any allegation that the defendant was even aware of plaintiff's "relocation to the District of Columbia." *Id.* at 384. Because the plaintiff's "jurisdictional theory reli[ed] entirely on [the plaintiff's] unilateral decision to 'bring' the text message at issue into the district," the Court concluded that there was no "intentional conduct by the defendant" to support the exercise of jurisdiction. *Id.* at 387.

The Court should reach the same conclusion here, where Register's only allegedly relevant connection to Indiana stems from the fact that plaintiff *happened* to be physically located there at the time the calls were allegedly placed.[5] It was not foreseeable that a call made to a phone with a

---

[5] Although this decision stemmed from the District of Columbia, the Court's reasoning is nevertheless instructive here, given that its jurisdictional analysis was based upon the limitations of due process as

10

Florida-based area code would result in the message being received more than a thousand miles away in Indiana. Accordingly, Register respectfully requests that this Court dismiss Plaintiff's claims for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2).

**2. Plaintiff's Request for Injunctive Relief Must be Dismissed for Lack of Subject Matter Jurisdiction.**

Federal Rule of Civil Procedure 12(b)(1) requires a court to dismiss a case where there is no subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1); *see also Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009); *Ezekiel v. Michel*, 66 F.3d 894, 904 (7th Cir. 1995). Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const., Art. III, § 2. "Standing is an essential component of the case-or-controversy requirement." *Flynn v. FCA US LLC*, 39 F.4th 946, 952 (7th Cir. 2022). "[P]laintiffs must demonstrate standing for each claim they press and for each form of relief they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (standing is an "indispensable part of the plaintiff's case[.]"). The plaintiff must establish, and the Court must consider, whether a plaintiff has sufficient standing under Article III, even when Congress has created a statutory prohibition and a cause of action stemming therefrom. *Id.* at 426.

To satisfy Article III's standing requirements, a plaintiff seeking prospective injunctive relief must allege a "real and immediate threat of future violations of her rights." *Jett v. Warrantech Corporation, et al.*, 436 F. Supp. 3d 1170, 1177 (S.D. Ill. 2020); *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) (stating that "to establish injury in fact when seeking prospective

---

provided by the Fourteenth Amendment of the Constitution – the same standards the Court will apply under Indiana's long-arm statute here. *Id.* at 384 (explaining that both parties chose to "side step" the particularities of the D.C. long-arm statute in favor of analysis under the Constitution's due process limits.").

11

injunctive relief, a plaintiff must allege a 'real and immediate' threat of future violations of their rights"). Past exposure to illegal conduct does not in itself establish a present case for injunctive relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Moreover, a plaintiff may not "rely on the idea that other consumers *may be*" harmed by the defendant's allegedly unlawful conduct in order to establish that she has standing to pursue injunctive relief. *Jett*, 436 F. Supp. 3d at 1177 (emphasis added). This is true even when the plaintiff claims that a defendant "systematically" or regularly engaged in the allegedly wrongful conduct. *See Johnson v. ACA Helpline, LLC*, Cause No. 3:24cv663 DRL-SJF, 2025 WL 315578, at *2 (N.D. Ind. Jan. 24, 2025).

Here, Plaintiff's prayer for relief requests, among other things, injunctive relief that would enjoin "Defendant from continuing its violative behavior, including continuing to place calls to Plaintiff's cellular telephone number, and to the cellular telephone numbers of members of the [proposed] class in connection with which it uses an artificial or prerecorded voice[.]" Am. Compl. ¶ 8. Given the prospective relief requested, Plaintiff must allege facts that establish that there is a "real and immediate" threat of future harm. *TransUnion*, 594 U.S. at 435-36. Plaintiff has not and cannot plead facts sufficient to satisfy Article III's standing requirement.

Plaintiff's Amended Complaint alleges only past incidents of purported wrongdoing which occurred in October 2024 - several months prior to the filing of the request for injunctive relief. Am. Compl. ¶¶ 13-14 (stating that Plaintiff received approximately ten allegedly pre-recorded calls in October of 2024). These allegations do not satisfy Article III's standing requirements. *O'Shea v. Littleson*, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."). The only allegation purportedly tied to Plaintiff's request for injunctive relief is that "Defendant has acted or refused to act on grounds generally applicable to the members

12

of the class and subclass." Am. Compl. ¶ 59. The Complaint makes no mention of a threat of future harm and does not contend that Defendant will engage in violative behavior in the future.

Because Plaintiff's Amended Complaint is completely silent as to the issue of any immediate or threatened future injury, it cannot sustain her request for injunctive relief. The Supreme Court and the Seventh Circuit have consistently found that allegations of past wrongdoing, and speculative future harm will not suffice to establish a real and concrete threat of future injury that is required to confer standing under Article III. *Ramirez*, 594 U.S. at 431 (plaintiff may pursue "forward-looking" relief "so long as the risk of harm is sufficiently imminent and substantial."); *Scherr,* 703 F.3d at 1074 (when seeking prospective injunctive relief "a plaintiff must allege a 'real and immediate' threat of future violations of their rights[.]"). Accordingly, Plaintiff's claim for injunctive relief should be dismissed for lack of Article III standing, pursuant to Fed. R. Civ. P. 12(b)(1).

### 3. Plaintiff's Complaint Fails to Plead Sufficient Facts to Establish that Register's Alleged Violations of the TCPA were "Willful" and "Knowing" as a Matter of Law.

Under Fed. R. Civ. P. 12(b)(6), "[t]o survive a motion to dismiss, a complaint must plead more than conclusions; it must allege sufficient facts that make the plaintiff's claim plausible." *Sevugan v. Direct Energy Services*, *LLC*, 931 F.3d 610, 614 (7th Cir. 2019). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqubal*, 556 U.S. 662, 678 (2009). "Under this standard, a plaintiff who seeks to survive a motion to dismiss must 'plead some facts that suggest a right to relief that is beyond the speculative level.'" *Sevugan*, 931 F.3d at 614 (quoting *In re marchFIRST Inc.*, 589 F.3d 901, 905 (7th Cir. 2009)). "[A] formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's

13

liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft*, 556 U.S. at 678. These pleading standards extend to a plaintiff's request for specific forms of relief such a treble damages. *See, e.g.*, *Koeller v. Seemplicity Security Inc.*, Case No. 4_24-cv-00528-SRC, 2024 WL 4751306, at *4 (E.D. Mo. Nov. 12, 2024) (finding that plaintiff had "not sufficiently pleaded a claim for treble damages" and dismissing "treble-damages claim accordingly.").

To state a claim for relief under the TCPA, a plaintiff must plausibly allege that the "[d]efendant called his [or her] cell phone using an artificial or prerecorded voice for non-emergency purposes and without his [or her] express consent." *Lewerentz v. 1411 State Parkway Condominium Ass'n*, 748 F.Supp.3d 582, 586 (N.D. Ill. 2024). While there are statutory damages under the TCPA, the statute authorizes the Court to exercise its discretion and award treble damages only if it finds that the defendant "knowingly" or "willfully" violated the regulations. 47 U.S.C. § 227(c)(5). Although the term "knowingly and willfully" is not defined in the TCPA, courts in the Seventh Circuit have interpreted the phrase to encompass only "voluntary, intentional actions[.]" *See Hossfeld v. Allstate Insurance Co.*, 726 F. Supp.3d 852, 879 (N.D. Ill. 2024) (citing cases and "adopt[ing] this interpretation of the phrase 'knowing and willful'"); *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1151 (N.D. Ill. 2014) (willful or knowingly violation of TCPA requires defendant to have known of facts constituting the offense).

The heightened "knowing" and "willful" standard also arises with regard to the imposition of treble damages under other provisions of the TCPA. Thus, courts' interpretation and application of the standard in analogous contexts is instructive here. For example, the imposition of treble damages stemming from an unauthorized call placed to an individual on the "do-not-call" registry similarly requires the defendant to have "knowingly" and "willfully" violated the TCPA. *See*

14

*Koeller*, 2024 WL 4751306, at *3 (citing 47 U.S.C. § 227(c)(5)). Like the imposition of treble damages for "knowingly and willfully" making a prerecorded call without consent, a court will impose treble damages only when the defendant "purposely initiated a phone call to a residential telephone subscriber who had registered his or her telephone number on the do-not-call registry" with the knowledge that calling the number was unauthorized. *Id.* at *4. Applying this principle, the District Court for the Eastern District of Missouri dismissed a plaintiff's claim for treble damages arising under the TCPA when the complaint had not "alleged any facts showing that [the defendant] knew that [plaintiff] had registered his phone number on the do-not-call registry" nor "any facts showing that [defendant] purposely called a residential telephone subscriber who had registered his number on the do-not-call registry." *Id.* at *5. Thus, to state a claim for the imposition of treble damages under the TCPA, the plaintiff must do *more* than simply assert that the defendant violated the TCPA. Rather, the plaintiff must allege that the defendant *intentionally* called the plaintiff with *knowledge* that it lacked the requisite authorization or consent to do so.

Although Plaintiff's prayer for relief includes a request for treble damages, the Amended Complaint is devoid of any allegation that would satisfy the heightened "willful" and "knowing" standard. Rather, Plaintiff's assertions regarding Register's alleged "willful" and "knowing" conduct are nothing more than legal conclusions poorly disguised as factual assertions. The Court need not and should not accept these bare-bones assertions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff states that Register "willfully and knowingly used an artificial or prerecorded voice in connection with calls it placed to Plaintiff's cellular telephone number" but provides no additional facts to support the assertion that Register *intentionally* called Plaintiff with knowledge that it lacked her consent to do so. Am. Compl. ¶ 62. Courts throughout the country have rejected

requests for enhanced damages when faced with similarly deficient allegations. *See, e.g.*, *Weingrad v. Top Healthcare Options Insurance Agency Co.*, Civil Action No. 23-5114, 2024 WL 4228149, at *5 (E.D. Penn. Sept. 17, 2024) (dismissing claim for treble damages when there was no evidence that the defendant knew it performed violative conduct and the complaint merely alleged that the defendant's "violations were negligent, willful or knowing."); *Perrigo v. Premium Asset Services*, No. 2:14-cv-1052-GMN-PAL, 2015 WL 4597569, at *7 (D. Nev. July 28, 2015) (finding that the award of treble damages was not warranted when plaintiff provided only "conclusory" and "self-serving statements to support his allegation that" the defendant's violations of the TCPA were willful); *Lary v. Trinity Physician Financial & Ins. Services*, 780 F.3d 1101,1107 (11th Cir. 2015) (plaintiff's "bare assertion" in the "complaint that the defendants 'willfully' and 'knowingly' violated the Act was a legal conclusion, not an allegation of fact that [the court] must accept as true."); *Margulis v. Surrey Vacation Resorts, Inc.*, Case No. 4:14-cv-01131-JAR, 2017 WL 2242555, at *1 (E.D. Mo. May 23, 2017) (declining to award treble damages "solely on the basis that [d]efendant knew it was making the call to [p]laintiff" when there was no evidence that the defendant knew its call was unsolicited). The Court should reach the same result here.

Ironically, the allegations in Plaintiff's Amended Complaint allege the opposite of willful and intentional conduct, instead asserting that Register's calls were *not* intended for Plaintiff at all. In contradiction to the assertion that Register acted "knowingly" and "willfully" Plaintiff states that "[i]n October of 2024, Defendant began placing calls . . . *intending to reach someone other than, and unknown to, Plaintiff.*" Am. Compl. ¶ 13 (emphasis added). Plaintiff's conclusory and contradictory assertions do not suffice to establish that Register's alleged conduct was undertaken with the requisite level of intent necessary for the imposition of treble damages. Under such

16

circumstances, the imposition of treble damages would be inappropriate and the Court should accordingly dismiss Plaintiff's claim for enhanced damages.

## CONCLUSION

For the foregoing reasons, Defendant Register.com, Inc., respectfully requests that this Court dismiss Plaintiff's Amended Complaint.

Dated: April 28, 2025

                                                                Respectfully submitted,

                                                                */s/ A. Jeff Ifrah*
                                                                A. Jeff Ifrah
                                                                Ifrah PLLC
                                                                1717 Pennsylvania Ave. NW
                                                                Suite 650
                                                                Washington, D.C. 20006
                                                                Email: jeff@ifrahlaw.com
                                                                Phone: (202) 524-4142

                                                                *Counsel for Defendant Register.com, Inc.*

## Certificate of Service

I hereby certify that on this 28th day of April 2025, I filed the foregoing with the Court's electronic filing system, which will automatically provide notice to all counsel of record.

Dated: April 28, 2025

/s/ A. Jeff Ifrah
A. Jeff Ifrah