UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| TIFFANY LEWIS, on behalf of herself and others similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> REGISTER.COM, INC., <br><br> *Defendant*. | Case No. 1:25-cv-00275-JPH-MJD <br><br> CLASS ACTION COMPLAINT <br><br> JURY TRIAL DEMANDED |

**DEFENDANT'S MOTION TO STRIKE CLASS ACTION ALLEGATIONS**

Pursuant to Federal Rule of Civil Procedure 23, Defendant Register.com, Inc. ("Defendant" or "Register")[1] respectfully moves this Court to strike Plaintiff's class allegations. In support of this Motion, Defendant states the following.[2]

**I.   INTRODUCTION**

Class actions are an exception to the general rule that litigation is to be conducted by and on behalf of individual parties. *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979). The principal purpose of a class action is to achieve "efficiency and economy of litigation" by allowing claims common to a large group of individuals to be resolved in a single proceeding. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982). However, this objective is undermined

---

[1] On July 25, 2025, Register.com, Inc., merged with Network Solutions, LLC. For the sake of clarity and consistency with the current case caption, Defendant is referred to herein simply as "Register" or the "Company". A Motion for Substitution of Party pursuant to Fed. R. Civ. P. 25 is forthcoming.

[2] The filing of this Motion should in no way be considered a waiver of Defendant's right to object to the Court's exercise of personal jurisdiction. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction remains pending before the Court.

when "the complexities of class action treatment outweigh the benefits of considering common issues in one trial." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001). When "each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually," the District Court should exercise its discretion to prevent the claims from being adjudicated on a class-wide basis. *Id.*

Here, the class allegations contained within Plaintiff's Amended Complaint are facially deficient. They fail to satisfy the most basic tenets of Rule 23 and instead provide for a broad and undefinable class composed of individuals who share no common characteristics or grievance with the Plaintiff – the proposed class representative. Most detrimentally, identification of the class members and determination of the merits of their claims would require individualized and fact-specific inquiries, entirely antithetical to the purposes of the class action mechanism. As a result, the Plaintiff's proposed class definition does not meet the ascertainability, commonality, typicality, or predominance requirements imposed by Rule 23.[3] Given these circumstances, Defendant respectfully requests that this Court strike the class allegations within Plaintiff's Amended Complaint

## II.     RELEVANT FACTUAL BACKGROUND

This is a putative class action premised upon alleged violations of the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227. Plaintiff's Amended Complaint ("Am. Compl.") ¶ 1. Plaintiff contends that the Defendant violated the TCPA, beginning in October of 2024 when she began receiving telephone calls from Register.com, to which she had not provided prior

---

[3] Defendant does not concede that any of the requirements of Rule 23 are satisfied by Plaintiff's class definition. However, for purposes of this briefing, Defendant will focus on the issues of commonality, typicality, predominance and ascertainability – any of which should be dispositive as to the viability of Plaintiff's class action allegations.

2

consent, and which were artificial or prerecorded in nature and placed to her mobile phone. *Id.* ¶¶ 13-16. Plaintiff alleges that she received the following prerecorded message on her cellphone:

> This is Register.com calling in regard to your existing account. We need your immediate assistance with your account in order to avoid a possible interruption of your active service…

*Id.* ¶ 16.

Plaintiff's Amended Complaint characterizes the message as "generic" and "robotic" with "no pauses or breaks in speech as is common in a normal live speech pattern." *Id.* ¶ 18. Given these characteristics, Plaintiff concluded that the calls and/or messages were "prerecorded in nature." *Id.* ¶ 19. According to the allegations in the Amended Complaint, Plaintiff received "at least 10 such calls" throughout October of 2024 and "at least some of the calls" used "an artificial or prerecorded voice." *Id.* ¶ 14-15. Plaintiff alleges that the purportedly prerecorded calls were made to her cellular telephone number – (321) XXX-9800 without her consent. *Id.* ¶ 13.

Register is a web technology company that offers online services, specifically domain hosting services, including domain name registration, domain name transfers, domain expiration protection, and domain privacy services. *See* Declaration of Bethena Dasher ("Dasher Decl.") ¶ 5. When an individual wishes to receive more information about Register's services, they can complete a contact form through which he or she is prompted to provide their basic biographical information, including his or her name, phone number, and email address. *Id.* ¶ 7. These inquiring users are also explicitly advised that "[b]y submitting [their] information" to create an account, they "expressly consent to [Defendant] and its affiliates contacting [them]." *Id.* ¶ 8. Inquiring users are also advised of the following:

> By submitting your information, you expressly consent to [Defendant] and its affiliates contacting you regarding your services and offering new services via the contact information you provide (including your mobile phone number), via an automatic telephone dialing system or pre-recorded call. You are not required to

> give consent in order to make a purchase with us or our affiliates and you can find additional information in our Privacy Policy.

*Id.* ¶ 9.

Similarly, when an individual seeks to create an account on Register, he or she is required to provide basic biographical information, such as name, phone number, and email. *Id.* ¶ 10. Registering users are similarly advised that by providing their telephone number, they are consenting to be contacted by Register. *Id.* ¶ 11. Thus, all inquiring individuals and new customers are prominently advised that by submitting their contact information to Register, they are providing express consent to be contacted in relation to the Register's services and/or their account.

Plaintiff alleges that she is not and never was a customer of Register and has never had an account with the Company. Am. Compl. ¶ 23. Plaintiff also alleges that she did not provide her phone number to Register, and that she did not provide Register with consent to place automated or prerecorded calls to her cell phone. *Id.* ¶ 25. Plaintiff's Complaint suggests that the alleged pre-recorded calls were not directed to her specifically, but instead that Register made calls to her cellphone number "intending to reach someone other than, and unknown to, Plaintiff." *Id.* ¶ 13.

Plaintiff filed the instant action on February 11, 2025, and subsequently filed an Amended Complaint on April 5, 2025. Therein, Plaintiff alleged that the Defendant violated the TCPA by using an artificial or prerecorded voice in connection with non-emergency calls placed to telephone numbers assigned to a cellular telephone service, without prior express consent. *Id.* ¶ 3. Plaintiff sought relief on behalf of herself and a proposed class, which she defined as the following:

> All persons throughout the United States (1) to whom Register.com, Inc. placed a call, (2) directed to a number assigned to a cellular telephone service, but not assigned to an [sic] Register.com, Inc. customer or account holder, (3) in connection with which Register.com, Inc. used an artificial or prerecorded voice, (4) from four years prior to the filing of this case through the date of class certification.

*Id.* ¶ 32. Plaintiff's Amended Complaint also contained threadbare recitals of the elements required for Rule 23, *id.* ¶¶ 34-44, and attempted to identify "questions of law and fact common to the members of the class" including, in relevant part, Defendant's alleged violations of the TCPA; Defendant's conduct in dialing wrong or reassigned cellular telephone numbers; Defendant's practice of placing calls with an artificial or prerecorded voice to wrong or reassigned cellular telephone numbers; the use of an artificial or prerecorded voice; and the availability of statutory penalties. *Id.* ¶ 50.

### III. LEGAL STANDARD

Motions to strike class allegations are evaluated under Federal Rule of Civil Procedure 23, which directs that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). This rule, when read in conjunction with Fed. R. Civ. P. 23(d)(1)(D), empowers the court to dismiss or strike class actions at the pleading stage. *Murdock-Alexander v. Tempsnow Emp.*, 2016 WL 6833961, at *3 (N.D. Ill. Nov. 21, 2016); *Wright v. Fam. Dollar, Inc.*, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010) ("[A] motion to strike class allegations, made pursuant to [Rule 23(c)(1)(A) and 23(d)(1)(D)] is an appropriate device to determine whether the case will proceed as a class action."); *Valentine v. WideOpen West Finance, LLC*, 288 F.R.D. 407, 414 (N.D. Ill. 2012) (motions to strike class allegations "may properly be filed before plaintiffs move for class certification and before class discovery has been conducted."). Accordingly, the Court may consider the issue of class certification even before the parties have conducted discovery and before the plaintiff moves to certify. *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011). "The standard for evaluating whether class allegations should be stricken is the same as that for class certification, as is laid out in Rule 23(a)." *Valentine,* 288 F.R.D. at 414.

Pursuant to Fed. R. Civ. P. 23, a class may be certified only if "'the trial court is satisfied, *after a rigorous analysis*, that the prerequisites of Rule 23(a) have been satisfied.'" *Physicians Healthsource, Inc. v. Allscripts Health Solutions, Inc.*, 254 F.Supp.3d 1007, 1019 (N.D. Ill. 2017) (emphasis in original) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011)). To this end, Rule 23 imposes the following threshold requirements for certification:

(1) **Numerosity**: the class is so numerous that joinder of all members is impracticable;

(2) **Commonality**: there are questions of law or fact common to the class;

(3) **Typicality**: the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) **Adequacy of Representation**: the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Satisfaction of these requirements, however, does not end the inquiry. Assuming the Plaintiff can satisfy Rule 32(a)'s threshold requirements, she must also establish that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that a "class action is superior to other methods of adjudication." Fed. R. Civ. P. 23(b)(3).

Finally, although not an express requirement of Rule 23, Seventh Circuit precedent requires the plaintiff to demonstrate that the class definition is "definite enough that the class can be ascertained." *Jamison v. First Credit Services, Inc.*, 290 F.R.D. 92, 108 (N.D. Ill. 2013) (internal quotation marks omitted) (quoting *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006)). To this end, the plaintiff must also provide a "workable class definition by showing that the members of the class are identifiable." *Wolfkiel v. Intersections Insurance Services Inc.*, 303

F.R.D. 287, 293 (N.D. Ill. 2014). Courts within this circuit agree that reference to objective criteria and reference to the defendant's conduct can provide the basis for identifying members of the class. *Id.*

### IV.   ARGUMENT

The TCPA, as relevant here, prohibits the use of an artificial or prerecorded voice to make calls to cell phone numbers other than for emergency purposes without "the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). Here, Plaintiff's claims arise under the TCPA and are premised upon her alleged receipt of several pre-recorded messages from Defendant. Plaintiff claims that she has no business relationship with and has never been a customer of Defendant. Am. Compl. ¶ 23. Plaintiff also asserts that she has never had an account with Defendant, that she never provided her phone number to Defendant, and never consented to receive calls from Defendant. *Id.* at ¶¶ 23-25. Against this backdrop, Plaintiff defines the class as the following:

> All persons throughout the United States (1) to whom Register.com, Inc. placed a call, (2) directed to a number assigned to a cellular telephone service, but not assigned to an Register.com, Inc. customer or accountholder, (3) in connection with which Register.com, Inc. used an artificial or prerecorded voice, (4) from four years prior to the filing of this case through the date of class certification.

Amended Compl. ¶ 32.

Plaintiff's proposed class cannot survive the "rigorous analysis" required under Fed. R. Civ. P. 23. *See Simpson v. Dart*, 23 F.4th 706, 711 (7th Cir. 2022). This is because Plaintiff's class definition reaches broadly enough to include not only individuals like Plaintiff, who were allegedly never customers or accountholders with Register – but *also*, any individual who may have previously held an account with Register but is no longer a customer or the holder of an active account. These individuals are herein referred to as the "Former Customer Members." Similarly, the proposed class would be broad enough to include individuals who voluntarily submitted an

7

inquiry form to Register, thereby providing their telephone number and consent to be contacted by Register, but never created an account or otherwise registered a domain with Register. These individuals are herein referred to as the "Inquiring Members." Given these circumstances, a significant subsection of the proposed class may have previously (1) provided their phone number to Defendant voluntarily; and (2) consented to be contacted by Defendant with pre-recorded or artificial voice messages.

In this regard, the class definition in this case is similar to that considered in *Vigus v. Southern Ill. Riverboat/Casino Cruises*, Inc., 274 F.R.D. 229 (S.D. Ill. 2011). Like Plaintiff here, the plaintiff in that case alleged a violation of the TCPA on the basis that he had received eight pre-recorded calls from a casino, notwithstanding the fact that he had never consented to be contacted by and had never been a customer of the casino. *Id.* at 232. Rather, the plaintiff alleged that he was the subscriber of a re-assigned telephone number that had previously belonged to a customer of the casino. *Id.* at 233. The *Vigus* plaintiff defined his class to include, "[a]ll persons in the United States who were called, on or after March 1, 2004, on either (1) a residential telephone line or (2) a cellular telephone service, by or on behalf of Defendant using a prerecorded voice to deliver a message promoting Defendant's Casino." *Id.* In rejecting the plaintiff's proposed class definition, the Court observed that it "included a substantial number of people who voluntarily gave their telephone numbers to the casino," and, therefore, had "no grievance with the casino" under the TCPA. *Id.* at 235. As a result, the Court opined,

> [c]ertifying this case as a class action would not achieve economies of time, effort or expense because of the numerous individual questions that would need to be answered to reach a fair and just result on the issue of liability. On the contrary, it would burden the Court and the litigants with the arduous task of sifting through each putative class member's claim to determine its merits on a case-by-case basis. This is unacceptable, especially where putative class members who were actually aggrieved by the Casino's acts have a quick, adequate and superior remedy in other

8

> more speedy venues such as, for example, a state small claims court. Additionally, in cases such as this, there is no need for uniform results because putative class members' differing situations are likely to warrant different results.

*Id.* at 238.

Here too, allowing Plaintiff's claim to proceed on a class-wide basis would be antithetical to the principles and purposes underlying Rule 23. The typicality and commonality requirements cannot be satisfied because Plaintiff's claims do not have the same essential characteristics as the class at large and there exists no common nucleus of operative fact amongst the potential class members. Further, the more stringent predominance requirement cannot be satisfied given that common questions of law and fact do not predominate the class and the identification and adjudication of the class members' claims would require individualized and fact-intensive inquiries, rather than generalized, class-wide proof. Finally, Plaintiff's proposed class definition is overly broad and not ascertainable because it includes individuals who have no grievance under the TCPA. For these reasons, and those discussed in further detail below, Defendant respectfully requests that this Court grant the Motion to Strike the Class Allegations from Plaintiff's Amended Complaint.

### a. Plaintiff's Proposed Class Fails to Meet the Requirements of Commonality and Typicality.

To establish commonality a plaintiff must do more than merely raise common questions – even in droves. *Wal-Mart Stores, Inc v. Dukes*, 564 U.S. 338, 350 (2011). Rather, the plaintiff must show that a class-wide proceeding will generate common answers apt to drive the resolution of the litigation. *Id.* "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question" and the commonality requirement cannot be satisfied. *Messner v. Northshore Univ.*

*Health System*, 669 F.3d 802, 815 (7th Cir. 2012) (internal quotation marks omitted) (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)).

Typicality is closely related to commonality, *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998), and requires that the claims or defenses of the named plaintiff be typical of the claims or defenses of the class. *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009). This means that the claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [the] claims are based on the same legal theory." *Oshana,* 472 F.3d at 514 (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). "Even though some factual variations may not defeat typicality, the requirement is meant to ensure the named representative's claims 'have the same essential characteristics as the claims at large.'" *Id.* (cleaned up) (quoting *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 597 (7th Cir. 1993)). Plaintiff's proposed class definition is facially deficient on both fronts.

Plaintiff's proposed class definition precludes a finding of typicality for several reasons. First, Plaintiff claims that she never provided consent to be called by Defendant. Second, Plaintiff argues that she has never been a customer of Register.com and asserts that she was not the intended recipient of the alleged calls. Am. Compl. ¶ 13. In this regard, Plaintiff's claims are distinguishable from and not representative of the Former Customer Members (those in the proposed class who were once, but are no longer, active customers of Register.com) or the Inquiring Members (those who provided their telephone number and consent to be contacted by Register but never became a customer or account holder with Register).

Unlike Plaintiff, the Former Customer Members and Inquiring Members generally have consented to being contacted by Register and likely even anticipated (at a previous point in time) that they would be contacted by Defendant for informational purposes or maintenance and

10

monitoring related to the domain hosting services provided by Defendant.[4] The fact that the Former Customer Members were previously but are no longer active customers of Register.com does not change these circumstances. Similarly, the Inquiring Members' failure to ultimately become an active account holder with Register does not negate their consent to be contacted in the first place. Further, the calls placed to Former Customer Members and Inquiring Members are characteristically distinguishable from the calls allegedly placed to Plaintiff. The Former Customer and Inquiring Members were the intended recipient of the calls – even if they were no longer (or never were) active customers of Register's services. By contrast, Plaintiff asserts that the calls she received from Defendant were intended to reach someone other than, and unknown to, Plaintiff. Am. Compl. ¶ 13. Plaintiff's cellular telephone number was allegedly called intentionally by Defendant, but Plaintiff was not the intended recipient of the call. Am. Compl. ¶ 13. Rather, the intended recipient, was allegedly the previous subscriber of Plaintiff's Telephone Number – i.e., a customer of Register who provided consent to be contacted by the company but had failed to provide notice to Register that his telephone number may have been reassigned. Given these circumstances, Plaintiff's claims do not have the same essential characteristics as the class at large, and, therefore, do not satisfy Rule 23's typicality requirement. *Retired Chi. Police Ass'n*, 7 F.3d at 597.

Similarly, the proposed class also fails to satisfy the typicality requirement because Defendant has at least arguable defenses regarding the issue of consent with regard to the Former Customer and Inquiring Members. *CE Design TLd. V. King Architectural Metals*, Inc., 637 F.3d 721, 726 (7th Cir. 2011) ("The presence of even an arguable defense peculiar to the named plaintiff

---

[4] Indeed, Defendant was required by the Internet Corporation for Assigned Names and Numbers (ICANN) to make reasonable efforts to contact its customers when their domain was at risk of being lost, transferred, etc. *See Transfer Policy*, ICANN, https://www.icann.org/en/contracted-parties/accredited-registrars/resources/domain-name-transfers/policy (last accessed Aug. 20, 2025).

11

or a small subset of the plaintiff class may destroy the typicality of the class as well as bring into question the adequacy of the named plaintiff's representation."). Plaintiff's theory of liability is premised upon an alleged lack of consent to be contacted by Defendant through the use of a prerecorded or artificial voice recording. Am. Compl. ¶ 25. But as noted above, certain members of the class – particularly, the Former Customer and Inquiring Members – may have previously provided and never revoked consent to be contacted by Defendant in this manner.

By way of example, consider a scenario in which a fictional Former Customer Member, "Mr. Smith," previously created a customer account with Register. During that process, Mr. Smith voluntarily provided his cellular telephone number as a means by which he could be contacted by the company and expressly consented to being contacted by Register. Mr. Smith eventually allowed his account with Register to lapse and become inactive but never revoked his consent to be contacted by the Company. Under such circumstances, Defendant could present a viable defense against Mr. Smith's TCPA claim, given that the requisite element for liability – a lack of consent – could easily be disputed. This example shows that Defendant, at the very least, has an arguable defense against a subset of the proposed class. This defense would be substantively different from any defense presented against claims brought by Plaintiff – who claims to have never provided consent to be contacted by Register. Consequently, there is a lack of typicality in the proposed class definition. *Quality Management and Consulting Services, Inc. v. SAR Orland Food Inc.*, 2013 WL 5835915, at *4-5 (N.D. Ill. Oct. 30, 2013) (typicality is undermined if there is an arguable defense against a subset of the proposed class).

This hypothetical similarly illustrates that Plaintiff's proposed class definition cannot satisfy the commonality requirement of Rule 23. The Supreme Court has instructed that a proposed class cannot be certified if the claims of the class cannot be addressed in "one stroke." *See Wal-*

12

*Mart*, 131 S.Ct. at 2551. Put differently, a class does not satisfy the commonality requirement when there is "no common nucleus of operative facts present for the entire class" and the "'common' questions are inherently individualized, requiring inquiry into the particular circumstances of each transmission." *Foreman v. Data Transfer, Inc.*, 164 F.R.D. 400, 404 (E.D. Pa. 1995).

*Kenro, Inc. v. Fax Daily, Inc.*, 962 F.Supp. 1162, 1169 (S.D. Ind. 1997), is instructive. In that case, this Court declined to certify the Plaintiff's proposed class, explaining that it "failed to satisfy the commonality and typicality requirements because each potential plaintiff, in order to qualify as a member of the plaintiff class, would have to prove 'whether a specific transmission . . . was without express invitation or permission on its part." *Id.* at 1169. Under these circumstances, the Court concluded that the "proposed class definition [flew] directly in the face of a basic tenet of class certification" given that the court would be required to "conduct individual inquiries with regard to each potential class member in order to determine whether each potential class member had invited or given permission" to receive the challenged communications. *Id.*

The class definition proposed by Plaintiff would require even greater individualized inquiry than the class that was rejected in *Kenro* because there are several distinct factual scenarios under which an individual could claim to be a member of the class. Under one scenario, a plaintiff claims class membership on the basis that he or she was a former customer of Register, that received calls to their telephone number after their account with Register became inactive or lapsed. In a second scenario, an allegedly violative call is placed to the telephone number of an individual who submitted their telephone number and consent to be contacted through Register's inquiry process (described above and in the Declaration of Bethena Dasher) but never created an account with Register or paid for Register's services. In a third scenario, a potentially violative call is placed to

13

a phone number associated with a former Register customer (intending to reach that customer), but the phone number had been reassigned to a new subscriber without notice to Defendant. In a fourth scenario, the allegedly violative call is placed to a phone number entirely in error – i.e., a misdial in which a phone number, not associated with any Register account, is inadvertently called. Finally, in a fifth potential scenario, a call is intentionally placed to a random number, not associated with a past or present customer of Register.[5]

Thus, it is evident, that under Plaintiff's proposed class definition, the Court would be required to conduct individualized inquiries into each potential class member's qualifications, including, in pertinent part: (1) whether the proposed class member was a former customer of Register; (2) whether the proposed class member submitted an inquiry form to Register without becoming a customer; (3) whether the proposed class member provided consent to be contacted by Register; (4) whether the proposed class member ever revoked that consent; (5) whether the proposed class member was contacted by Defendant intentionally, or whether Defendant intended to reach someone other than the actual recipient of the call; and (6) the purpose of the call. Simply put, Plaintiff's class definition implicates too many individualized questions of fact to satisfy Rule 23's commonality and typicality requirements. Therefore, the class allegations are facially deficient and should be stricken.

### b. Plaintiff's Proposed Class Definition Also Fails to Satisfy the More Stringent Standard of Predominance.

Rule 23(b)(3) requires a plaintiff to demonstrate that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class

---

[5] The discussion of these potential scenarios should not be construed as an admission of liability. Rather, the discussion is intended to be illustrative of the numerous factual scenarios that the court would be required to substantively evaluate in the event Plaintiff is permitted to maintain her class allegations. Defendant denies all liability.

action is superior to other available methods for fairly and efficiently adjudicating the controversy. Although similar to the concept of "commonality," the predominance standard requires a "far more demanding" inquiry into whether "the legal or factual questions that qualify each class member's case as a genuine controversy are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). In applying these standards, the court must focus on the "substantive elements of the plaintiffs' cause of action and inquire into the proof necessary for the various elements." *Simer v. Rios*, 661 F.3d 655, 672 (7th Cir. 1981). Simply put, the class must present a common question rather than an individual one. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where "the same evidence will suffice for each member to make a *prima facie* showing [or] the issue is susceptible to generalized, class-wide proof." *Halczenko v. Ascension Health*, Inc., 750 F. Supp.3d 947 (S.D. Ind. 2024) (quoting *Messner*, 669 F.3d at 815) ("[C]ommon questions can predominate if a 'common nucleus of operative facts and issues' underlies the claims brought by the proposed class.").

In TCPA cases such as this one, Courts determine whether issues of individualized consent defeat commonality and predominance on a case-by-case basis. *Jamison v. First Credit Servs., Inc.,* 290 F.R.D. 92, 106–07 (N.D. Ill.2013). When the defendant can establish that a "significant" portion of the "putative class consented to receiving calls" issues of individualized consent predominate over common questions. *Id.* Moreover, common issues do not predominate when the issue of consent implicates "considerable factual variation . . . based on individual communications and personal relationships" between the defendant and its customers. *Jeffrey Katz Chiropractic Inc. v Diamon Respiratory Care, Inc.*, 340 F.R.D. 383, 388 (N.D. Cal. 2021) (internal

15

alterations and quotation marks omitted) (quoting *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 932 (9th Cir. 2018)). By way of example, courts have rejected class allegations in TCPA cases when "the trial [would] involve hundreds, if not thousands, of mini-trials on the issue of consent alone," leading the trial court to be "consumed and overwhelmed by testimony from each individual class member." *Legg v. PTZ Insurance Agency, Ltd.*, 321 F.R.D. 572, 578 (N.D. Ill. 2017). Simply put, the element of predominance cannot be satisfied when there is "simply no way for plaintiff to establish a lack of consent with generalized evidence" *Id; see also Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 577 (S.D. Cal. 2013) (citing *Gene and Gene*, 541 F.3d 318, 326 (5th Cir. 2008)) *(*explaining that class certification in TCPA cases is "warranted only when the 'unique facts' of a particular case indicate that individual adjudication of the pivotal element of prior express consent is unnecessary.")

The *Vigus* court's rejection of class certification was premised upon a lack of predominance. There the court explained that the "predominant issues" were "individual questions rather than common questions" given that the defendant's "call list" was "not a list of homogenously unconsenting recipients." 274 F.R.D. at 237. Rather, the court explained "a myriad of individual inquiries [would] be necessary to arrive at a decision on the issue of liability," including (1) the content of each prerecorded message; (2) whether the phone numbers called by the defendant-casino had been voluntarily provided to the defendant by its former customers; (3) whether the telephone numbers given were residential, cell or business numbers; (4) which telephone numbers on the call list were at some point during the relevant time period not associated with an individual who provided the number; (5) at what times did those numbers become reassigned or associated with someone other than the casino-defendant's customer; and (6) who

16

received the prerecorded calls besides the former customers who had given the phone. *Id.* at 237-38.

The individualized inquiries that concerned the *Vigus* court are equally implicated by the Plaintiff's class definition in this case. There is no general set of facts applicable to all of the proposed class members and no "homogeneous" list of unconsenting call recipients (such as might be the case where a company purchased a list of numbers from a list vendor and placed prerecorded calls to that random list). Rather, determination of each potential individual's class membership and ability to recover under the TCPA will turn on fact-specific inquiries related to the individual's identity, former relationship to Defendant, and the circumstances under which the allegedly violative calls were made to that particular individual. The "same evidence" will not suffice for each member, and the Court would be required to conduct "mini-trials" regarding the customer's relationship to Register (i.e., former customer, inquiring individual, or stranger), whether the customer provided consent to be contacted in the first place, whether that consent was revoked, and the nature of the alleged call placed (intentional or wrong number). As was the case in *Vigus*, it is "not the common course of conduct of making of the prerecorded telephone calls generally that constitute[s] the allegedly unlawful act, but the irregular conduct of directing those calls to certain individuals that might have been protected from those calls by the TCPA because they had been assigned numbers formerly assigned" to former customers of Register or those inquiring into Register's services. *Id.* Because the varying characteristics and circumstances of the individualized class members preclude a finding of predominance, the Plaintiff's class allegations are facially deficient and must be stricken.

**c. The Class, as Defined in Plaintiff's Amended Complaint, Cannot be Ascertained Because a Significant Portion of the Class Members Have No Grievance Under the TCPA.**

It is "axiomatic" that for a class action to be certified, "a 'class' must exist" and must be identifiable. *Simer*, 661 F.2d at 669. To this end, the Seventh Circuit requires that the class be sufficiently definite and "based on objective criteria" to warrant certification. *Halczenko v. Ascension Health*, Inc., 750 F. Supp.3d 947 (S.D. Ind. 2024). Conversely, a class lacks the definiteness required for certification when there is no way to readily ascertain who is a member of the class. *Fauley v. Drug Depot, Inc.*, 323 F.R.D. 594, 601 (N.D. Ill. 2018). In the context of a TCPA claim, a class is not ascertainable if a significant portion of individuals potentially included in the class's definition have "no grievance under the TCPA." *Jamison v. First Credit Services, Inc.*, 290 F.R.D. 92, 108 (S.D. Ill. 2013) (ascertainability requirement not satisfied in TCPA case when the class "could include thousands of individuals who consented to receiving calls on their cellphone[.]"); *see also Oshana*, 472 F.3d at 513 (affirming denial of class certification on ascertainability grounds when proposed class contained millions of potential members who were not actually deceived, as was required for liability under the applicable statute).

The class proposed by Plaintiff is overly broad and not ascertainable. The class definition provided in the Amended Complaint is broad enough to include individuals who were customers of Defendant's services, and, therefore, previously provided consent to be contacted by Defendant, and never revoked that consent. Indeed, given the nature of the registration processes and the services offered by Register, it is likely that these individuals anticipated that Defendant would call them in relation to their accounts and Register's domain hosting services. Similarly, the class is broad enough to include individuals who submitted an inquiry form to Register, and surely anticipated (indeed, even explicitly requested) that they would be contacted by Register for informational purposes. Accordingly, under its current definition, the class will be composed of a

18

significant number of individuals who have no grievance under the TCPA because they consented to being contacted by Defendant. As was the case in *Jamison*, the proposed class is overly broad. 290 F.R.D. 92 at 108. Under such circumstances, the ascertainability requirement cannot be satisfied and the class definition is facially deficient.

## V. CONCLUSION

For the foregoing reasons, Defendant Register.com, Inc. respectfully requests that this Court strike Plaintiff's class allegations.

Dated: August 27, 2025                           Respectfully submitted

*/s/ A. Jeff Ifrah*
A. Jeff Ifrah
jeff@ifrahlaw.com
Abbey Block
ablock@ifrahlaw.com
Ifrah PLLC
1717 Pennsylvania Ave. NW
Suite 650
Washington, D.C. 20006
Tel: (202) 524-4140

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of August 2025, I filed the foregoing with the Court's electronic filing system, which will automatically provide notice to all counsel of record.

Dated: August 27, 2025

                                                                             */s/ A. Jeff Ifrah*

                                                                             A. Jeff Ifrah