UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| TIFFANY LEWIS, on behalf of herself and others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> REGISTER.COM, INC. <br><br> Defendant. | Case No.: 1:25-cv-00275-JPH-MJD <br><br> Judge: Robert J. White <br><br> Magistrate Judge: Mark J. Dinsmore |

**DEFENDANT'S MOTION FOR BIFURCATION OF DISCOVERY**

Defendant Register.com, Inc. ("Defendant") by and through undersigned counsel, respectfully requests that this Honorable Court enter an order bifurcating discovery in the above-captioned matter. In support of this request, Defendant states as follows.

I.   **Introduction**

The Federal Rules of Civil Procedure are intended to facilitate the "just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. To this end, the District Court is empowered with significant discretion to control the discovery process – including, when appropriate, the bifurcation of discovery. Bifurcation of discovery is particularly appropriate in actions, such as this one, brought pursuant to the Telephone Consumer Protection Act ("TCPA"). This is because TCPA plaintiffs frequently demand vast amounts of private consumer data for individuals who are not class members at the precertification stage. Expansive

1

discovery of this nature imposes significant costs on TCPA defendants and requires the disclosure of the sensitive personal data of thousands of consumers, without their knowledge or consent. These extensive demands prove especially problematic in cases such as this one where the proposed class definition suffers from facial deficiencies under Rule 23 and is under consideration by the Court prior to certification. Indeed, Defendant's Motion to Strike the Class Allegations remains pending before this Honorable Court. Accordingly, prior to resolution of that Motion, it would be improper and inefficient for the parties to proceed with class-wide merits discovery.

Given these circumstances, and to facilitate the "just, speedy, and inexpensive" resolution of this action, Defendant requests that the Court bifurcate discovery in this matter. Specifically, Defendant requests that this Court order the parties to first engage in pre-class certification discovery and address whether it is appropriate for this action to proceed on a class-wide basis. Depending upon the outcome of the first phase, the parties would then engage in discovery going to the merits of the class claims.

Defendant submits that good cause exists for the bifurcation of discovery in this case. A phased approach to discovery will (1) expedite the resolution of class certification issues, as is required by the Federal Rules; (2) prevent the parties from expending time and resources litigating the merits of the class members' claims until the viability of the class is established; and (3) protect the privacy of thousands of consumers who do not (and may never) have viable TCPA claims against Defendant.

## II.     Relevant Factual Background

Plaintiff filed the instant action on February 11, 2025, and subsequently filed an Amended Complaint on April 5, 2025. ECF 1, 12 (hereinafter referred to as "Am. Compl."). Therein, Plaintiff alleged that Defendant violated the TCPA by using an artificial or prerecorded voice in connection

2

with non-emergency calls placed to telephone numbers assigned to a cellular telephone service, without prior express consent. Am. Compl. ¶ 3. Plaintiff sought relief on behalf of herself and a proposed class, which she defined as the following:

> All persons throughout the United States (1) to whom Register.com, Inc. placed a call, (2) directed to a number assigned to a cellular telephone service, but not assigned to an [sic] Register.com, Inc. customer or account holder, (3) in connection with which Register.com, Inc. used an artificial or prerecorded voice, (4) from four years prior to the filing of this case through the date of class certification.

*Id.* ¶ 32. Plaintiff's Amended Complaint also contained threadbare recitals of the elements required for Rule 23, *id.* ¶¶ 34-44, and attempted to identify "questions of law and fact common to the members of the class" including, in relevant part, Defendant's alleged violations of the TCPA; Defendant's conduct in dialing wrong or reassigned cellular telephone numbers; Defendant's practice of placing calls with an artificial or prerecorded voice to wrong or reassigned cellular telephone numbers; the use of an artificial or prerecorded voice; and the availability of statutory penalties. *Id.* ¶ 50. On April 28, 2025, Defendant filed a Motion to Dismiss the Amended Complaint, arguing, in pertinent part, that the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6). ECF 17. That Motion remains pending before the Court.

Pursuant to the Court's regular discovery practices, the parties have thus far submitted a Case Management Plan and two Status Reports, addressing the anticipated scope of their discovery and any potential issues arising therefrom. *See* ECF 26, 34, 38. In all submissions, Defendant asserted its position that bifurcation of discovery was appropriate in this action, given the nature of the claims and the broad scope of information likely to be sought through Plaintiff's discovery requests. *Id.* Similarly, in all submissions, Plaintiff objected to Defendant's bifurcation argument, stating that bifurcation was neither necessary nor appropriate given that there was "substantial overlap" between the Plaintiff's individual claim and that of the putative class. *Id.*

The need for bifurcation of discovery became particularly apparent when, on June 12, 2025, Plaintiff served her First Set of Discovery Requests on Defendant which included Interrogatories, Requests for Document Production and Requests for Admissions. Therein, Plaintiff not only sought information relevant to Ms. Lewis, but also broad categories of data related to Register's customers who are not yet (and may never be) parties to this action. By way of example, Plaintiff sought identifying information (including the name and/or telephone number) for all of Defendant's customers that Defendant called using a pre-recorded or artificial voice message. These requests made no exception for those individuals who had previously provided consent to be contacted by Defendant in this manner, and, therefore, would have no cognizable claim under the TCPA.

On August 12, 2025 (subject to an agreed upon thirty-day extension), Defendant served its responses to Plaintif's First Set of Discovery Requests. Therein, Defendant provided information relevant to Plaintiff Tiffany Lewis's individual claims, such as call logs reflecting calls made to her cellular telephone number, (321) XXX-9800; the recorded reasons for the calls made to her cellular telephone number, (321) XXX-9800; information related to the customer account associated with Plaintiff's cellular telephone number; the phone numbers from which Defendant made pre-recorded calls to its customers; data related to the number of calls Defendant made using an artificial or pre-recorded voice message during the time period relevant to this action (for all customers); materials reflecting training and information provided to Defendant's employees concerning permissible calling practices; data reflecting the number of phone calls made to telephone numbers that were subsequently characterized as "wrong" or "do not call" numbers; and the procedures by which Defendant reviews and categorizes telephone numbers as "do not call" numbers. Defendant has also informed Plaintiff that it will continue to provide responsive, non-

privileged documents and data on a rolling basis. Defendant did, however, object to Plaintiff's discovery requests which sought the personal identifying information (e.g., phone numbers and names) of Defendant's customers who are not named parties to this action. In its discovery responses, Defendant made clear that the scope of these objections was not proper given that (1) the sensitive, personal information sought pertained to individuals who were not members of any class; and (2) the information sought was not necessary for class certification.

On August 20, 2025, the parties met and conferred regarding Defendant's discovery responses. Plaintiff alleged that the responses were incomplete given that Defendant objected to the requests seeking the personal identifying information of its customers who are not parties to this action. Defendant reiterated its position that the disclosure of this information was both improper and irrelevant in light of the fact that the class had not yet been certified, and such information was not necessary for class certification. Defendant also noted that the procurement of information necessary for merits-based class discovery would be time-consuming and onerous to obtain, given the fact-specific individualized inquiries required in light of the Plaintiff's proposed class definition.

On August 27, 2025, Defendant filed a Motion to Strike Plaintiff's Class Allegations pursuant to Federal Rule of Civil Procedure 23. ECF 39. Therein, Defendant argued that Plaintiff's class allegations were facially deficient given that they failed to satisfy the requirements of Rule 23. Specifically, Defendant argues that (1) the typicality and commonality requirements could not be satisfied because Plaintiff's claims do not have the same essential characteristics as the class at large and there exists no common nucleus of operative fact amongst the potential class members; (2) the more stringent predominance requirement could not be satisfied given that common questions of law and fact do not predominate the class and identification, and adjudication of the

5

class members' claims would require individualized and fact-intensive inquiries, rather than generalized, class-wide proof; and (3) Plaintiff's proposed class definition was overly broad and not ascertainable because it includes individuals who have no grievance under the TCPA.

### III.    Legal Standard

The District Court retains broad discretion to control discovery. *James v. Hyatt Regency Chi.*, 707 F.3d 775, 784 (7th Cir. 2013). This discretion extends to the authority to bifurcate discovery. *Reid v. Unilever U.S., Inc.*, 946 F.Supp.2d 893, 932 (N.D. Ill. 2013). Although the Federal Rules of Civil Procedure do not explicitly address the bifurcation of discovery, "the advisory committee notes to Rule 23 recognize that bifurcation may be appropriate in the class action context." *Id.* (quoting Fed. R. Civ. P. 23, Advisory Committee Notes, 2023 amendments). To this end, the Advisory Notes provide that the bifurcation of discovery in a class action is particularly appropriate "to conduct controlled discovery into the 'merits,' limited to those aspects relevant to making the certification decision on an informed basis." *Id.*

When ruling on a motion to bifurcate class discovery, the Court should consider the following factors: (1) whether bifurcation will assist in making a timely ruling on class certification; (2) the impact that granting or denying the request will have on the pending litigation; and (3) the degree to which class and merits discovery are closely intertwined. *See Haris v. comScore, Inc.*, 2012 WL 686709, at *3 (N.D. Ill. Mar. 2, 2012). The party seeking bifurcation need only establish that "good cause" exists for bifurcation. *New England Carpenters Health and Welfare Fund v. Abbott Laboratories*, 2013 WL 690613, at *3 (N.D. Ill. Feb. 20, 2013).

### IV.    Argument

Here, the bifurcation of discovery will allow the Court to decide substantive threshold issues that are integral to the certification of the proposed class, *before* the parties engage in

substantial, and costly, merits-based discovery. To facilitate this process, the Court should order the parties to engage in two phases of discovery. Phase One should allow the parties to engage in discovery that is relevant to class certification, including the adequacy of Plaintiff Tiffany Lewis as a representative of the proposed class. If, following the completion of Phase One, the Court determines that certification of the class is warranted, the parties may proceed to Phase Two, which will allow them to engage in discovery related to the merits of the class members' claims. This measured process will promote judicial economy, expedite the court's determination of class certification, and protect the privacy of Defendant's customers.

### A. Bifurcation of discovery will expedite discovery and serve the interests of judicial economy.

Postponing merits discovery, and prioritizing certification-specific discovery, will serve the interests of judicial economy by expediting the discovery process and allowing the Court to more efficiently reach the issue of class certification. *Am.'s Health & Res. Ctr., Ltd. v. Promologics, Inc.*, 2018 WL 3474444, at *6 (N.D. Ill. July 19, 2018) (granting defendant's motion to bifurcate discovery on the basis that "some limited, first-stage production could stave off substantial wasted efforts."). Here, the discovery required for class certification is not only distinguishable from merits discovery, but also far less onerous and resource-intensive to obtain and produce. Under such circumstances, it would be both improper and inefficient to require the parties to engage in burdensome and costly merits-based discovery before Plaintiff has established that the proposed class is certifiable.

As discussed above, to proceed as a class action, the named plaintiff must establish numerosity, commonality, typicality, and adequacy of representation of the proposed class. Fed. R. Civ. P. 23(a). The plaintiff must also establish that common questions of law and fact predominate over any questions affecting only individual members, and that a class action is superior to other

7

methods of adjudication. Fed. R. Civ. P. 23(b)(3). It is Defendant's position that the class definition as provided in the Amended Complaint is facially deficient under the requirements of Fed. R. Civ. P. 23.[1] However, to the extent that the Court determines that limited discovery would be helpful in deciding whether the proposed class may be certified, discovery should be limited to information directly tied to the issue of certification under Rule 23 – i.e., typicality, commonality, numerosity, adequacy of representation and predominance – and *not* the merits of the potential class members' claims.

To establish these elements, Plaintiff may request, for example, information related to the number of calls Defendant made using an automated or prerecorded voice message to customers without their consent (if any), the number and nature of calls allegedly placed to the named Plaintiff and proposed class representative, Tiffany Lewis, and the general procedures implemented by Defendant when placing calls to its customers that utilize a prerecorded or automated voice message (e.g., use of a Do-Not-Call database or other resources for identifying individuals who have revoked consent to be called). These categories of data are less voluminous and less onerous to obtain than information pertaining to specific customers (e.g., their names, phone numbers, consent to be contacted, reassignment of phone number and the nature any alleged calls placed to them). Indeed, Defendant has already provided much of this data to Plaintiff as part of its response to Plaintiff's First Set of Discovery Requests, illustrating the discovery process can be streamlined when appropriately phased.

By contrast, merits-based discovery will require significant expenditure of time and resources, given the highly individualized questions that are implicated in this matter including, in relevant part, (1) whether each class member was a prior customer of Register; (2) whether the

---

[1] Arguments regarding the proposed class's deficiencies are discussed in further detail in Defendant's pending Motion to Strike Class Allegations.

class member was merely an inquiring user who submitted their contact information with the intent that they would be contacted by Register for informational purposes; (3) whether the class member consented to be contacted by Register; (4) whether the class member revoked consent to be contacted by Defendant; (5) whether the class member was contacted by Defendant intentionally or whether Defendant intended to reach someone other than the actual recipient of the call; (6) if the class member purports to be the subscriber of a re-assigned telephone number, when, and under what circumstances each class member's telephone number was assigned to them; and (7) the purpose of the alleged call(s). The determination of these individualized issues – which is neither necessary nor appropriate for class certification - will require time-consuming, fact-specific inquiries for each potential class member that is unwarranted prior to certification. *See Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."). Engaging in discovery related to these individualized issues is not only unnecessary at this juncture but will also prolong the discovery process and postpone Plaintiff's eventual request for class certification.

      Plaintiff's discovery requests further bolster this point. Plaintiff has already served dozens of discovery requests seeking not just information relevant to the certifiability of the proposed class, but also sensitive information related to specific customers and their sensitive personal data. Indeed, Plaintiff's discovery requests, in pertinent part, demand that Defendant provide data identifying each phone call and each telephone number to which Defendant initiated a call using an artificial or recorded voice message, from February 11, 2021, to the present. She also requests not just the phone numbers allegedly called, but also information "sufficient to identify the persons" to whom Defendant allegedly placed the pre-recorded/artificial voice calls. Indeed, during the parties meet and confer held on August 20, 2025, Plaintiff's counsel indicated that the

data sought would be used to identify individual class members. Simply put, Plaintiff requests vast amounts of data not necessary for the purposes of obtaining class certification – the threshold issue in this dispute. *See Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 376 (7th Cir. 2015) (resolution of merits-based issued not permitted prior to class certification). Obtaining and disclosing this information would not only implicate significant privacy concerns (discussed below) but will also require significant time and resources, given the quantity and nature of data requested.

In the event that the class is not certified, discovery related to the determination of these individualized merit-based issues will have been a waste of time, money, and resources. Courts in this circuit, and throughout the country, have bifurcated discovery in similar class action cases, recognizing that "[p]roceeding with merits discovery may well involve the review of millions of documents not directly relevant to the issues of class certification," which "would frustrate the court's efforts to certify the action as a class action at an early practicable time, as is mandated by the Rules." *Harris*, 2012 WL 686709, at *3 (alterations in original omitted); *see also Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc.*, 2014 WL 413534, at *4 (D. N.J. Feb. 4, 2014) (allowing for bifurcation of discovery to "save the parties and the Court from the substantial costs and burdens associated with whole scale class discovery" when class certification had not taken place); *Sapan v. Finance of America Reverse LLC*, 2025 WL 1932935, at *2-3 (C.D. Cal. July 14, 2025) (concluding that bifurcation of discovery in TCPA case would serve the "just, speedy, and inexpensive determination of this case."). The same result should occur here.

**B. Class-wide merits discovery should not be permitted prior to certification given that denial of certification will likely resolve this dispute.**

Bifurcation of discovery is particularly appropriate where – as is the case here - the denial of class certification is likely to end the litigation or where the terms of an order granting certification could narrow the issues to be litigated on the merits. *See American Nurses' Assoc. v.*

10

*Ill.*, 1986 WL 10382, at *3 (N.D. Ill. Sept. 12, 1986). Indeed, courts in this Circuit have recognized that bifurcation of discovery is especially prudent when the plaintiffs primarily seek statutory damages. *See Harris*, 2012 WL 686709, at *4. This is because "the limited statutory damages available to [p]laintiffs are likely an insufficient motivation to litigation in the absence of class certification." *Id.* This conclusion is supported by the treatise, McLauchlin on Class Actions, which "suggests that courts are indeed more likely to grant requests to stay merits discovery when the nature of the putative representative's claims indicate that the claimant would *not* pursue their claims if certification is denied." *Id.* (emphasis in original) (citing McLauchlin on Class Actions (Eighth) § 3:10 (2011)).

In this case it is seemingly inevitable that the denial of class certification will bring this litigation to an end. Indeed, Plaintiff's Amended Complaint says as much. Therein, Plaintiff indicates that she seeks statutory damages under the TCPA, and admits that

> [t]he damages suffered by individual members of the class and subclass may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for members of the class and subclass to redress the [alleged] wrongs done to them.

Am. Compl. ¶ 56. Without getting into the substance or specifics of any settlement discussions, Plaintiff has taken the position that she would only accept a class-based settlement. These circumstances support the conclusion that the opportunity for class-based recovery is a driving factor in the instant litigation. Accordingly, in the absence of class certification, Plaintiff will have little – if any – motivation to continue this matter on an individual basis.

In this context, class-wide merits discovery should not be permitted prior to certification. To find otherwise would allow Plaintiff to impose burdensome and costly discovery obligations on Defendant that – in the event the class is deemed uncertifiable - will prove to be completely unnecessary. Even in the unlikely event that Plaintiff chooses to pursue her individual claim after

denial of certification2014 WL 4494860, she will not be prejudiced by an order bifurcating discovery given that Defendant has already provided (and will continue on a rolling basis to provide) discovery relevant to Ms. Lewis individually. *See Christian v. Generation Mortg. Co.*, 2014 WL 4494860 at *9 (N.D. Ill. Sept. 12, 2014) (plaintiff not prejudiced by bifurcation of discovery when – even in the absence of class certification – she would not be "precluded . . . from seeking statistical evidence relevant to establishing" her individual claim). Accordingly, consideration of this factor weighs in favor of bifurcation.

C. **Bifurcation of discovery is appropriate because discovery related to certification is distinguishable from discovery related to the merits of the class-based claims.**

"Though the boundary between a class determination and the merits may not always be easily discernible . . . it is possible to draw general lines in this case." *Harris*, 2012 WL 686709, at *4 (internal citation and quotation marks omitted) (quoting *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 895 (7th Cir. 1981)). Importantly, a mere overlap in the certification and merits-based issues does not preclude bifurcation. *Reid v. Unilever U.S., Inc.*, 964 F.Supp.2d at 933. Rather, courts in this circuit have recognized that "this alone is not enough to overcome the efficiency benefits to be gained from bifurcated discovery." *Id.*

Discovery relevant to class certification will focus on the prerequisites for class actions provided by Fed. R. Civ. P. 23. Specifically, when deciding to certify a proposed class, the Court must consider (1) numerosity of party plaintiffs; (2) commonality of questions of law and fact; (3) typicality of the representative parties' claims and defenses to those of the class; (4) adequacy of representation; and (5) the predominance of common questions of law and fact. Fed. R. Civ. P. 23(a)-(b). The question of numerosity considers whether "a class approach would be useful to avoid the practical problems of trying to join many named plaintiffs or otherwise clog the docket with numerous individual suits." *Eggleston*, 657 F.2d at 895. As a result, discovery related to class

12

certification "will seek to determine the approximate number of potential members of the class." *Harris*, at *4. Second, the commonality inquiry considers whether "there appear to be common questions of law or fact." *Eggleston*, 657 F.2d at 895. The third prong, typicality, "requires that the claims or defenses of the named parties be typical of the claims or defenses of the class." *Id.* at 896. The fourth consideration is whether the "named parties will fairly and adequately protect the interests of the class members who are not personally involved in the litigation" – i.e., that the named parties "are qualified and capable of fully pursuing the common goals of the class without collusion or conflicts of interests." *Id.* Finally, the more stringent "predominance" requirement obligates the plaintiff to establish that the legal or factual questions that qualify each class member's case as a genuine controversy are sufficiently cohesive to warrant adjudication by representation. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

The information needed to allow the Court to determine whether the above requirements are met and class certification is appropriate is distinguishable from the information needed to decide the merits of the class members' claims. Specifically, the information needed to satisfy the requirements of class certification is more generalized – related to the volume of calls allegedly made by Defendant, the general frequency with which Defendant allegedly made the calls, and the general circumstances under which such calls were allegedly made – than the merits-based discovery required to prove the class members' individual claims.

By way of example, as relevant to class certification, Plaintiff may request information related to the number of calls placed by Defendant to individuals using an automated or pre-recorded voice message. Production of this data would allow Plaintiff to argue that the numerosity requirement is satisfied. By contrast, prior to class certification, Plaintiff should be precluded from seeking the specific phone numbers that were allegedly called by Defendant using an automated

13

or pre-recorded voice message. Similarly, Plaintiff may inquire how many of the Defendant's customers provided consent to be contacted using automated or pre-recorded voice messages. However, Plaintiff should be precluded from obtaining a list of the names and phone numbers of the individual customer from whom Defendant obtained consent. If and when the class is certified – and the contours of the class are clearly defined – the confidential records of potential class members may be identified, produced, and analyzed as part of the discovery concerning the merits of the class members' claims. Accordingly, this factor also weighs in favor of bifurcation.

### D. Bifurcation of discovery is necessary to protect the sensitive personal data of Defendant's customers.

Finally, good cause exists for the bifurcation of discovery where merits-based discovery will require the disclosure of the private information of Defendant's customers who are not, and may never be, members of the proposed class. Given the nature of Plaintiff's claims, class-wide merits-based discovery will require the disclosure of the names, phone numbers, and other personal information of Register's customers. This information is highly sensitive, implicates personal privacy concerns, and should not be provided to Plaintiff before she has proven that the class is certifiable or established that she can adequately represent the putative class members. Accordingly, the Court should exercise its discretion and bifurcate discovery to prevent the unnecessary intrusion into the privacy of Register's customers and the unnecessary disclosure of their personal identifying information.

## V.    Conclusion

Defendant respectfully requests that this Court enter an order bifurcating the discovery process into the following phases: (1) pre-certification discovery focused on the class's certifiability under Rule 23; and, in the event the class is certified, (2) merits-based discovery addressing the substantive claims of the class members. A phased approach to discovery will not

only promote judicial economy but will also protect the sensitive personal data of Register's customers prior to class certification. At minimum, the Court should preclude Plaintiff from seeking class-wide merits-based discovery while Defendant's Motion to Strike Class Allegations remains pending. For these reasons, and those discussed above, Defendant respectfully requests that this Court grant this Motion for Bifurcation.

Dated: August 27, 2025                    Respectfully submitted,

/s/ A. Jeff Ifrah
A. Jeff Ifrah
jeff@ifrahlaw.com
Abbey Block
ablock@ifrahlaw.com
Ifrah PLLC
1717 Pennsylvania Ave. NW
Suite 650
Washington, D.C. 20006
Tel: (202) 524-4140

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of August 2025, I filed the foregoing with the Court's electronic filing system, which will automatically provide notice to all counsel of record.

Dated: August 27, 2025

*/s/ A. Jeff Ifrah*
A. Jeff Ifrah
