# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| TIFFANY LEWIS, *on behalf of herself and others similarly situated*, | ) Case No.: 1:25-cv-00275-JPH-MJD ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| REGISTER.COM, INC., | ) ) |
| Defendant. | ) ) ) |

## PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO HER REQUEST FOR PRODUCTION NOS. 6-11

### Request for Relief

Tiffany Lewis requests that this Court order Register.com, Inc. to produce, within fourteen days, documents responsive to her request for production ("RFP") nos. 6-11.

### Statement of Relevant Procedure

On June 12, 2025, Ms. Lewis served Register.com with her initial written discovery requests. *See* Plaintiff's Discovery Requests, attached as Exhibit A. Months later, Register.com served Ms. Lewis with its objections, answers, and responses to her initial written discovery requests. *See* Defendant's Responses to Plaintiff's Discovery Requests, attached as Exhibit B. On August 27, 2025, Register.com filed its motion to strike class allegations, *see* ECF No. 39, together with a supporting declaration from Bethena Dasher—"a Senior Manager of the Legal Department of the Company." *See* ECF No. 39-1.

### Statement of Relevant Facts

From April 10, 2024 through May 13, 2025, Register.com placed twenty-five artificial or prerecorded voice calls to Ms. Lewis's cellular telephone number. *See* Defendant's Responses to

1

Plaintiff's Discovery Requests, Interrogatory No. 3. Ms. Lewis, however, was not the intended recipient of Register.com's artificial or prerecorded voice calls to her cellular telephone number. *See id.*, Request for Admission ("RFA") No. 13. Rather, Register.com's artificial or prerecorded voice calls to Ms. Lewis's cellular telephone number were intended for one of Register.com's customers—Raymond Godfrey. *See id.*, Interrogatory No. 5. More specifically, Register.com placed the subject artificial or prerecorded voice calls to Ms. Lewis's cellular telephone number "to assist in the management of Mr. Godfrey's domains and customer account," and "to advise [Mr. Godfrey] that the account was past due[.]" *See id.*, Interrogatory No. 5.

Ms. Lewis, unsurprisingly, is not, and was not, a Register.com customer. *See* ECF No. 1, ¶ 23. Ms. Lewis does not, and did not, have a Register.com account. *See id*. And Ms. Lewis did not provide her cellular telephone number to Register.com. *See id.*, ¶ 24; *see also* Defendant's Responses to Plaintiff's Discovery Requests, RFA Nos. 14-15. Instead, Mr. Godfrey provided Ms. Lewis's cellular telephone number to Register.com—presumably at a time when Ms. Lewis's cellular telephone number belonged to him—"through the customer account creation process [he] initiated . . . via the website https://register.com *on November 21, 2000*." *See* Defendant's Responses to Plaintiff's Discovery Requests, Interrogatory No. 6 (emphasis added). That is, Register.com obtained Ms. Lewis's cellular telephone number from Mr. Godfrey nearly two-and-a-half decades before it placed the artificial and prerecorded voice calls now at issue.

And Ms. Lewis is not alone in her experience with Register.com. Indeed, from June 7, 2022 through August 12, 2025, Register.com placed a currently undisclosed number of artificial or prerecorded voice calls to 28,727 unique telephone numbers. *See id.*, Interrogatory No. 8. "Of the

28,727 unique numbers . . . 1,602 . . . were identified as being an incorrect telephone number." *See id.*, Interrogatory No. 13.[1]

## Legal Standard

Rule 26(b)(1) provides, in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *United States v. Haddox*, No. 2:08-CV-208PPSPRC, 2009 WL 3586957, at *2 (N.D. Ind. Oct. 27, 2009). Rather, "relevancy is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *United States v. Autumn Ridge Condo. Ass'n, Inc.*, 265 F.R.D. 323, 326 (N.D. Ind. 2009).

---

[1] Register.com's sworn answer to Ms. Lewis's interrogatory no. 13—that "[o]f the 28,727 unique numbers . . . 1,602 . . . were identified as being an incorrect telephone number," *see* Defendant's Responses to Plaintiff's Discovery Requests, Interrogatory No. 13—seemingly conflicts with its sworn answers to Ms. Lewis's interrogatory nos. 9-10, through which its states that the 1,602 figure "reflect[s] the number of times the [wrong number] disposition was recorded, meaning that the disposition could have been recorded multiple times for a single number." *See id.*, Interrogatory Nos. 9-10. This, then, is yet another reason, in addition to the reasons identified below, that Ms. Lewis requires the documents she requests by way of her RFP nos. 6-11. In short, the documents that Ms. Lewis requests by way of her RFP nos. 6-11—which identify the telephone numbers to which Register.com placed artificial or prerecorded voice calls, the telephone numbers that Register.com marked as wrong or reassigned, and the artificial or prerecorded voice calls that Register.com placed to those telephone numbers—includes information necessary to clarify which of Register.com's answers to Ms. Lewis's interrogatory nos. 9-10 and 13 are accurate, and which are not.

Rule 37 permits a party to request an order from a court compelling discovery. *Id*. And "[w]hen the discovery sought appears relevant, the party opposing the discovery bears the burden of proof to establish the discovery's lack of relevance by demonstrating that it is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Jones v. Hamilton Cnty. Sheriff's Dept.*, No. IP 02-0808-C-H/K, 2003 WL 21383332, at *3 (S.D. Ind. June 12, 2003) (Baker, J.). Moreover, because "[e]stablishing relevancy in the context of discovery is not a high bar . . . where relevance is in doubt, courts should err on the side of permissive discovery." *Keevy v. Amos Exteriors, Inc.*, No. 1:24-CV-02210-RLY-MJD, 2025 WL 896299, at *1 (S.D. Ind. Mar. 24, 2025) (Dinsmore, J.).

As well, for the party bearing the burden of demonstrating that a discovery request is improper, "courts in this Circuit have repeatedly admonished . . . that this burden cannot be met by a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.'" *Hobson v. Trans Union, LLC*, No. 1:13-CV-54, 2014 WL 12775013, at *4 (N.D. Ind. June 6, 2014) (collecting cases); *see also Barker v. Kapsch Trafficcom USA, Inc.*, No. 119CV00987TWPMJD, 2019 WL 2524249, at *1 (S.D. Ind. June 18, 2019) (Dinsmore, J.) ("general objections to discovery requests that merely recite boilerplate language without explanation do not meet this burden, and courts within the Seventh Circuit consistently overrule them or entirely disregard such."); *Novelty, Inc. v. Mountain View Mktg., Inc.*, 265 F.R.D. 370, 375 (Barker, J.) (S.D. Ind. 2009) (same).

## Argument

**I.   Ms. Lewis is entitled to documents responsive to her RFP nos. 6-11.**

Ms. Lewis asserts that Register.com violated the TCPA by placing artificial or prerecorded voice calls to her cellular telephone number without prior express consent. *See* ECF No. 1, ¶¶ 1-3. Ms. Lewis also asserts that she is not alone, and that Register.com routinely violated the TCPA by placing artificial or prerecorded voice calls to many other wrong or reassigned telephone numbers. *See id*., ¶ 4. Correspondingly, Ms. Lewis seeks to represent a class defined as:

> All persons throughout the United States (1) to whom Register.com, Inc. placed a call, (2) directed to a number assigned to a cellular telephone service, but not assigned to a[] Register.com, Inc., customer or accountholder, (3) in connection with which Register.com, Inc. used an artificial or prerecorded voice, (4) from [April 5, 2021] through the date of class certification.

*Id*., ¶ 32.

Against this backdrop, production of call data like that which Ms. Lewis requests by way of her RFP nos. 6-11 is appropriate because of its relevance to Rule 23's numerosity, commonality, typicality, and predominance requirements, as well as to class-wide damages. It is also particularly relevant here given Register.com's recently filed motion to strike class allegations. And Register.com's familiar litany of unsupported, boilerplate objections does nothing to change this.

**A.   The call data that Ms. Lewis requests by way of her RFP nos. 6-11 is relevant to Rule 23's numerosity, commonality, typicality, and predominance requirements.**

"[C]ourts in class-action TCPA cases have consistently held that information regarding plaintiffs and putative class members who were called by a defendant or by others on a defendant's behalf, such as outbound call lists and the number of calls made to those recipients are relevant to the numerosity and commonality requirements listed in Rule 23." *Fralish v. Digital Media Sols., Inc.*, No. 3:21-CV-00045-JD-MGG, 2021 WL 5370104, at *9 (N.D. Ind. Nov. 17, 2021) (collecting cases); *see also Warren v. Credit Pros Int'l Corp.*, No. 3:20-CV-763-TJC-MCR, 2021

5

WL 3552254, at *8 (M.D. Fla. Apr. 26, 2021) ("Plaintiff is also entitled to receive—prior to class certification—the documents and information related to the call logs, transmission summaries, outbound call lists, and the information contained therein bearing on Defendant's communications with the putative class members, because . . . such information is relevant both to the merits of Plaintiff's claims and to the numerosity and commonality requirements in Rule 23, Fed. R. Civ. P."); *Thomas v. Fin. Corp. of Am.*, No. 3:19-CV-152-E, 2019 WL 5157022, at *1-3 (N.D. Tex. Oct. 10, 2019) (ordering production of "documents and electronically stored information concerning call lists and call data," and explaining "that the information sought by Plaintiff is relevant and proportional to the needs of the case [as it] . . . concern[s] Plaintiff's proposed class members [and] is relevant to class certification issues such as numerosity, commonality, and typicality"); *Bellenger v. Accounts Receivable Mgmt., Inc.*, No. 19-60205, 2019 WL 4284070, at *5-6 (S.D. Fla. Sept. 10, 2019) (compelling production of documents "listing every person who received a call since January 23, 2015, and who" fit other specified characteristics); *Doherty v. Comenity Capital Bank & Comenity Bank*, No. 16CV1321-H-BGS, 2017 WL 1885677, at *4 (S.D. Cal. May 9, 2017) ("The Court finds that outbound dial lists are relevant to establish the issues of numerosity and commonality under Federal Rule of Civil Procedure 23(a) and are therefore discoverable."); *Ossola v. Am. Express Co.*, No. 13 C 4836, 2015 WL 5158712, at *7 (N.D. Ill. Sept. 3, 2015) ("Call data is relevant, and thus produced as standard practice . . . in cases where the defendant is the alleged dialer."); *Gaines v. Law Office of Patenaude & Felix, A.P.C.*, No. 13CV1556-JLS DHB, 2014 WL 3894348, at *2 (S.D. Cal. June 12, 2014) ("the Court finds that the outbound dial list is relevant to the issues of numerosity and commonality under Federal Rule of Civil Procedure 23(a), and is therefore discoverable").

And decisions compelling call data in TCPA class actions are rooted in a deep history of district courts rebuking TCPA defendants for refusing to provide class-related information and documents while, at the same time, contesting the propriety of class certification. *See, e.g.*, *Cahill v. GC Servs. Ltd. P'ship*, No. 17-1308, 2018 WL 1791910, at *4 (S.D. Cal. Apr. 16, 2018) ("RFPs 10-13 and 18 are relevant at least to the issues of numerosity and commonality. The lists are reasonably calculated to identify the number of recipients of calls made during the class period, which is crucial to determine whether the class is so numerous to make joinder impracticable. The call lists are also relevant to the commonality requirement under Rule 23(a)[.]"); *Mbazomo v. ETourandTravel, Inc.*, No. 16-2229, 2017 WL 2346981, at *5 (E.D. Cal. May 30, 2017) ("[T]he Court agrees with the weight of authority on this matter that call logs and dialing lists are relevant to the commonality prong of the class certification inquiry. The requested list would also be relevant to Plaintiff's need to show numerosity."); *O'Shea v. Am. Solar Sol., Inc.*, No. 14-894, 2016 WL 701215, at *3 (S.D. Cal. Feb. 18, 2016) ("[T]he Court agrees that the documents sought are relevant to his action. Specifically, these requests generally concern the total number of call recipients and the total number of phone calls made to them."); *Gossett v. CMRE Fin. Servs.*, 142 F. Supp. 3d 1083, 1087 (S.D. Cal. 2015) (ordering the defendant to produce outbound call lists and explaining that they are "relevant to the class claims and meritorious claims and defenses in this case"); *Webb v. Healthcare Revenue Recovery Grp. LLC*, No. 13-737, 2014 WL 325132, at *2-3 (N.D. Cal. Jan. 29, 2014) (compelling the same).

For example, in the court in *Frey v. Frontier Utilities Northeast LLC* explained:

> Frey has shown that the outbound call list is relevant to class certification and to the merits of his claim. *See, e.g., Gossett v. CMRE Fin. Servs.*, 142 F.Supp.3d 1083, 1087 (S.D. Cal. 2015) ("This court finds that the outbound call lists are relevant to the class claims and meritorious claims and defenses in this case and overrules [the defendant's] objections to the requests."). The call records can be used to determine which calls were made to cell phone numbers, a fact that is relevant to the

> numerosity and typicality requirements of Rule 23(a). See *Thrasher v. CMRE Fin. Servs., Inc.*, No. 14-cv-1540, 2015 WL 1138469 at *2 (S.D. Cal. March 13, 2015) ("The court finds that the outbound call list is reasonably calculated to identify the number and recipients of calls made during the class period, which is relevant to Rule 23 requirements."). (See Doc. No. 36 at p. 12 (defining the putative class as all individuals to whom Frontier or its vendor made a non-emergency telephone call "to a cellular telephone number or to a number where the recipient is charged for the call").) It is also relevant to the question of liability and damages under the TCPA. See 47 U.S.C. § 227(b)(1)(A)(3) (prohibiting calls "using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service. . . ."); *id.* § 227(b)(3)(B) (creating a private right of action to recover "for actual monetary loss" caused by a violation of the TCPA or "to receive $500 in damages for each such violation").

No. CV 19-2372-KSM, 2020 WL 12697468, at *2 (E.D. Pa. Apr. 13, 2020).

The call data that Ms. Lewis requests by way of her RFP nos. 6-11—which includes the telephone numbers to which Register.com placed artificial or prerecorded voice calls, the telephone numbers that Register.com marked as wrong or reassigned, and the artificial or prerecorded voice calls that Register.com placed to those telephone numbers—is therefore relevant here.

### B. The call data that Ms. Lewis requests by way of her RFP nos. 6-11 is especially significant here given Register.com's recently filed motion to strike class allegations.

Through its motion to strike class allegations, Register.com asserts that Ms. Lewis is unable to satisfy Rule 23's commonality, typicality, and predominance requirements, and that Ms. Lewis's proposed class is not ascertainable. *See* ECF No. 19 at 7-19. To start, Register.com argues that because "a significant subsection of the proposed class may have (1) previously provided their phone number to Defendant voluntarily; and (2) consented to be contacted by Defendant with pre-recorded or artificial voice messages," *id.* at 8, Ms. Lewis is unable to satisfy Rule 23's commonality and typicality requirements. Register.com then contends that similar concerns, such as "whether the phone numbers called by the defendant . . . had been voluntarily provided to the defendant by its former customers; [and] whether the telephone numbers given were residential,

8

cell or business numbers," *id*. at 16, preclude Ms. Lewis from satisfying Rule 23's predominance requirement. In turn, Register.com suggests that Ms. Lewis's proposed class is not ascertainable because "there is no way to readily ascertain who is a member of the class." *Id*. at 18.

But this Court "cannot permit [a defendant] on one hand to contest class certification and on the other hand deny plaintiff the discovery relevant to its position that a class should be certified." *Whiteamire Clinic, P.A. v. Quill Corp.*, No. 12-5490, 2013 WL 5348377, at *3 (N.D. Ill. Sept. 24, 2013). And this is exactly what Register.com asks this Court to do now. To be sure, while on the one hand Register.com suggests—in the form of hypotheticals, and absent any proof whatsoever—that Ms. Lewis cannot satisfy Rule 23's commonality, typicality, and predominance requirements, and that Ms. Lewis's proposed class is not ascertainable, it refuses on the other hand to produce documents that show the telephone numbers to which Register.com placed artificial or prerecorded voice calls, the telephone numbers that Register.com marked as wrong or reassigned, and the artificial or prerecorded voice calls that Register.com placed to those telephone numbers. *See* Defendant's Responses to Plaintiff's Discovery Requests, RFP Nos. 6-11. These documents, of course, contain the exact type of information that Ms. Lewis can use to rebut Register.com's hypothetical Rule 23-related arguments.

To be sure, addressing, among all else, Rule 23's commonality, typicality, and predominance requirements in connection with a motion to certify a "wrong number" TCPA class like this one, the court in *Knapper v. Cox Commc'ns, Inc.* explained:

> Plaintiff's expert articulates how reverse lookups can be utilized to resolve consent or lack of consent on a class-wide basis. He explains how a reverse lookup service would be used to "determine if a name and associated physical address exists for each cell phone number [appearing in Defendant's records] at the time the calls were made." . . . This process is done in conjunction with (1) subpoenaing wireless carriers to "obtain additional name and address information for the cellular telephone numbers at issue"; (2) checking the addresses against the National Change of Address database; (3) publicizing notice; (4) issuing a press release; (5)

9

> setting up a notice website; and (6) requiring claims forms, self-identifying affidavits, and supporting documentation, which can include copies of telephone records from the claimants. . . . Then, a reverse lookup service, Epiq for example, "can compare the names of claimants to [Defendant's] records to establish that a claimant is, or is not, a [subscriber of Defendant]." . . . Thus, it seems unlikely that the issue of consent beyond the notice stage in this litigation would be a predominate issue. Accordingly, the Court finds Plaintiff's proposed methodology for resolving consent or lack thereof on a class-wide basis sufficient.

329 F.R.D. 238, 244–45 (D. Ariz. 2019) (certifying a "wrong number" TCPA class).

Similarly, the court in *Head v. Citibank, N.A.* wrote, in certifying a "wrong number" TCPA class:

> The Court explained issues of consent, or lack of consent, could be overcome on a class-wide basis through the use of a reverse lookup service in conjunction with: "(1) subpoenaing wireless carriers to obtain additional name and address information for the cellular telephone numbers at issue; (2) checking the addresses against the National Change of Address database; (3) publicizing notice; (4) issuing a press release; (5) setting up a notice website; and (6) requiring claims forms, self-identifying affidavits, and supporting documentation."

340 F.R.D. 145, 153 (D. Ariz. 2022).

And analyzing an ascertainability-related argument that a defendant made in response to a motion to certify a "wrong number" TCPA class, the court in *Wesley v. Snap Fin. LLC*, stated:

> Wesley has also described an efficient way to identify these potential class members using Snap's call logs as a starting point. Using Snap's call logs, reverse lookup procedures, and various other techniques described in Wesley's proposed notice plan, Wesley has demonstrated class members can be identified in an efficient way. Snap argues Wesley's proposed class is not ascertainable because of individualized issues of consent, and whether or not the prerecorded voice message "actually played." As previously addressed, neither of these concerns apply given Wesley's narrowly tailored class definition and the common evidence available. Wesley has demonstrated her proposed class is ascertainable.

339 F.R.D. 277, 302 (D. Utah 2021) (certifying a "wrong number" TCPA class).

At bottom, therefore, Register.com cannot argue that Ms. Lewis is unable to satisfy Rule 23's commonality, typicality, and predominance requirements, and that Ms. Lewis's proposed class is not ascertainable, while at the same time refusing to produce the very documents that Ms.

10

Lewis can use to rebut Register.com's Rule 23-related contentions—namely, documents that include the telephone numbers to which Register.com placed artificial or prerecorded voice calls, the telephone numbers that Register.com marked as wrong or reassigned, and the artificial or prerecorded voice calls that Register.com placed to those telephone numbers, all of which Ms. Lewis requests by way of her RFP Nos. 6-11. *See* Defendant's Responses to Plaintiff's Discovery Requests, RFP Nos. 6-11.

And that Register.com states, through its answer to Ms. Lewis's interrogatory no. 13, that it placed a currently undisclosed number of artificial or prerecorded voice calls to 28,727 unique telephone numbers, *see id.*, Interrogatory No. 8, and that "[o]f the 28,727 unique numbers . . . 1,602 . . . were identified as being an incorrect telephone number," *see id.*, Interrogatory No. 13, does not make the documents that Ms. Lewis requests through her RFP Nos. 6-11 "duplicative of other information sought (and provided in response to prior Interrogatories[.]" *Id.*, RFP Nos. 6-11. This is because Ms. Lewis needs, for example, actual telephone numbers to run through a reverse lookup process, to send to wireless carriers in connection with related subpoenas, to scrub against the Federal Communications Commission's Reassigned Numbers Database,[2] and to scrub for cellular telephone numbers.[3] *Accord Knapper*, 329 F.R.D. at 244–45; *Head*, 340 F.R.D. at 153;

---

[2]     *See* https://www.fcc.gov/reassigned-numbers-database ("The FCC's Reassigned Numbers Database (RND) is designed to prevent a consumer from getting unwanted calls intended for someone who previously held their phone number. Callers can use the database to determine whether a telephone number may have been reassigned so they can avoid calling consumers who do not want to receive the calls.").

[3]     For instance, while Register.com states, through its answer to Ms. Lewis's interrogatory no. 11, that of the 28,727 telephone numbers to which it placed an artificial or prerecorded voice call "17,640 . . . were identified as being cellular telephone numbers," Defendant's Responses to Plaintiff's Discovery Requests, Interrogatory No. 11, Register.com refuses to identify the number of the 1,602 telephone numbers that it marked as "wrong numbers" that were assigned to a cellular telephone service. *See id.* This distinction is vital because the provision under which Ms. Lewis sues—47 U.S.C. § 227(b)(1)(A)(iii)—does not apply to landlines. Ms. Lewis, therefore, requires

*Wesley,* 339 F.R.D. at 302. And Ms. Lewis cannot perform any of those tasks with only a high-level accounting of the number of those telephone numbers, which is all Register.com has provided to Ms. Lewis to date.

### C. Register.com's objections to Ms. Lewis's request for production nos. 6-11 are meritless.

Register.com refuses to produce documents responsive to Ms. Lewis's RFPs directed to elicit information about, for the most part, the telephone numbers to which Register.com placed artificial or prerecorded voice calls and marked as wrong or reassigned, and the artificial and prerecorded voice calls Register.com placed to those telephone numbers. *See* Defendant's Responses to Plaintiff's Discovery Requests, RFP Nos. 6-11. But in doing so, Register.com makes no effort to do anything "more than 'simply intone [the] familiar litany that the [subject discovery requests] are burdensome, oppressive or overlybroad'." *Lavalle v. One Buckhead Loop Condo. Ass'n, Inc.*, No. 1:08-CV-3678-BBM-AJB, 2009 WL 10711942, at *3 (N.D. Ga. Apr. 10, 2009).

And Register.com certainly does not, as it must, "'establish[] undue burden' through detailed affidavits or other evidence[.]" *Coker v. Duke & Co., Inc.*, 177 F.R.D. 682, 686 (M.D. Ala. 1998); *see also Keevy*, 2025 WL 896299, at *1 ("[a] party resisting discovery on the basis of undue burden must show with specificity that the discovery requests a[t] issue are objectionable. . . . This showing typically requires affidavits or other evidence supporting a party's assertions of burden."). This is particularly noteworthy here, as Register.com necessarily prepared and readily possesses many, if not all of the documents Ms. Lewis seeks by way of her RFPs 6-11. That is, Register.com must have compiled the subject information now at issue in order to answer Ms. Lewis's interrogatory nos. 7-13. *See* Defendant's Responses to Plaintiff's Discovery Requests,

---

the actual 1,602 telephone numbers at issue—not just an accounting of them—to determine which are assigned to cellular telephones.

12

Interrogatory Nos. 7-13. Consequently, because Register.com fails to "show specifically . . . how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden'," *Lavalle*, 2009 WL 10711942, at *3, its related objections fail.

Indeed, as the court in *Digital Media Sols., Inc.* stated when faced with similar objections to discovery requests that are analogous to Ms. Lewis's request for production nos. 6-11:

> Digital simply presents conclusory assertions that the burden of producing information responsive to ROGs 7–16 and RFPs 7–14, 17, 19, 34–35 would completely outweigh any benefit to Mr. Fralish without any explanation of the nature of the burden of production or any comparison to the benefit of Mr. Fralish. [DE 28 at 3, 5]. The benefit of the production of the information sought through ROGs 8–14 and RFPs 7–10, 14 is demonstrated by the fact that it is relevant to the Rule 23 class action certification requirements as discussed above. *See Gebka*, 2021 WL 825612, at *6–7. Additionally, the production of the discovery sought in ROGs 15–16, RFPs 7, 11–12, 34–35, would be beneficial insofar as it is relevant to Digital's affirmative defense that they had received consent to contact Mr. Fralish and members of the putative class. [DE 6 at 20]. As Digital has not shown the point at which the burden of producing this discovery outweighs its benefits, Digital has not met its burden and its undue burden objections are overruled.

2021 WL 5370104, at *10; *see also Deliver Tech., LLC*, 2021 WL 3285528, at *9 (same).

## Conclusion

Because "[o]ur entire civil justice system is dependent on accurate and truthful discovery," "the importance of accurate and truthful discovery to the civil justice system cannot be overstated." *Murray v. Conseco, Inc.*, No. 1:03-CV-1701-LJM-JMS, 2008 WL 5635955, at *4 (S.D. Ind. Nov. 5, 2008) (internal citation omitted), *objections sustained in part and overruled in part,* No. 1:03-CV-1701-LJM-JMS, 2009 WL 363803 (S.D. Ind. Feb. 6, 2009).

That is, "[c]ivil litigation is not a game of hide-the-ball." *Santiago v. Furniture Chauffeurs, Piano Movers, Packers, & Handlers Local 705*, No. 99 C 2886, 2001 WL 11058, at *7 (N.D. Ill. Jan. 4, 2001). And "[d]iscovery is n[either] a game in which each party plays a card and waits for

the opponent's and the court's response before deigning to release another," *see Computer Acceleration Corp. v. Microsoft Corp.*, No. 9:06-CV-140, 2007 WL 2584827, at *1 (E.D. Tex. Aug. 28, 2007), nor "a game of cat and mouse, of continual pursuit and near capture by one party and endless escape by the other." *King v. Dillon Transp., Inc.*, No. CV411-028, 2012 WL 592191, at *3 (S.D. Ga. Feb. 22, 2012) ("It is intended to be a self-executing, extrajudicial exercise that depends upon the parties' careful attention to and compliance with the rules.").

This Court should compel Defendant to meaningfully participate in the discovery process. Accordingly, Ms. Lewis requests that this Court order Register.com to produce, within fourteen days, documents responsive to her RFP nos. 6-11.

Dated: September 3, 2025

*/s/ Aaron D. Radbil*
Aaron D. Radbil
Greenwald Davidson Radbil PLLC
5550 Glades Road, Suite 500
Boca Raton, Florida 33431
(561) 826-5477
aradbil@gdrlawfirm.com

Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com

*Counsel for Plaintiff and the proposed class*