UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TIFFANY LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-00275-JPH-MJD |
| | ) | |
| REGISTER.COM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

This matter is before the Court on two related motions: Defendant's Motion for Bifurcation of Discovery, [Dkt. 40], and Plaintiff's Motion to Compel Production of Documents Responsive to Her Request for Production Nos. 6-11, [Dkt. 42]. The Court, being duly advised, **DENIES** Defendant's motion and **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for the reasons set forth below.

**I. Background**

Plaintiff filed this case on February 11, 2025, [Dkt. 1], and filed an Amended Complaint to correct the name of the Defendant on April 5, 2025, [Dkt. 12]. Plaintiff alleges that Defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by using an artificial or prerecorded voice to call her telephone number "intending to reach someone other than, and unknown to, Plaintiff." [Dkt. 12 at 3.] Plaintiff further alleges that she is not a customer of Defendant, does not have an account with Defendant, and did not consent to receive prerecorded calls from Defendant. *Id.* at 3-4. In addition to her individual claims, Plaintiff seeks to represent the following class:

> All persons throughout the United States (1) to whom Register.com, Inc. placed a call, (2) directed to a number assigned to a cellular telephone service, but not assigned to an Register.com, Inc. customer or accountholder, (3) in connection with which Register.com, Inc. used an artificial or prerecorded voice, (4) from four years prior to the filing of this case through the date of class certification.

*Id.* at 4-5.

Defendant filed a motion to dismiss the Amended Complaint on April 28, 2025. [Dkt. 17.] That motion remains pending. On August 27, 2025, Defendant moved to strike the class allegation allegations in the Amended Complaint, [Dkt. 39]. That motion is not yet ripe.

## II. Discussion

Both of the motions before the Court relate to Defendant's desire to postpone certain discovery until after the issue of class certification has been decided. The Court resolves each motion, in turn, below.

### A. Motion to Bifurcate

In its motion to bifurcate, [Dkt. 40], Defendant argues that "it would be improper and inefficient for the parties to proceed with class-wide merits discovery" prior to the resolution of its recently filed Motion to Strike Class Allegations. [Dkt. 40 at 2.] Defendant proposes that the parties "first engage in pre-class certification discovery and address whether it is appropriate for this action to proceed on a class-wide basis. Depending upon the outcome of the first phase, the parties would then engage in discovery going to the merits of the class claims." *Id.* Defendant argues that

> good cause exists for the bifurcation of discovery in this case. A phased approach to discovery will (1) expedite the resolution of class certification issues, as is required by the Federal Rules; (2) prevent the parties from expending time and resources litigating the merits of the class members' claims until the viability of the class is established; and (3) protect the privacy of thousands of consumers who do not (and may never) have viable TCPA claims against Defendant.

*Id.*

Defendant's motion is essentially a motion to stay class-wide merits discovery pending the resolution of the class certification issue, by means of a ruling on either Defendant's not-yet-ripe motion to strike the class allegations or Plaintiff's not-yet-filed motion for class certification. As the Court has noted before:

> A court may stay discovery through an exercise of its inherent authority to manage litigation or through its authority under Federal Rule of Civil Procedure 26(c). *See, e.g., E.E.O.C. v. Fair Oaks Dairy Farms, LLC,* No. 2:11 CV 265, 2012 WL 3138108, at *2 (N.D. Ind. Aug.1, 2012) (citing *Landis v. North American Co.,* 299 U.S. 248, 254-55, 57 S. Ct. 163, 81 L. Ed. 153 (1936)); *see also* Fed. R. Civ. P. 26(c)(1) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"). The party seeking a stay has no absolute right to a stay; rather, that party "bears the burden of proof to show that the Court should exercise its discretion in staying the case[.]" *Cloverleaf Golf Course, Inc. v. FMC Corp.,* No. 11–CV–190–DRH, 2011 WL 2838178, at *2 (S.D. Ill. July 15, 2011) (citing *Indiana State Police Pension Trust v. Chrysler LLC,* 556 U.S. 960, 961, 129 S. Ct. 2275, 173 L.Ed.2d 1285 (2009)).
>
> To carry its burden, the movant must show that good cause exists for the stay: the good cause determination encompasses factors such as whether the stay will prejudice the non-movant; whether the stay will simplify the issues in the case; and whether the stay will reduce the burden of litigation for the parties or the court. *Fair Oaks Dairy Farms,* 2012 WL 3138108, at *2 (citing *Abbott Laboratories v. Matrix Laboratories, Inc.,* 2009 WL 3719214, *2 (N.D.Ill.2009)); *see also id.* (emphasis added) (quotation marks and citations omitted) ("[The Court should] balance interests favoring a stay against interests frustrated by the action in light of the court's paramount obligation to exercise jurisdiction timely in cases properly before it."). District courts have "*extremely broad discretion*" in weighing these factors and in deciding whether a stay should issue. *Cloverleaf,* 2011 WL 2838178, at *2 (emphasis original) (citing *Crawford-El v. Britton,* 523 U.S. 574, 598, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998)).

*U.S. ex rel. Robinson v. Indiana Univ. Health Inc.*, 2015 WL 3961221, at *1-2 (S.D. Ind. June 30, 2015). There are instances in which a party could demonstrate that staying discovery is the better course of action. However, the Court, in its discretion, finds that Defendant has not done so in this case.

The crux of Defendant's position is that it should not have to expend resources to respond to or conduct discovery relating to the putative class members in this case unless and until a class is certified because it believes class certification is not appropriate and therefore no class will be certified. However, district courts are tasked with ensuring the "just, speedy, and inexpensive determination" of every case before it. Fed. R. Civ. P. 1. There is certainly a chance that staying class discovery pending the resolution of the class certification issue would make the litigation less expensive, because there is a chance that no class will be certified. But there is also a chance that staying class discovery pending the resolution of the class certification issue will run afoul of the directive that this case be resolved in a speedy manner. If a class ultimately is certified, the delay in class discovery would mean a significant delay in the ultimate resolution of this case. In addition, granting Defendant's motion to bifurcate would almost certainly lead to disputes over whether a particular discovery request is or is not relevant to class certification issues. *See* Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351 (2011) ("The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.") (citation and quotation marks omitted).[1] The need to resolve those requests would both delay the resolution of the class certification issue and chip away at any possible cost savings engendered by the stay.

---

[1] The Court recognizes that Defendant's position is that Plaintiff's class certification allegations are facially deficient. What Defendant fails to acknowledge is that "the obligation to define the class falls on the judge's shoulders," Chapman v. First Index, Inc., 796 F.3d 783, 785 (7th Cir. 2015), so even if the class definition proposed in the complaint is not properly certified, that does not necessarily mean that there is no proper class that could be identified by the Court. *See, e.g.*, Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 825 (7th Cir. 2012) ("Defining a class so as to avoid, on one hand, being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science. Either problem can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis.").

The existence of these competing considerations is why staying discovery is the exception, not the norm. Indeed, "Courts disfavor stays of discovery 'because they bring resolution of the dispute to a standstill.'" *Edon v. PNC Bank*, 2025 WL 1598977, at *1 (S.D. Ind. May 23, 2025) (quoting *DDML Holdings LLC v. Hennessy*, 2024 WL 3400230, at *1 (S.D. Ind. 2024), *reconsideration denied*, 2024 WL 3718146 (S.D. Ind. 2024)) (in turn quoting *Red Barn Motors, Inc. v. Cox Enterprises, Inc.*, 2016 WL 1731328, at *3 (S.D. Ind. 2016)). In order to show the Court that it should exercise its discretion and stay discovery, Defendant must thus demonstrate that there is some reason to do so in this case that would not also exist in any typical class action case, or, for that matter, any time a motion to dismiss is filed in a case. Defendant has not done so.

Defendant asserts that it is "highly pertinent" that "in the event Plaintiff's request for class certification is denied, the case is unlikely to continue" because the small amount of damages suffered by Plaintiff would not make it worthwhile to continue to pursue the case. [Dkt. 48 at 8.] Defendant cites one case that expresses the view that the likelihood that Plaintiff will not be motivated to litigate the case if class certification is denied is relevant to the decision whether to stay discovery. *See* [Dkt. 40 at 10-11] (citing *Harris v. comScore, Inc.*, 2012 WL 686709, at *4 (N.D. Ill. Mar. 2, 2012) ("McLauchlin on Class Actions summarizes that '[c]ourts are more likely to decline requests to stay pure merits discovery when the nature of the putative representative's claims suggests that it would continue to prosecute individual claims if certification is denied,' which suggests that courts are indeed more likely to grant requests to stay merits discovery when the nature of the putative representative's claims indicates that the claimant would *not* pursue their claims if certification is denied.") (quoting McLauchlin on Class Actions (Eighth) § 3:10

(2011)).[2]  Again, though, this factor does not distinguish this case from any case in which a motion to dismiss is filed; if the motion is granted and the case is dismissed, it, too, will not be pursued and any discovery that has been conducted will have been wasted effort.

Defendant does argue that class discovery will contain what it characterizes as "the sensitive personal data of Defendant's customers" because it will "require the disclosure of the names, phone numbers, and other personal information of" those customers. [Dkt. 40 at 14.] Names and phone numbers do not seem particularly sensitive, and Defendant does not elaborate on what the "other personal information" might consist of.  However, any personal information relating to non-parties, including putative class members, may be treated as confidential pursuant to a protective order, which the parties have been invited to seek, thus ameliorating any possible invasion of the putative class members' privacy.  *See* [Dkt. 27].

There is no question that whether to grant the motion to bifurcate lies within the Court's discretion.  For the reasons set forth above, the Court, in its discretion, finds that Defendant has not persuaded the Court that bifurcation is the better course of action in this case.  Accordingly, the motion to bifurcate, [Dkt. 40], is **DENIED**.

**B. Motion to Compel**

In her motion to compel, Plaintiff seeks an order compelling Defendant to produce documents responsive to her Document Requests Nos. 6-11.  The requests read as follow:

> 6.  Documents and electronically stored information sufficient to identify the unique telephone numbers to which Defendant made, or caused to be made, a call or calls in connection with which it used, or caused to be used, an artificial or prerecorded voice.
>
> 7. For the telephone numbers Defendant identifies through its answer to interrogatory no. 8, and through its response to request for production no. 6,

---

[2] The other case cited by Defendant for that proposition, *Am. Nurses' Assoc. v. State of Illinois*, 1986 WL 10382 (N.D. Ill. Sept. 12, 1986), does not directly support it.

documents and electronically stored information sufficient to identify those for which Defendant's records show that a called party was not the person Defendant intended to reach by placing a call to one of the telephone numbers, or that a person associated with one of the telephone numbers indicated Defendant contacted the wrong person or telephone number, or that a person associated with one of the telephone numbers asked Defendant to stop calling, or that a vendor or third party identified one of the telephone numbers as a wrong or potential wrong number.

8. For the telephone numbers Defendant identifies through its answers to interrogatory nos. 8-9, and through its responses to request for production nos. 6-7, documents and electronically stored information sufficient to identify those to which Defendant made, or caused to be made, a call or calls in connection with which it used, or caused to be used, an artificial or prerecorded voice, after Defendant's records showed that a called party was not the person Defendant intended to reach by placing a call to one of the telephone numbers, or that a person associated with one of the telephone numbers indicated Defendant contacted the wrong person or telephone number, or that a vendor or third party identified one of the telephone numbers as a wrong or potential wrong number, or the called party requested that Defendant stop calling.

9. For the telephone numbers Defendant identifies through its answers to interrogatory nos. 8-10, and through its responses to requests for production nos. 6-8, documents and electronically stored information sufficient to identify those that were, or that Defendant's records indicate were, assigned to a cellular telephone service.

10. For the telephone numbers Defendant identifies through its answers to interrogatory nos. 8-11, and through its responses to request for production nos. 6-9, documents and electronically stored information sufficient to identify the calls Defendant made, or caused to be made, to them, in connection with which Defendant used, or caused to be used, an artificial or prerecorded voice.

11. For the telephone numbers Defendant identifies through its answers to interrogatory nos. 8-11, and through its responses to request for production nos. 6-9, documents and electronically stored information sufficient to identify the calls Defendant made, or caused to be made, to them, in connection with which Defendant used, or caused to be used, an artificial or prerecorded voice, after Defendant's records showed that a called party was not the person Defendant intended to reach by placing a call to one of the telephone numbers, or that a person associated with one of the telephone numbers indicated Defendant contacted the wrong person or telephone number, or that a vendor or third party identified one of the telephone numbers as a wrong or potential wrong number, or the called party requested that Defendant stop calling.

[Dkt. 42-2 at 16-20.]

The scope of discovery is governed by Federal Rule of Civil Procedure 26(b)(1), which provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Defendant's arguments in its response to the motion to compel are, in large part, the same as those made in support of its motion to bifurcate. Those arguments—in essence, that Defendant should not be required to engage in what Defendant deems to be merits discovery before a class is certified—are rejected for the reasons set forth above.

Defendant also objects to the fact that the requests seek information about all calls made by Defendant using an artificial or prerecorded voice, regardless of whether those calls were made to Defendant's customers—who are not putative class members—or not. Defendant argues:

> Response to these requests would require Register to disclose the personal data of thousands of its past and existing customers, and inquiring individuals who consented to be called by Register—all of whom have no grievance under the TCPA whatsoever. The disclosure of these individuals' personal data is not reasonably calculated to lead to the discovery of admissible information, given that these individuals have no grievance under the TCPA, and, therefore, cannot qualify for membership in Plaintiff's proposed class.

***

> On balance, the unnecessary burden and intrusion that would result from the disclosure of this information far outweighs its potential utility in this case. Disclosure of customer data implicates considerable privacy and consent concerns. Courts instruct that "[w]hen the constitutional right of privacy is involved, 'the party seeking discovery must demonstrate a compelling need for

8

> discovery, and that compelling need must be so strong as to outweigh the privacy right when these two competing interests are carefully balanced.'" *Wiegele v. Fedex Ground Package Sys.*, 2007 WL 628041, at *2 (S.D. Cal. Feb. 8, 2007). To this end, courts have observed that "[e]ven when discovery of private information is found directly relevant to the issues of ongoing litigation," it should "not automatically be allowed." *Artis v. Deere & Co.*, 276 F.R.D. 348, 352 (N.D. Cal. 2011) (quoting *Wiegele*, 2007 WL 628041, at *2). Rather, "there must a 'careful balancing' of the 'compelling public need' for discovery against the 'fundamental right of privacy.'" *Id.*

[Dkt. 46 at 8, 9.] The case cited by Defendant notwithstanding, the Court notes that no **constitutional** right to privacy would be implicated by Defendant producing the requested documents in this case. The non-parties may have a privacy interest in not having their private information disclosed, but given the "private information" at issue here—phone numbers and the fact that they received calls from Defendant—and the fact that the extent of the disclosure can be limited by the entry of a protective order, the Court, like the courts in both of the cases Defendant cites, finds that Plaintiff's right to conduct discovery in this case outweighs those particular privacy interests.

That said, Defendant is correct that Document Request No. 6 is overly broad because it seeks **all** telephone numbers Defendant called, while the putative class is limited to those who received calls on a "number assigned to a cellular telephone service." Plaintiff does not explain how calls placed to a landline are relevant to the claims or defenses in this case, as such calls are expressly excluded from the class definition. Accordingly, Plaintiff's motion to compel is **GRANTED IN PART** and **DENIED IN PART**. Defendant may limit its response to Document Request No. 6 to "numbers assigned to a cellular telephone service."

The Court recognizes that the putative class is also limited to persons who were not customers or accountholders of Defendant and that the document requests at issue are not so limited. However, as Plaintiff explains in her brief, the information Plaintiff seeks is relevant to

9

the claims or defenses in this case because it will permit Plaintiff to conduct investigation into the numbers in question and ascertain which of those numbers did not belong to Defendant's customers or accountholders at the relevant time. See [Dkt. 42 at 9-10]. Thus, the Court finds the information to be discoverable. See Prater, 2023 WL 6158836, at *4 (noting that "establishing relevancy is not a high bar, and where 'relevance is in doubt, courts should err on the side of permissive discovery.'") (quoting Wiginton v. CB Richard Ellis, Inc., 229 F.R.D. 568, 577 (N.D. Ill. 2004) (citation omitted) and citing Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc., 2021 WL 3186959, at *3 (S.D. Ill. July 28, 2021) ("relevance must be broadly construed.")).

Finally, Defendant also objects that its Privacy Policy will require it to notify its customers that it has disclosed their personal data in this case and that will impose a burden on Defendant. As the Court has noted on many occasions,"'[a] party resisting discovery on the basis of undue burden must show with specificity that the discovery requests a[t] issue are objectionable.'" U.S. ex rel. Robinson v. Indiana Univ. Health Inc., 2015 WL 3961221, at *5 (S.D. Ind. June 30, 2015); see also Prater v. All. Coal, LLC, 2023 WL 6158836, at *3 (S.D. Ind. Sept. 21, 2023); Whole Woman's Health All. v. Hill, 2019 WL 10886889, at *3 (S.D. Ind. Oct. 7, 2019)). "This showing typically requires affidavits or other evidence supporting a party's assertions of burden." Prater, 2023 WL 6158836, at *3 (quoting Hill, 2019 WL 10886889, at *3 (in turn citing Jenkins v. White Castle Mgmt. Co., 2014 WL 3809763 at *2 (N.D. Ill. Aug. 4, 2014) ("What is required is affirmative proof in the form of affidavits or record evidence."); Burton Mech. Contractors, Inc. v. Foreman, 148 F.R.D. 230, 233 (N.D. Ind. 1992) ("An objecting party must specifically establish the nature of any alleged burden, usually by affidavit or other reliable evidence.")). Defendant does not attempt to quantify this burden in any way;

accordingly, they have not demonstrated that any such burden is disproportionate or otherwise sufficient to outweigh Plaintiff's need for the information.

For the reasons set forth above, the Court, in its discretion, **DENIES IN PART** Plaintiff's motion to compel with regard to Document Request No. 6 and **GRANTS** Plaintiff's motion to compel in all other respects.

### III. Conclusion

For the reasons set forth above, Defendant's Motion for Bifurcation of Discovery, [Dkt. 40], is **DENIED**, and Plaintiff's Motion to Compel Production of Documents Responsive to Her Request for Production Nos. 6-11, [Dkt. 42], is **GRANTED IN PART** and **DENIED IN PART**. Defendant shall provide a complete and unequivocal response to Plaintiff's Request for Production Nos. 7-11, as well as Plaintiff's Request for Production No. 6 as modified above, on or before **October 3, 2025**.

SO ORDERED.

Dated:  16 SEP 2025

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.