# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| TIFFANY LEWIS, *on behalf of herself and others similarly situated*, | ) Case No.: 1:25-cv-00275-JPH-MJD |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| REGISTER.COM, INC., | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
## OF CLASS ACTION SETTLEMENT

## Table of Contents

Table of Contents ............................................................................................................... i

Table of Authorities .......................................................................................................... iii

Introduction ........................................................................................................................ 1

Summary of the Settlement ................................................................................................ 1

The TCPA ........................................................................................................................... 3

Summary of Relevant Facts ............................................................................................... 3

Argument ............................................................................................................................ 4

    I.    The settlement class meets all requirements for certification under Rule 23. ................... 4

        A.    TCPA claims are well suited for class treatment. ........................................................... 4

        B.    The settlement class satisfies the requirements of Rule 23(a). .................................... 5

            1.    The settlement class is so numerous that joinder of all members is impracticable. ... 5

            2.    Questions of law and fact are common to settlement class members. ....................... 6

            3.    Ms. Lewis's claims are typical of settlement class members' claims ........................ 7

            4.    Ms. Lewis and her counsel will continue to fairly and adequately protect the interests of settlement class members. ................................................................................. 8

        C.    The settlement class satisfies the requirements of Rule 23(b). .................................... 9

            1.    The questions of law and fact common to members of the settlement class predominate over any questions affecting only individual members. ................................ 9

            2.    A class action is superior to other available methods for the fair and efficient adjudication of this matter. ........................................................................................... 10

    II.    The settlement is fair, reasonable, and adequate, under Rule 23(e). ............................... 12

        A.    The strengths of Ms. Lewis's case, as well as the risks inherent in continued litigation and securing class certification, favor preliminary approval. ................................. 14

        B.    The stage of the proceedings, and the experience and views of counsel, favor preliminary approval. .......................................................................................................... 15

        C.    The substantial cash relief afforded by the settlement favors preliminary approval. ... 15

    D.    The remaining Rule 23(e)(2) factors support preliminary approval. ........................... 17

   III.   The proposed notice program is industry standard in TCPA class actions like this one and complies with Rule 23. ........................................................................................................ 19

Conclusion ................................................................................................................................ 20

## Table of Authorities

**Cases**

*Abboud v. Circle K Stores Inc.*,
    No. 23-cv-01683-PHX-DWL, 2025 WL 2800052 (D. Ariz. Sept. 30, 2025)……..…….14

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*,
    616 F.2d 305 (7th Cir. 1980)…………………...…………………….………12, 13

*Birchmeier v. Caribbean Cruise Line, Inc.*,
    302 F.R.D. 240 (N.D. Ill. 2014)………………...……...…………………………7, 8, 18

*Bonoan v. Adobe Inc.*,
    No. 3:19-CV-01068-RS, 2020 WL 6018934 (N.D. Cal. Oct. 9, 2020)…………..……..19

*Brown v. DirecTV, LLC*,
    562 F. Supp. 3d 590 (C.D. Cal. 2021)…………………………………………..5

*Charvat v. Allstate Corp.*,
    29 F. Supp. 3d 1147 (N.D. Ill. 2014)………………………...……………………..3

*Cornelius v. Deere Credit Servs., Inc.*,
    No. 4:24-cv-25-RSB-CLR, 2025 WL 502089 (S.D. Ga. Feb. 13, 2025)…………..…18, 20

*Cortes v. Nat'l Credit Adjusters, L.L.C.*,
    No. 216CV00823MCEEFB, 2020 WL 3642373 (E.D. Cal. July 6, 2020)…………..…7, 10

*Cross v. Wells Fargo Bank, N.A.*,
    No. 15-cv-1270, 2016 WL 5109533 (N.D. Ga. Sept. 13, 2016)……………...………17

*Custom Hair Designs by Sandy, LLC v. Cent. Payment Co., LLC*,
    No. 8:17CV310, 2020 WL 639613 (D. Neb. Feb. 11, 2020)………………..……...11, 12

*Donovan v. Estate of Fitzsimmons*,
    778 F.2d 298 (7th Cir. 1985)……………………………….………………………..14

*Duke v. Bank of Am., N.A.*,
    No. 12-4009, ECF Nos. 51, 59 (N.D. Cal. Feb. 19, 2014)………………..………………17

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)……………………………………………..………………19

*Elliot v. Humana Inc.*,
    No. 3:22-cv-00329-RGJ, 2025 WL 1065755 (W.D. Ky. Apr. 9, 2025)…………..……..4

*Facebook, Inc. v. Duguid*,
    141 S. Ct. 1163 (2021)……………………………………………………………..3

*Gadelhak v. AT&T Servs., Inc.*,
    950 F.3d 458 (7th Cir. 2020)………………………………………………………3

*Gehrich v. Chase Bank USA, N.A.*,
    316 F.R.D. 215 (N.D. Ill. 2016)…………………..…………………………6, 10

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998)……………………………………………………15

*Head v. Citibank, N.A.*,
    340 F.R.D. 145 (D. Ariz. 2022)………………………….…………………..4, 10

*In re Capital One Tel. Consumer Prot. Act Litig.*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015)………………………………………………18

*Ira Holtzman, C.P.A., & Assocs. v. Turza*,
    728 F.3d 682 (7th Cir. 2013)……………………………………………………4

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996)………………………..………………………………12

*Jackson v. Discover Fin. Servs., Inc.*,
    No. 1:21-cv-04529 (N.D. Ill. 2023)………………………………………………16

*James v. JPMorgan Chase Bank, N.A.*,
    No. 15-2424, 2016 WL 6908118 (M.D. Fla. Nov. 22, 2016)……………………..17

*Jewell v. HSN, Inc.*,
    No. 19-cv-247-jdp, 2020 WL 4904427 (W.D. Wis. Aug. 19, 2020)……..………………18

*Johnson v. Navient Sols., Inc.*,
    315 F.R.D. 501 (S.D. Ind. 2016)……………………………...………………………..5, 10

*Knapper v. Cox Commc'ns, Inc.*,
    329 F.R.D. 238 (D. Ariz. 2019)………………..…………………………5, 6, 7, 11

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015)………………………………………………..18

*Lavigne v. First Cmty. Bankshares, Inc.*,
    No. 1:15-cv-00934-WJ/LF, 2018 WL 2694457 (D.N.M. June 5, 2018)……………..……5

*Lucas v. Synchrony Bank*,
    No. 4:21-cv-70-PPS, ECF No. 47 (N.D. Ind. Nov. 18, 2022)……………………..………..16

*Luster v. Wells Fargo Dealer Servs., Inc.*,
    No. 15-1058, ECF No. 60 (N.D. Ga. Feb. 23, 2017)……………..………………….....16, 17

*Manno v. Healthcare Revenue Recovery Grp., LLC*,
    289 F.R.D. 674 (S.D. Fla. 2013)………………………………….……………………………12

*Markos v. Wells Fargo Bank, N.A.*,
    No. 15-1156, 2016 WL 4708028 (N.D. Ga. Sept. 7, 2016)…………….…………………17

*Markos v. Wells Fargo Bank, N.A.*,
    No. 15-1156, 2017 WL 416425 (N.D. Ga. Jan. 30, 2017)………..…………………………17

*McMillion v. Rash Curtis & Assocs.*,
    No. 16-CV-03396-YGR, 2017 WL 3895764 (N.D. Cal. Sept. 6, 2017)………..………….....5

*Miles v. Medicredit, Inc.*,
    No. 4:20-cv-1186-JAR, 2023 WL 1794559 (E.D. Mo. Feb. 7, 2023)………..…………….16

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015)……………………………………………………………………6

*Muro v. Target Corp.*,
    580 F.3d 485 (7th Cir. 2009)……………………………………………………………………7

*Murray v. E\*Trade Fin. Corp.*,
    240 F.R.D. 392 (N.D. Ill. 2006)………………………..……………………………………8

*Murray v. New Cingular Wireless Serv., Inc.*,
    232 F.R.D. 295 (N.D. Ill. 2005)…………………………..……………………………………8

*N. L. by Lemos v. Credit One Bank, N.A.*,
    960 F.3d 1164 (9th Cir. 2020)……………………………..…………………………………3

*Patterson v. OptumRx, Inc.*,
    No. 1:24-CV-00689-TWP-KMB, 2025 WL 2990807 (S.D. Ind. Oct. 22, 2025)………..…9

*Picchi v. World Fin. Network Bank*,
    No. 11-61797 (S.D. Fla. Jan. 30, 2015)……………………………….……………………..17

*Prather v. Wells Fargo Bank, N.A.*,
    No. 15-4231, 2017 WL 770132 (N.D. Ga. Feb. 24, 2017)…………..……………………16

*Quiroz v. Rev. Prod. Mgmt., Inc.*,
   252 F.R.D. 438 (N.D. Ill. 2008)……………………...…………………………………8

*Reliable Money Ord., Inc. v. McKnight Sales Co.*,
   281 F.R.D. 327 (E.D. Wis. 2012)……………………………...…………………………11

*Revitch v. Citibank, N.A.*,
   No. 17-6907, 2019 WL 1903247 (N.D. Cal. Apr. 28, 2019)……………………………14

*Reyes v. BCA Fin. Servs., Inc.*,
   No. 16-24077-CIV-Goodman, 2018 WL 3145807 (S.D. Fla. June 26, 2018)………..……5

*Samson v. United Healthcare Servs. Inc.*,
   No. 2:19-CV-00175, 2023 WL 6793973 (W.D. Wash. Oct. 13, 2023)……………………4

*Schulte v. Fifth Third Bank*
   805 F. Supp. 2d 560 (N.D. Ill. 2011)……………………………….……………………14

*Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*,
   279 F.R.D. 442 (N.D. Ohio 2012)………………………………………...………………11

*Simpson v. Safeguard Props., LLC*,
   No. 13-2453, 2014 WL 4652336 (N.D. Ill. Sept. 17, 2014)………………….……………5

*Spencer v. #1 A LifeSafer of Ariz., LLC*,
   No. CV-18-02225-PHX-BSB, 2019 WL 1034451 (D. Ariz. Mar. 4, 2019)………………20

*Swanson v. Am. Consumer Indus., Inc.*,
   415 F.2d 1326 (7th Cir. 1969)……………………………………….……………………5

*Swift v. Direct Buy, Inc.*,
   Nos. 2:11–CV–401–TLS, 2:11–CV–415–TLS, 2:11–CV–417–TLS, 2:12–CV–45–TLS,
   2013 WL 5770633 (N.D. Ind. Oct. 24, 2013)………………………………………15, 16

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
   463 F.3d 646 (7th Cir. 2006)………………………………...……………………………13

*Vought v. Bank of Am., N.A.*,
   901 F. Supp. 2d 1071 (C.D. Ill. 2012)……………………………….……………………14

*Vu v. I Care Credit, LLC*,
   No. 17-cv-04609 RAO, 2022 WL 22871480 (C.D. Cal. Nov. 4, 2022)……………..……18

*Wesley v. Snap Fin. LLC*,
   339 F.R.D. 277 (D. Utah 2021)……………………………………………………………5, 6

*Wesley v. Snap Fin. LLC*,
     No. 2:20-cv-00148-RJS-JCB, 2023 WL 1812670 (D. Utah Feb. 7, 2023)…………..……16

*West v. Cal. Servs. Bureau, Inc.*,
     323 F.R.D. 295 (N.D. Cal. 2017)……………………………………………………………..5

*Wilkins v. HSBC Bank Nev., N.A.*,
     No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015)…………………………………16

*Williams v. Bluestem Brands, Inc.*,
     No. 17-1971, 2019 WL 1450090 (M.D. Fla. Apr. 2, 2019)………………………………16

**Rules**

Fed. R. Civ. P. 23(a)(1)……………………………………………………………………………5

Fed. R. Civ. P. 23(a)(3)……………………………………………………………………………7

Fed. R. Civ. P. 23(a)(4)……………………………………………………………………………..8

Fed. R. Civ. P. 23(b)(3)……………………………………………...……………………9, 10, 11

Fed. R. Civ. P. 23(c)(2)(B)……………………………………………………………………19, 20

Fed. R. Civ. P. 23(e)………………………………………………………………………………..13

Fed. R. Civ. P. 23(e)(2)……………………………………..……………………………………18

**Secondary Authorities**

4 Alba Conte & Herbert B. Newberg, Newberg On Class Actions, § 11.25 (4th ed. 2002)………13

Manual For Complex Litigation § 21.632 (4th ed. 2004)…………………………….…………13

**Statutes**

47 U.S.C. § 227(b)(1)(A)…………………………………………………………………1, 3, 9

**Introduction**

Tiffany Lewis filed this class action against Register.com, Inc. ("Register"),[1] asserting, on behalf of herself and others similarly situated, that Register violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A), by using an artificial or prerecorded voice in connection with non-emergency calls it placed to cellular telephone numbers, absent prior express consent. Following nearly a year of contested litigation, and as a result of arm's-length negotiations with the assistance of a well-respected mediator, Ms. Lewis and Register reached an agreement to resolve this matter. The agreement provides for more than $3,300 per potentially affected telephone number.

**Summary of the Settlement**

The parties' settlement resolves this matter on behalf of the following class:

> All persons and entities throughout the United States (1) to whom Register.com, Inc. placed a call, (2) directed to a telephone number assigned to a cellular telephone service, (3) in connection with which Register.com, Inc. used an artificial or prerecorded voice, (4) from February 12, 2021 through November 24, 2025, and (5) after the cellular telephone number was permanently disconnected and made available for reassignment per the Federal Communications Commission's Reassigned Numbers Database.

To compensate settlement class members, Register—through Network Solutions LLC—will create, within thirty days after this Court preliminarily approves the settlement, a non-reversionary, all cash settlement fund in the amount of $1,500,000. Paid from the settlement fund will be compensation to approved claimants, the cost of notice to potential settlement class members and claims administration, litigation costs and expenses subject to this Court's approval,

---

[1]  On July 25, 2025, Register merged into Network Solutions, LLC. Network Solutions, LLC is the surviving entity.

reasonable attorneys' fees subject to this Court's approval, and an incentive award to Ms. Lewis subject to this Court's approval (together "Fees and Costs").

A third-party claims administrator—Kroll Settlement Administration, LLC ("Kroll")— will mail notice of the settlement directly to potential settlement class members together with a detachable claim form that settlement class members can use to submit claims. Kroll will also establish a dedicated settlement website that provides information about the settlement, and through which settlement class members can submit claims electronically.

Each settlement class member who submits an approved claim form will be entitled to a *pro rata* share of the non-reversionary settlement fund after deducting the Fees and Costs.

Any class member who wishes to exclude himself or herself from the settlement can submit a request for exclusion. Likewise, any class member who wishes to object to the settlement can submit an objection.

Upon this Court's entry of a final judgment, each non-excluded settlement class member will release and forever discharge Register and Network Solutions, LLC of any and all rights, duties, obligations, claims, actions, demands, causes of action, suits, damages, or liabilities arising under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, and stemming from 1,652 calls Register made, in connection with which it used an artificial or prerecorded voice, to the 453 cellular telephone numbers, from February 12, 2021 through November 24, 2025, and after the subject telephone numbers were permanently disconnected and made available for reassignment per the Federal Communications Commission's ("FCC") Reassigned Numbers Database ("RND").

The parties' settlement agreement is attached as Exhibit A.

**The TCPA**

The TCPA prohibits, absent prior express consent, calls made using "an artificial or prerecorded voice[.]" 47 U.S.C. § 227(b)(1)(A); *see also Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1173 (2021) ("The statute separately prohibits calls using 'an artificial or prerecorded voice' . . . . Our decision today does not affect that prohibition."). "'[P]rior express consent' under the TCPA is an affirmative defense on which the defendant bears the burden of proof[.]" *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1149 (N.D. Ill. 2014). "[I]ntent to call a customer who had consented to its calls does not exempt [a TCPA defendant] from liability under the TCPA when it calls someone else who did not consent." *N. L. by Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164, 1167 (9th Cir. 2020) (agreeing with the Third, Seventh, and Eleventh Circuits). And a plaintiff's receipt of an unwanted telephone call or text message in violation of the TCPA constitutes a concrete injury in fact sufficient to confer Article III standing. *See Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 463 (7th Cir. 2020) ("We therefore agree with the Second and Ninth Circuits that unwanted text messages can constitute a concrete injury-in-fact for Article III purposes.").

**Summary of Relevant Facts**

From April 10, 2024 through May 13, 2025, Register placed twenty-five artificial or prerecorded voice calls to Ms. Lewis's cellular telephone number. Ms. Lewis, however, was not the intended recipient of these calls. One of Register's customers was.

Ms. Lewis is not, and was not, a Register customer. Ms. Lewis does not, and did not, have a Register account. And Ms. Lewis did not provide her cellular telephone number to Register. Instead, Register's customer provided Ms. Lewis's cellular telephone number to Register through a customer account creation process on November 21, 2000.

3

On May 1, 2024, and again on January 9, 2025, Register marked Ms. Lewis's cellular telephone number as a "Wrong Number." And Ms. Lewis is not alone in her experience with Register. Indeed, from February 12, 2021 through November 24, 2025, Register placed 1,652 calls in connection with which it used an artificial or prerecorded voice to 453 telephone numbers assigned to a cellular telephone service after the telephone numbers were permanently disconnected and made available for reassignment per the FCC's RND.[2]

## Argument

**I.  The settlement class meets all requirements for certification under Rule 23.**

Under Rule 23 of the Federal Rules of Civil Procedure the party seeking class certification must satisfy the four requirements of Rule 23(a)—referred to as numerosity, commonality, typicality, and adequacy of representation—and, relevant here, the requirements of Rule 23(b)(3). Each of these requirements is satisfied.

**A.  TCPA claims are well suited for class treatment.**

"Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013). And this remains true for TCPA class actions like this one involving calls to wrong or reassigned cellular telephone numbers. *See, e.g.*, *Elliot v. Humana Inc.*, No. 3:22-cv-00329-RGJ, 2025 WL 1065755 (W.D. Ky. Apr. 9, 2025) (certifying a "wrong number" TCPA class over objection); *Samson v. United Healthcare Servs. Inc.*, No. 2:19-CV-00175, 2023 WL 6793973 (W.D. Wash. Oct. 13, 2023) (same); *Head v. Citibank, N.A.*, 340 F.R.D. 145 (D. Ariz. 2022)

---

[2]  *See* https://www.fcc.gov/reassigned-numbers-database (last visited Jan. 20, 2026) ("The FCC's Reassigned Numbers Database (RND) is designed to prevent a consumer from getting unwanted calls intended for someone who previously held their phone number. Callers can use the database to determine whether a telephone number may have been reassigned so they can avoid calling consumers who do not want to receive the calls.").

(same); *Wesley v. Snap Fin. LLC*, 339 F.R.D. 277 (D. Utah 2021) (same); *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238 (D. Ariz. 2019) (same); *Reyes v. BCA Fin. Servs., Inc.*, No. 16-24077-CIV-Goodman, 2018 WL 3145807 (S.D. Fla. June 26, 2018) (same), *decertified per agreement of the parties*, 2020 WL 1846165 (S.D. Fla. Mar. 18, 2020); *Lavigne v. First Cmty. Bankshares, Inc.*, No. 1:15-cv-00934-WJ/LF, 2018 WL 2694457 (D.N.M. June 5, 2018) (same); *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295 (N.D. Cal. 2017) (same); *Johnson v. Navient Sols., Inc.*, 315 F.R.D. 501 (S.D. Ind. 2016) (same); *accord Brown v. DirecTV, LLC*, 562 F. Supp. 3d 590 (C.D. Cal. 2021) (denying a motion to decertify a "wrong number" TCPA class); *McMillion v. Rash Curtis & Assocs.*, No. 16-CV-03396-YGR, 2017 WL 3895764 (N.D. Cal. Sept. 6, 2017) (certifying "non-debtor" TCPA classes over objection).

## B. The settlement class satisfies the requirements of Rule 23(a).

### 1. The settlement class is so numerous that joinder of all members is impracticable.

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Where the class numbers at least 40, joinder is generally considered impracticable." *Simpson v. Safeguard Props., LLC*, No. 13-2453, 2014 WL 4652336, at *2 (N.D. Ill. Sept. 17, 2014); *see also Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969) ("Even if the class were limited to 40 stockholders, as proposed by the court below, that is a sufficiently large group to satisfy Rule 23(a) where the individual members of the class are widely scattered and their holdings are generally too small to warrant undertaking individual actions.").

Here, from February 12, 2021 through November 24, 2025, Register placed 1,652 calls in connection with which it used an artificial or prerecorded voice to 453 telephone numbers assigned to a cellular telephone service after the telephone numbers were permanently disconnected and

made available for reassignment per the FCC's RND. Numerosity is therefore satisfied.

### 2.  Questions of law and fact are common to settlement class members.

Rule 23(a)(2) requires the existence of common questions of law or fact. A common question is one where "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 673 (7th Cir. 2015).

Here, whether Register used an artificial or prerecorded voice in connection with the calls at issue is a question common to the settlement class. *See Knapper*, 329 F.R.D. at 242 ("Whether Defendant used a[] . . . prerecorded voice to allegedly call the putative class members would produce an answer that is central to the validity of each claim in one stroke."). Additionally, that each member of the settlement class suffered the same injury and is entitled to the same statutorily mandated relief gives rise to another common question. *See id.* ("[A]ll putative class members allegedly suffered the same injury—a receipt of at least one phone call by Defendant in violation of the TCPA. Thus, whether each class member suffered the same injury is also a 'common contention.' . . . Therefore, commonality is satisfied."); *see also Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 224 (N.D. Ill. 2016) ("Each class member suffered roughly the same alleged injury: receipt of at least one phone call or text message from Chase to her cell phone."). What's more, whether liability attaches to "wrong number" calls is a question common to the settlement class. *See Knapper*, 329 F.R.D. at 242 (finding that "whether liability attaches for wrong or reassigned numbers" would "produce an answer that is central to the validity of each claim in one stroke").

Questions of law and fact are therefore common to members of the settlement class. *See Wesley*, 339 F.R.D. at 291-92 (finding "(1) whether Snap used a prerecorded voice in connection

with the calls at issue; (2) whether the class members are entitled to the statutorily mandated relief; and (3) whether liability attaches to Snap's wrong number calls" as "common questions [that] will also provide common answers to legal and factual questions for all class members.").

### 3. Ms. Lewis's claims are typical of settlement class members' claims.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement "directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009).

Here, Ms. Lewis and members of the settlement class were similarly harmed by receiving artificial or prerecorded voice calls from Register absent consent. Ms. Lewis, therefore, possesses the same interests, and seeks the same relief, as do members of the settlement class. Correspondingly, Ms. Lewis's claims are typical of the claims of members of the settlement class. *See Cortes v. Nat'l Credit Adjusters, L.L.C.*, No. 216CV00823MCEEFB, 2020 WL 3642373, at *5 (E.D. Cal. July 6, 2020) ("Here, Plaintiff asserts the same claims that could be brought by any of the other class members, specifically that Defendant used an . . . artificial or prerecorded voice message to make unsolicited calls regarding a purported debt. Therefore, the typicality requirement is satisfied.").

As well, that the subject calls Register placed to Ms. Lewis and settlement class members were wrong-number calls makes Ms. Lewis's claims typical. *See Knapper*, 329 F.R.D. at 242-43 ("The Court finds that the typicality requirement is met. Here, Plaintiff . . . alleges that Defendant did not have consent to call her before it dialed her phone number. . . . She alleges that the putative class members were also wrongly contacted by Defendant. . . . Thus, the nature of Plaintiff's claim is reasonably coextensive with the putative class members."); *see also Birchmeier v. Caribbean*

7

*Cruise Line, Inc.*, 302 F.R.D. 240, 252 (N.D. Ill. 2014) (typicality satisfied for a TCPA class because "the named plaintiffs received the same type of call as the other class members").

### 4. Ms. Lewis and her counsel will continue to fairly and adequately protect the interests of settlement class members.

This Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine if the plaintiff has met the adequacy requirement of Rule 23(a)(4), the Court must ask whether the named Plaintiff: (1) has antagonistic or conflicting claims with other members of the class; (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) has counsel that is competent, qualified, experienced and able to vigorously conduct the litigation." *Quiroz v. Rev. Prod. Mgmt., Inc.*, 252 F.R.D. 438, 442 (N.D. Ill. 2008). "To be adequate, the class representative must maintain only an understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery." *Id.* (quoting *Murray v. E*Trade Fin. Corp.*, 240 F.R.D. 392, 398 (N.D. Ill. 2006)). The burden of establishing that the class representative meets this standard is "not difficult." *Murray v. New Cingular Wireless Serv., Inc.*, 232 F.R.D. 295, 300 (N.D. Ill. 2005).

Here, Ms. Lewis is capable of protecting, has protected, and will continue to protect, the interests of settlement class members. *See* Declaration of Tiffany Lewis, attached as Exhibit B, ¶ 13. From the outset, Ms. Lewis has been, and remains, involved in this matter. *Id.* at ¶ 14. She has, and will continue to, communicate regularly with her counsel. *Id.* at ¶ 17. And she has, and is prepared to, make all necessary decisions involving this case with settlement class members' best interests in mind. *Id.* at ¶ 15.

Furthermore, Ms. Lewis retained counsel experienced and competent in class action litigation, including that under the TCPA. *See* Declaration of Aaron D. Radbil, attached as Exhibit

8

C, ¶¶ 9-44; Declaration of Anthony Paronich, attached as Exhibit D. Indeed, courts have not only appointed Ms. Lewis's counsel as class counsel in dozens of consumer protection class actions in the past few years alone, but many have also taken care to highlight their wealth of experience and skill. *See* Declaration of Aaron D. Radbil, ¶¶ 9-23.

Ms. Lewis's counsel also satisfy the considerations of Rule 23(g). *See Patterson v. OptumRx, Inc.*, No. 1:24-CV-00689-TWP-KMB, 2025 WL 2990807, at *1-2 (S.D. Ind. Oct. 22, 2025) (Pratt, J.) ("This Court appoints Plaintiff as the representative for the settlement class, and appoints Anthony Paronich of Paronich Law, P.C. and James Davidson of Greenwald Davidson Radbil PLLC ("GDR") as class counsel for the settlement class. * * * Plaintiff and class counsel will fairly and adequately protect the interests of all of settlement class members.").

### C. The settlement class satisfies the requirements of Rule 23(b).

#### 1. The questions of law and fact common to members of the settlement class predominate over any questions affecting only individual members.

Rule 23(b)(3) requires "that questions of law or fact common to class members predominate over any questions affecting only individual members[.]" Fed. R. Civ. P. 23(b)(3). Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually, and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class. Fed. R. Civ. P. 23(b)(3), advisory committee's note (1966).

Relevant, then, is that the TCPA prohibits, absent prior express consent, calls made to cellular telephones using "an artificial or prerecorded voice[.]" 47 U.S.C. § 227(b)(1)(A). Given as much, "the predominant issue common to all class members is whether Defendant used an . . . artificial or prerecorded voice message to make unsolicited calls . . . in violation of the TCPA[,]

9

[and] any individualized factual questions are predominated by the common question of Defendant's general TCPA liability." *Cortes*, 2020 WL 3642373, at *5; *see also Gehrich*, 316 F.R.D. at 226 ("common questions [including whether the defendant placed prerecorded calls to cellular telephone numbers] are the main questions in this case, they can be resolved on a class-wide basis without any individual variation, and they predominate over any individual issues").

In short, members of the settlement class did not have accounts with Register. Issues relating to prior express consent, therefore, do not bear on this matter. *See Head*, 340 F.R.D. at 153 (agreeing "that issues of consent do not defeat the class because class members, by definition, are non-customers of Citibank who did not consent to being robocalled").

Additionally, other potential issues—such as "difficult damage calculations, individual determinations of who the telephone user was, when the call was made and proof that [the defendant] actually made the calls . . . difficult[y] [in] determining the identity of users . . . [and] the distinct possibility that every record marked as a wrong number may not have actually been a wrong number"—do not stand in the way of a finding of predominance. *See Johnson*, 315 F.R.D. at 502 (certifying a "wrong number" TCPA class, and rejecting the defendant's contention that individual issues would "overwhelm the litigation and destroy the required commonality of facts").

### 2. A class action is superior to other available methods for the fair and efficient adjudication of this matter.

Rule 23(b)(3) additionally requires a determination that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). A court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class, (3) the desirability or

undesirability of concentrating the litigation of the claims in the particular forum, and (4) the difficulties likely to be encountered in the management of a class action. *Id.*

Pertinent, then, is that litigating TCPA claims as part of a class action is generally superior to litigating them in successive individual lawsuits. *See Reliable Money Ord., Inc. v. McKnight Sales Co.*, 281 F.R.D. 327, 339 (E.D. Wis. 2012), *aff'd*, 704 F.3d 489 (7th Cir. 2013) ("[M]any courts have found class actions to be an appropriate method of adjudication of TCPA violations."). This is, in part, because no one member of a TCPA class has an interest in controlling the prosecution of the action. Here, for example, this is true because settlement class members' claims are identical, they arise from the same standardized conduct, and they result in uniform damages:

> The Court is persuaded that putative class members who would ultimately become part of the class would have little incentive to prosecute their claims on their own. Should individual putative class members choose to file claims on their own, given the potential class size and the relatively small amount of statutory damages for each case, individual litigation would not promote efficiency or reduce litigation costs. This is particularly so for claims that all stem from the same cause of action and involve common issues. Therefore, the Court finds that a class action is a superior method to adjudicate this matter.

*Knapper*, 329 F.R.D. at 247.

Also important, absent a class action hundreds of claims like Ms. Lewis's will go unredressed. *See Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012) ("Under the TCPA, each individual plaintiff is unlikely to recover more than a small amount (the greater of actual monetary loss or $500). Individuals are therefore unlikely to bring suit against [the defendant], which makes a class action the superior mechanism for adjudicating this dispute."). Indeed, the court in *Custom Hair Designs by Sandy, LLC v. Cent. Payment Co., LLC* explained:

> As Judge Posner once stated, "[t]he realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). The

11

> same principle applies in this case. The amount of damages allegedly is over $100,000 million dollars. The damages for these two plaintiffs are approximately $200.00. A class action seems to be the superior method of challenging the actions of the defendant. There is no other way for the plaintiffs to address CPAY's alleged behaviors.

No. 8:17CV310, 2020 WL 639613, at *8 (D. Neb. Feb. 11, 2020).

A class action, therefore, is the superior method to adjudicate this matter. *See Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 690 (S.D. Fla. 2013) ("[T]he Court finds that the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that [a] class action would be the superior method of adjudicating the plaintiffs' [TCPA] claims.").

## II.    The settlement is fair, reasonable, and adequate, under Rule 23(e).

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ("Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.").

Against this backdrop, Rule 23(e) requires that a court preliminarily evaluate the fairness of a class action settlement:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the

12

settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

Manual For Complex Litigation § 21.632 (4th ed. 2004); *see also* 4 Alba Conte & Herbert B. Newberg, Newberg On Class Actions, § 11.25 (4th ed. 2002).

After the court makes a preliminary fairness evaluation, and notice of the class action settlement has been issued, the court must then hold a final fairness hearing to determine whether the proposed settlement is truly fair, reasonable, and adequate. *See* Manual For Complex Litigation § 21.633-34; Newberg, § 11.25.

Again, however, preliminary approval requires only that a court evaluate whether the proposed settlement "is within the range of possible approval." *Armstrong*, 616 F.2d at 314. Nevertheless, and with the understanding that a full fairness determination is not necessary at this preliminary approval stage, the Seventh Circuit identified a number of factors used to assess whether a settlement proposal is fundamentally fair, reasonable, and adequate: (1) the strength of the plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

Rule 23(e) also requires consideration of additional factors, including whether the class representative and class counsel have adequately represented the class, and whether the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e). Here, each relevant factor supports the conclusion that the settlement is fundamentally fair, adequate, and reasonable.

13

**A. The strengths of Ms. Lewis's case, as well as the risks inherent in continued litigation and securing class certification, favor preliminary approval.**

"[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985), *on reh'g sub nom. Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682 (7th Cir. 1986). Here, significant risks and costs lay ahead, as the parties vehemently disagreed about both the merits of the TCPA claims at issue, and propriety of contested class certification.

Absent settlement, Register was certain to oppose the certification of any litigation class— as opposed to the settlement class now before this Court. Indeed, certification of a TCPA class over objection is no guarantee. *See, e.g.*, *Abboud v. Circle K Stores Inc.*, No. 23-cv-01683-PHX-DWL, 2025 WL 2800052 (D. Ariz. Sept. 30, 2025) (denying motion for class certification in TCPA matter); *Revitch v. Citibank, N.A.*, No. 17-6907, 2019 WL 1903247 (N.D. Cal. Apr. 28, 2019) (same). As well, Register would have opposed summary judgment for Ms. Lewis, and likely sought summary judgment for itself. Potential discovery battles also loomed. Trial remained a possibility. And appeals would almost certainly have followed.

Additional litigation would therefore have been costly, time-consuming, and ultimately risky. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("The costs associated with discovery in complex class actions can be significant."). The complex issues encompassed by this action, together with the length of time and expense likely necessary to resolve this case by continued litigation, therefore weigh in favor of preliminary approval. *See Vought v. Bank of Am., N.A.*, 901 F. Supp. 2d 1071, 1092 (C.D. Ill. 2012) ("Overall, the significant complexity of the issues this case presents, the increased length of time that would be necessary to resolve this case by continued litigation, and the corresponding dramatic increase in costs weigh in favor of approving the proposed settlement.").

14

**B. The stage of the proceedings, and the experience and views of counsel, favor preliminary approval.**

During the pendency of this litigation the parties were able to assess the relative strengths and weaknesses of their respective positions, and to compare the benefits of settlement to further litigation. Among all else, Register moved to strike the class allegations and the parties engaged in written discovery, exchanged document productions, and consulted experts. The parties ultimately negotiated the settlement with the help of an experienced class action mediator, after briefing for the mediator issues related to liability and class certification.

Give as much, both Ms. Lewis and her counsel firmly believe that the settlement is fair, reasonable, and adequate, and in the best interests of the settlement class. *See Swift v. Direct Buy, Inc.*, Nos. 2:11–CV–401–TLS, 2:11–CV–415–TLS, 2:11–CV–417–TLS, 2:12–CV–45–TLS, 2013 WL 5770633, at *7 (N.D. Ind. Oct. 24, 2013) ("Third, as the Court has already noted, the 'opinion of competent counsel' supports a determination that the settlement is fair, reasonable, and adequate under Rule 23.").

**C. The substantial cash relief afforded by the settlement favors preliminary approval.**

In evaluating the fairness of the consideration offered in settlement, it is not the role of a court to second-guess the negotiated resolution of the parties. As the Ninth Circuit wrote:

> The court's intrusion upon what is otherwise a private, consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

And as the Northern District of Indiana explained in approving a class action settlement in *Swift*:

> Although $20 (the expected pro rata award of the net settlement fund for each class member who filed a claim notice) is not significant in a vacuum, "a dollar today is worth a great deal more than a dollar ten years from now," *Reynolds*, 288 F.3d at 284, and a major benefit of the settlement is that class members will obtain these benefits much more quickly than had the parties not settled. The parties have informed the Court that this case, were it to proceed, would face numerous challenges such that, even if the case reached trial, the class members would not receive benefits for many years, if they received any at all. Faced with the prospect of receiving no recovery—both because DirectBuy might have succeeded in any aspect of what would have been a vigorous defense absent settlement and because DirectBuy had no unencumbered assets—Class Counsel is confident that payment of up to $20.00 per household is an excellent result in this litigation.

2013 WL 5770633, at *5.

Here, Defendant will pay $1,500,00 into a non-reversionary, all cash settlement fund to resolve this matter on behalf of an estimated 453 potentially affected cellular telephone numbers. This amounts to over $3,300 per potentially affected cellular telephone. So despite the obstacles Ms. Lewis faced, she and her counsel negotiated a settlement that far exceeds many other approved TCPA class action settlements nationwide. *See, e.g.*, *Wesley v. Snap Fin. LLC*, No. 2:20-cv-00148-RJS-JCB, 2023 WL 1812670 (D. Utah Feb. 7, 2023) ($77.10 per potentially affected telephone number); *Jackson v. Discover Fin. Servs., Inc.*, No. 1:21-cv-04529 (N.D. Ill. 2023) (approximately $10.75 per potential settlement class member); *Miles v. Medicredit, Inc.*, No. 4:20-cv-1186-JAR, 2023 WL 1794559 (E.D. Mo. Feb. 7, 2023) ($6.42 per potentially affected telephone number); *Lucas v. Synchrony Bank*, No. 4:21-cv-70-PPS, ECF No. 47 (N.D. Ind. Nov. 18, 2022) (approximately $13 per potentially affected telephone number); *Williams v. Bluestem Brands, Inc.*, No. 17-1971, 2019 WL 1450090, at *2 (M.D. Fla. Apr. 2, 2019) ($7 per potential settlement class member); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) (less than $5 per person).[3]

---

[3]     *See also, e.g.*, *Prather v. Wells Fargo Bank, N.A.*, No. 15-4231, 2017 WL 770132 (N.D. Ga. Feb. 24, 2017) ($4.65 per potential settlement class member); *Luster v. Wells Fargo Dealer*

And on a per-claimant basis, the settlement recovery is expected to exceed numerous other recently approved TCPA class action settlements.[4]

Underscoring the excellent nature of the settlement at bar is that the court in *Markos v. Wells Fargo Bank, N.A.* characterized a $24 per-TCPA claimant recovery—a small fraction of the expected recovery here—as "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter." No. 15-1156, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017). The same is true here.

In the end, the settlement constitutes an objectively favorable result for settlement class members that outweighs the possibility of future relief after protracted and expensive litigation.

**D.  The remaining Rule 23(e)(2) factors support preliminary approval.**

Finally, consideration of the factors set forth in Rule 23(e) likewise supports preliminary approval. Rule 23(e)(2) requires courts to consider whether (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of

---

*Servs., Inc.*, No. 15-1058, ECF No. 60 (N.D. Ga. Feb. 23, 2017) ($4.65); *James v. JPMorgan Chase Bank, N.A.*, No. 15-2424, 2016 WL 6908118 (M.D. Fla. Nov. 22, 2016) ($5.55); *Cross v. Wells Fargo Bank, N.A.*, No. 15-cv-1270, 2016 WL 5109533 (N.D. Ga. Sept. 13, 2016) ($4.75); *Markos v. Wells Fargo Bank, N.A.*, No. 15-1156, 2016 WL 4708028 (N.D. Ga. Sept. 7, 2016) ($4.95); *Picchi v. World Fin. Network Bank*, No. 11-61797 (S.D. Fla. Jan. 30, 2015) ($2.63); *Duke v. Bank of Am., N.A.*, No. 12-4009, ECF Nos. 51, 59 (N.D. Cal. Feb. 19, 2014) ($4.15).

[4]     Because this case involves artificial or prerecorded voice calls to alleged wrong numbers, the true number of settlement class members who received the subject artificial or prerecorded voice calls from Register is unknown. For this reason, settlement class members must submit a short, straightforward claim form to participate in any recovery.

attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3);[5] and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

Most of these factors are subsumed within the above discussion of the *Synfuel Techs.* factors. Beyond that, the to-be-requested attorneys' fees are in line with Seventh Circuit precedent, and are further justified by the substantial relief afforded by the settlement. *See, e.g.*, *Birchmeier*, 896 F.3d at 795 (approving attorneys' fees amounting to 36 percent of the first $10 million recovered); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (same); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) (awarding fees of 36% of settlement fund); *accord Jewell v. HSN, Inc.*, No. 19-cv-247-jdp, 2020 WL 4904427, at *3 (W.D. Wis. Aug. 19, 2020) (awarding attorneys' fees amounting to 35% of net settlement fund in TCPA class action).

Moreover, the settlement treats settlement class members equitably relative to each other. All settlement class members have the same legal claims, and each approved claimant will thus receive an equal portion of the settlement fund after deducting the Fees and Costs. Moreover, the release affects each settlement class member in the same way, as everyone will release the same claims. As such, this factor supports preliminary approval. *See Cornelius v. Deere Credit Servs., Inc.*, No. 4:24-cv-25-RSB-CLR, 2025 WL 502089, at *2 (S.D. Ga. Feb. 13, 2025) ("In addition, because each participating Settlement Class Member will receive the same recovery, the settlement treats class members equitably relative to one another."); *Vu v. I Care Credit, LLC*, No. 17-cv-04609 RAO, 2022 WL 22871480, at *11 (C.D. Cal. Nov. 4, 2022) ("Here, each member had to

---

[5]     The only operative agreement between the parties is the settlement agreement. *See* Ex. A.

submit the same claim form to receive a distribution from the settlement fund and each member who submitted a claim form will receive an equal distribution. As the class members' TCPA claims are based on the same fax advertisements, equal distributions are fair.").

### III.    The proposed notice program is industry standard in TCPA class actions like this one and complies with Rule 23.

Pursuant to Rule 23(e), a court must, upon preliminary approval, "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. This notice must be the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Here, Kroll will send court-approved notice to potential settlement class members by direct mail. In addition, it will create a dedicated website that will contain pertinent information, such as the operative complaint and the settlement agreement.

This method of class notice and class member participation is industry standard in TCPA class actions. *See Bonoan v. Adobe Inc.*, No. 3:19-CV-01068-RS, 2020 WL 6018934, at *2 (N.D. Cal. Oct. 9, 2020) (analyzing a notice plan materially indistinguishable from the plan Ms. Lewis proposes, and finding: "The proposed notice and method for notifying the settlement class members of the settlement and its terms and conditions meet the requirements of Rule 23(c)(2)(B) and due process, constitute the best notice practicable under the circumstances, and constitute due and sufficient notice to all persons and entities entitled to the notice.").

As well, Ms. Lewis's notice plan complies with Rule 23 and due process because, among other things, it informs settlement class members, directly, of: (1) the nature of this action; (2) the essential terms of the settlement, including the class definition and claims asserted; (3) the binding effect of a judgment if the settlement class member does not request exclusion; (4) the process for

19

objection or exclusion, including the time and method for objecting or requesting exclusion, and that settlement class members may make an appearance through counsel; (5) information regarding class counsel's request for attorneys' fees and litigation costs and expenses, as well as Ms. Lewis's request for an incentive award; (6) the procedure for submitting claims to receive settlement benefits; and (7) how to make inquiries, and where to find additional information. Fed. R. Civ. P. 23(c)(2)(B).

At bottom, because Ms. Lewis's notice plan ensures that settlement class members' due process rights are amply protected, this Court should approve it. *See Spencer v. #1 A LifeSafer of Ariz., LLC*, No. CV-18-02225-PHX-BSB, 2019 WL 1034451, at *3 (D. Ariz. Mar. 4, 2019) (preliminarily approving a class action settlement and finding "that the proposed notice program is clearly designed to advise the Class Members of their rights."); *see also Cornelius*, 2025 WL 502089, at *2 (approving notice plan in TCPA class action identical to the proposed notice plan here).

## Conclusion

Ms. Lewis respectfully requests that this Court enter the accompanying order—agreed to by the parties—certifying the settlement class for settlement purposes; preliminarily approving the settlement as fair, reasonable, and adequate; appointing Ms. Lewis as the settlement class representative, and Ms. Lewis's counsel as class counsel; approving and directing notice of the settlement to settlement class members; and, setting a final fairness hearing date.

Dated: January 28, 2026

/s/ Anthony I. Paronich
Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100

anthony@paronichlaw.com

Aaron D. Radbil
Greenwald Davidson Radbil PLLC
5550 Glades Road, Suite 500
Boca Raton, Florida 33431
Tel: (561) 826-5477
aradbil@gdrlawfirm.com

*Counsel for Plaintiff and the proposed class*