## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| TIFFANY LEWIS, *on behalf of herself and others similarly situated*,<br><br>  Plaintiff,<br><br>v.<br><br>NEWFOLD DIGITAL, INC.,<br>REGISTER.COM, INC.,<br><br>  Defendant.<br>_____ | ) Case No.: 1:25-cv-00275-JPH-MJD<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS AND EXPENSES, AND AN INCENTIVE AWARD

**Table of Contents**

Table of Contents ........................................................................................................................ i

Table of Authorities .................................................................................................................... ii

Introduction ................................................................................................................................. 1

Argument .................................................................................................................................... 2

    I.     An award of attorneys' fees in the amount of one-third of the gross Common Fund, or 35.2% of the net Common Fund, is reasonable and justified. ................................................... 2

        A.     District courts in the Seventh Circuit agree upon the percentage-of-the-fund method to calculate attorneys' fee awards in common fund cases like this one. ................................ 2

        B.     An award of attorneys' fees in the amount of one-third of the gross Common Fund, or 35.2% of the net Common Fund, is in line with attorneys' fee awards in class actions in the Seventh Circuit, including those under the TCPA. ................................................................... 4

        C.     The attorneys' fee award Class Counsel seek is consistent with awards of attorneys' fees in similar TCPA class actions nationwide. ....................................................................... 7

        D.     Plaintiff and Class Counsel entered into a contingent attorneys' fee agreement, so the risk of non-payment to Class Counsel was substantial. ........................................................... 8

        E.     As in any TCPA class action, this case brought significant risks, including that the ultimate class-related question underlying this matter is difficult. ........................................ 9

        F.     Class Counsel undertook substantial work to drive this case toward resolution. ........ 11

        G.     Class Counsel are highly experienced consumer protection class litigators who leveraged their experience to obtain an efficient, excellent result here. .............................. 12

    II.    This Court should approve Class Counsel's request for litigation costs and expenses in the amount of $7,274.00. ........................................................................................................... 14

    III.   Plaintiff's request for an incentive award in the amount of $10,000 is fair, reasonable, and supported by law. ..................................................................................................................... 15

Conclusion ................................................................................................................................. 17

**Table of Authorities**

**Cases**

*Abante Rooter & Plumbing, Inc. v. Oh Ins. Agency*,
    No. 15-9025, 2019 WL 10248700 (N.D. Ill. Dec. 10, 2019)……………...…………4, 5

*Abbott v. Lockheed Martin Corp.*,
    No. 06-701, 2015 WL 4398475 (S.D. Ill. July 17, 2015)……………………………17

*Allegretti v. Walgreen Co.*,
    No. 1:19-CV-05392, 2022 WL 484216 (N.D. Ill. Jan. 4, 2022)…………………………17

*Allen v. JPMorgan Chase Bank, N.A.*,
    No. 13-8285, ECF No. 93 (N.D. Ill. Oct. 21, 2015)………………………………….17

*Aranda v. Caribbean Cruise Line, Inc.*,
    No. 12-4069, 2017 WL 1369741 (N.D. Ill. Apr. 10, 2017)……….…………………5

*Beesley v. Int'l Paper Co.*,
    No. 06-703, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014)……….…………………14

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)……………………………………………….…………………2

*Boger v. Citrix Sys., Inc.*,
    No. 19-cv-01234-LKG, 2023 WL 3763974 (D. Md. June 1, 2023)……………………7, 16

*Boyce v. Triple Crown Servs. Co.*,
    No. 3:15-cv-0696-MJR-SCW, 2017 WL 11690154 (S.D. Ill. Jun. 1, 2017)………………6

*Charvat v. Valente*,
    No. 12-5746, 2019 WL 5576932 (N.D. Ill. Oct. 28, 2019)………….………………4, 5, 13, 17

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
    No. 04-3066, 2008 WL 11234103 (N.D. Ga. Mar. 4, 2008)……….…………………9

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998)……………………………………...……………..15

*Cornelius v. Deere Credit Servs., Inc.*,
    No.: 4:24-cv-25-RSB-CLR, 2025 WL 502089 (S.D. Ga. Feb. 13, 2025)…………………7

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
    No. 11-4462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015)……………………………17

*Cross v. Wells Fargo Bank, N.A.*,
     No. 15-cv-1270, 2016 WL 5109533 (N.D. Ga. Sept. 13, 2016)…………….…………..13

*Daugherty v. Credit Bureau Servs. Ass'n*,
     No: 4:23-cv-01728, 2025 WL 1618354 (S.D. Tex. June 6, 2025)………..……………7, 13

*Davis v. AT&T Corp.*,
     No. 15-2342, 2017 WL 1155350 (S.D. Cal. Mar. 28, 2017)…………..………………10

*Desai v. ADT Sec. Servs., Inc.*,
     No. 11-1925, ECF No. 243 (N.D. Ill. Feb. 27, 2013)……………….………………17

*Donovan v. St. Joseph County Sheriff*,
     No. 3:11-CV-133-TLS, 2015 WL 7738035 (N.D. Ind. Dec. 1, 2015)………..…………6

*Duke v. Bank of Am., N.A.*,
     No. 12-4009, ECF Nos. 51, 59 (N.D. Cal. Feb. 19, 2014)…………...………………13

*Fellows v. Am. Campus Cmtys. Servs., Inc.*,
     No. 16-1611, 2018 WL 3056046 (E.D. Mo. June 20, 2018)…………...………………15

*Fralish v. Ceteris Portfolio Servs., LLC*,
     No. 3:22-CV-176 DRL-MGG, 2023 WL 6057378 (N.D. Ind. Sept. 15, 2023)………..…..5

*Gehrich v. Chase Bank USA, N.A.*,
     316 F.R.D. 215 (N.D. Ill. 2016)………………………………………………..13

*Gonzalez v. TCR Sports Broad. Holding, LLP*,
     No. 18-20048, 2019 WL 2249941 (S.D. Fla. May 24, 2019)……………..……………7

*Guzman v. Nat'l Packaging Servs. Corp.*,
     No. 19-CV-1722-PP, 2022 WL 2657261 (E.D. Wis. July 8, 2022)…………..…………6

*Hageman v. AT&T Mobility LLC*,
     No. 13-50, ECF No. 68 (D. Mont. Feb. 11, 2015)…………………………………8

*Hanley v. Tampa Bay Sports & Entm't LLC*,
     No. 19-550, 2020 WL 2517766 (M.D. Fla. Apr. 23, 2020)……………..…………..7

*Hayes v. Thor Motor Coach, Inc.*,
     No. 3:19-CV-375-DRL-MGG, 2022 WL 4137227 (N.D. Ind. Jan. 12, 2022)…………17

*Head v. Citibank, N.A.*,
     No. CV-18-08189-PCT-ROS, 2025 WL 226660 (D. Ariz. Jan. 14, 2025)……………..7

*In re Broiler Chicken Antitrust Litig.*,
No. 16-8637, 2022 WL 6124787 (N.D. Ill. Oct. 7, 2022)……………………………..4, 8, 15

*In re Capital One Tel. Consumer Prot. Act Litig.*,
80 F. Supp. 3d 781 (N.D. Ill. 2015)……………………….…………………*passim*

*In re FedEx Ground Package Sys., Inc. Emp't Pracs. Litig.*,
251 F. Supp. 3d 1225 (N.D. Ind. 2017)…………………….…………………2

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001)……………………………………………………2, 3

*In re Thornburg Mortg., Inc. Sec. Litig.*,
912 F. Supp. 2d 1178 (D.N.M. 2012)…………………….…………………….8

*In re TikTok, Inc., Consumer Privacy Litig.*,
617 F. Supp. 3d 904 (N.D. Ill. 2022)…………………….………………………..3, 9

*James v. JPMorgan Chase Bank, N.A.*,
No. 15-2424, 2016 WL 6908118 (M.D. Fla. Nov. 22, 2016)…………….………………13

*Jewell v. HSN, Inc.*,
No. 19-cv-247-jdp, 2020 WL 4904427 (W.D. Wis. Aug. 19, 2020)………………..…..5

*Johnson v. Comodo Grp., Inc.*,
No. 16-4469, 2026 WL 296417 (D.N.J. Feb. 4, 2026)………………………………..7

*Johnson v. United Healthcare Servs., Inc.*,
No. 5:23-cv-00522-GAP-PRL, 2025 WL 1909337 (M.D. Fla. July 10, 2025)………..7, 13

*Kolinek v. Walgreen Co.*,
311 F.R.D. 483 (N.D. Ill. 2015)…………………………...……………………..3, 4, 5

*Lane v. Page*,
862 F. Supp. 2d 1182 (D.N.M. 2012)……………………...……………………12

*Leung v. XPO Logistics, Inc.*,
326 F.R.D. 185 (N.D. Ill. 2018)……………………...……………………13, 15, 16

*Levey v. Concesionaria Vuela Compañía de Aviación, S.A.P.I. de C.V.*,
No. 20-cv-2215 (JRB), 2024 WL 4906150 (N.D. Ill. Nov. 4, 2024)………………….6

*Lucas v. Synchrony Bank*,
No. 4:21-CV-70-PPS/JEM, 2023 WL 3143816 (N.D. Ind. Apr. 25, 2023)……..…5, 15, 17

*Luster v. Wells Fargo Dealer Servs., Inc.*,
    No. 15-1058, ECF No. 60 (N.D. Ga. Feb. 23, 2017)……………………….……………….13

*Markos v. Wells Fargo Bank, N.A.*,
    No. 15-1156, 2016 WL 4708028 (N.D. Ga. Sept. 7, 2016)……………………………….13

*Markos v. Wells Fargo Bank, N.A.*,
    No. 15-1156, 2017 WL 416425 (N.D. Ga. Jan. 30, 2017)…………………….…...………13

*Martin v. Dun & Bradstreet, Inc.*,
    No. 12-215, 2014 WL 9913504 (N.D. Ill. Jan. 16, 2014)……………...……………….5, 17

*Martin v. JTH Tax, Inc.*,
    No. 13-6923, 2015 WL 13883998 (N.D. Ill. Sept. 16, 2015)……………………...………16

*Martinez v. Medicredit, Inc.*,
    No. 16-1138, 2018 WL 2223681 (E.D. Mo. May 15, 2018)…………………….…………8

*McAfee v. Hubbard*,
    No. 14-CV-1010-NJR-RJD, 2017 WL 1479304 (S.D. Ill. Apr. 25, 2017)…………………6

*Miles v. Medicredit, Inc.*,
    No. 20-1186, 2023 WL 1794559 (E.D. Mo. Feb. 7, 2023)…………….…………..7, 12, 13

*Ossola v. Am. Express*,
    No. 13-4836, ECF No. 379 (N.D. Ill. Dec. 2, 2016)…………………………………………16

*Patterson v. OptumRx, Inc.*,
    No. 1:24-cv-00689-TWP-KMB, 2026 WL 881674 (S.D. Ind. Mar. 31, 2026)……………4

*Picchi v. World Fin. Network Bank*,
    No. 11-61797 (S.D. Fla. Jan. 30, 2015)…………………………………...……………13

*Prater v. Medicredit, Inc.*,
    No. 14-159, 2015 WL 8331602 (E.D. Mo. Dec. 7, 2015)………………………………….8

*Prather v. Wells Fargo Bank, N.A.*,
    No. 15-4231, 2017 WL 770132 (N.D. Ga. Feb. 24, 2017)…………………….…………13

*Revitch v. Citibank, N.A.*,
    No. 17-6907, 2019 WL 1903247 (C.D. Cal. Apr. 28, 2019)…………...………………10

*Roberson v. Maestro Consulting Servs., LLC*,
    No. 3:20-CV-00895-NJR, 2024 WL 4785359 (S.D. Ill. Nov. 14, 2024)………..…………6

*Roberts v. Graphic Packaging Int'l, LLC,*
No. 3:21-cv-00750-DWD, 2024 WL 3373780 (S.D. Ill. July 11, 2024…………………….6

*Sheean v. Convergent Outsourcing, Inc.*,
No. 18-11532, 2019 WL 6039921 (E.D. Mich. Nov. 14, 2019)……………………………7

*Sherman v. Brandt Industries USA Ltd.*,
No. 1:20-cv-01185-MMM-JEH, ECF No. 85 (C.D. Ill. Sep. 15, 2020)……………………6

*Simms v. ExactTarget, LLC,*
No. 14-737, 2018 WL 11416085 (S.D. Ind. Oct. 2, 2018)……………..………………..5

*Simpson v. Citizens Bank,*
No. 12-10267, 2014 WL 12738263 (E.D. Mich. Jan. 31, 2014)………...………………9

*St. Louis Heart Cntr., Inc. v. Vein Cntrs. for Excellence, Inc.*,
No. 12-174, 2013 WL 6498245 (E.D. Mo. Dec. 11, 2013)……………………………….14

*Summerton v. Goldco Direct LLC*,
No. 3:23-cv-00238-WAC, 2026 WL 836962 (W.D. Wis. Mar. 23, 2026)……………..…..5

*Todd S. Elwert, Inc., DC v. All. Healthcare Servs., Inc.*,
No. 15-2673, 2018 WL 4539287 (N.D. Ohio Sept. 21, 2018)………...………………7, 8

*Tomeo v. CitiGroup, Inc.*,
No. 13-4046, 2018 WL 4627386 (N.D. Ill. Sept. 27, 2018)………...……………….10

*Vendervort v. Balboa Capital Corp.*,
8 F. Supp. 3d 1200 (C.D. Cal. 2014)………………………..……………………………..8

*Wesley v. Snap Fin. LLC*,
No. 20-148, 2023 WL 1812670 (D. Utah Feb. 7, 2023)………………..……………….7, 12

*Wilkins v. HSBC Bank Nev., N.A.*,
No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015)………...………………………..13

*Williams v. Bluestem Brands, Inc.*,
No. 17-1971, 2019 WL 1450090 (M.D. Fla. Apr. 2, 2019)………...………………12, 13

*Wright v. Nationstar Mortg. LLC*,
No. 14-10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016)……………………………..13

**Rules**

Fed. R. Civ. P. 23(h)…………………………………….………………………………15

**Introduction**

Tiffany Lewis ("Plaintiff") and Register.com, Inc. ("Defendant") agreed to resolve this matter for the benefit of a nationwide class ("Settlement Class"). More specifically, Defendant agreed to create an all-cash, non-reversionary $1,500,000 common fund ("Common Fund") to compensate Settlement Class members for claims—stemming from the subject artificial or prerecorded voice calls to the cellular telephone numbers at issue—under the Telephone Consumer Protection Act ("TCPA"). Participating Settlement Class members will each receive thousands of dollars from the Common Fund.

On April 1, 2026, this Court preliminarily approved the parties' settlement ("Settlement"). *See* ECF No. 70. In turn, the Court-appointed notice and claims administrator—Kroll Settlement Administration LLC ("Kroll")—disseminated Court-approved notice of the Settlement ("Class Notice").

In line with the Class Notice, Court-appointed class counsel ("Class Counsel") request an award of attorneys' fees in the amount of $500,000.[1] This is one-third of the gross Common Fund, or 35.2% of the net Common Fund calculated by deducting the costs of notice and claims administration—estimated to be no more than $62,800—litigation costs and expenses, and the incentive award requested, from the gross Common Fund.

Class Counsel relatedly request reimbursement of costs and litigation expenses totaling $7,274. And Plaintiff requests an incentive award in the amount of $10,000.

---

[1] Through its Order Granting Motion for Preliminary Class Approval, this Court wrote: "Considering that the total value to the class is up to $1,500,000, an award of up to one-third appears reasonable and on par with market contingency fees. However, the reasonableness of the attorneys' fees and litigation expenses is subject to the Court's approval after the claims process, when the total compensation received by the Class Members is known." ECF No. 70 at 17.

Each of these requests is fair, reasonable, justified, and in line with awards approved in analogous TCPA class actions. Moreover, to date, no Settlement Class member has objected to any part of the Settlement, or to any request for attorneys' fees, litigation costs and expenses, or the incentive award.

### Argument

**I.    An award of attorneys' fees in the amount of one-third of the gross Common Fund, or 35.2% of the net Common Fund, is reasonable and justified.**

The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[2] To that end, the Seventh Circuit "favors the percentage-of-the-fund fee in common fund cases because it provides the best hope of estimating what a willing seller and a willing buyer seeking the largest recovery in the shortest time would have agreed to *ex ante*." *In re FedEx Ground Package Sys., Inc. Emp't Pracs. Litig.*, 251 F. Supp. 3d 1225, 1236 (N.D. Ind. 2017).

Here, Class Counsel seek an award of attorneys' fees in the amount of $500,000, which is equal to one-third of the gross Common Fund, or 35.2% of the net Common Fund. Class Counsel's request is supported by applicable case law both within and outside of the Seventh Circuit, and with respect to class actions generally, as well as those under the TCPA specifically.

**A. District courts in the Seventh Circuit agree upon the percentage-of-the-fund method to calculate attorneys' fee awards in common fund cases like this one.**

According to the Seventh Circuit, "when deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re*

---

[2]    Internal citations and quotations are omitted unless otherwise noted.

*Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). "Because the market-price estimation is inherently conjectural, district courts have discretion to use either the percentage method, which awards fees as a percentage of the common fund, or the 'lodestar' method, which awards fees based on the attorneys' hours and billing rates . . . ." *In re TikTok, Inc., Consumer Privacy Litig.*, 617 F. Supp. 3d 904, 939 (N.D. Ill. 2022).

But in a TCPA class action like this one, Judge Holderman reasoned that the percentage-of-the-fund method is "more likely to yield an accurate approximation of the market rate," and that, "had an arm's length negotiation been feasible, the court believes that the class would have negotiated a fee arrangement based on a percentage of the recovery, consistent with the normal practice in consumer class actions." *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015).

Underlying this rationale, "[a]n *ex ante* agreement based on lodestar requires a client to monitor counsel, and the class-member 'clients' here had little incentive to do so." *Id*. Indeed, the class members in *Capital One* numbered in the millions, each with minimal prospective relief, so "[t]he class would not have negotiated a compensation scheme that required a level of monitoring the class members were not interested in or capable of providing." *Id*.; *see also Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) (noting that a large class of "lightly-injured plaintiffs" would be unlikely "to monitor counsel and ensure that counsel are working efficiently on an hourly basis," as required by the lodestar model). "Instead, the class would have chosen the compensation scheme that required the least monitoring to align the incentives of the class and its counsel—the percentage method." *Capital One*, 80 F. Supp. 3d at 795.

As Judge Alonso echoed in a more recent TCPA class litigation:

It is hard to imagine the class agreeing each to kick in an equal share of, say, $300 per hour multiplied by the number of hours it would take the attorneys to achieve

a victory or settlement or, worse yet, a loss in this case, given that each stood to gain only a little. Much easier to imagine *ex ante* is the members' agreeing to a contingency fee to incentivize the attorneys to maximize the award to the class members.

*Abante Rooter & Plumbing, Inc. v. Oh Ins. Agency*, No. 15-9025, 2019 WL 10248700, at *4 (N.D. Ill. Dec. 10, 2019) ("agree[ing] that a reasonable class of plaintiffs making an *ex ante* bargain would have agreed to pay the attorneys one third of the recovery").

The same is true here. And approximating the market rate through the percentage method can be informed by several factors, including: (1) the actual agreements between the parties as well as attorneys' fee agreements reached by sophisticated entities in the market for legal services; (2) the risk of non-payment at the outset of the case; (3) the caliber of class counsel's performance; (4) the amount of work necessary to resolve the litigation; (5) the stakes of the case; and (6) information from other cases, including attorneys' fee awards in comparable cases. *See In re Broiler Chicken Antitrust Litig.*, No. 16-8637, 2022 WL 6124787, at *2 (N.D. Ill. Oct. 7, 2022); *see also Charvat v. Valente*, No. 12-5746, 2019 WL 5576932, at *11 (N.D. Ill. Oct. 28, 2019). Here, each of these factors firmly supports the attorneys' fee requested.

**B. An award of attorneys' fees in the amount of one-third of the gross Common Fund, or 35.2% of the net Common Fund, is in line with attorneys' fee awards in class actions in the Seventh Circuit, including those under the TCPA.**

Looking first to comparable TCPA cases, the court in *Kolinek* found that the "market rate" for legal services in a TCPA class action was 36% of the net settlement fund "based on the degree of effort the attorneys would need to put in, the likelihood of success, and the risks associated with undertaking class representation . . . ." 311 F.R.D. at 502-03. Relatedly, the attorneys' fees Class Counsel now request are consistent with awards in TCPA class litigation in the Seventh Circuit. *See, e.g.*, *Patterson v. OptumRx, Inc.*, No. 1:24-cv-00689-TWP-KMB, 2026 WL 881674, at *3 (S.D. Ind. Mar. 31, 2026) (Walton Pratt, J.) (awarding attorneys' fees amounting to 36% of the net

4

and 31.2% of the gross settlement fund in a TCPA class action); *Summerton v. Goldco Direct LLC*, No. 3:23-cv-00238-WAC, 2026 WL 836962, at *2 (W.D. Wis. Mar. 23, 2026) (awarding fees of one-third of total common fund in TCPA class action, plus expenses); *Fralish v. Ceteris Portfolio Servs., LLC*, No. 3:22-CV-176 DRL-MGG, 2023 WL 6057378, at *4 (N.D. Ind. Sept. 15, 2023) (fees amounting to 36% of net settlement fund in TCPA class action); *Lucas v. Synchrony Bank*, No. 4:21-CV-70-PPS/JEM, 2023 WL 3143816, at *2 (N.D. Ind. Apr. 25, 2023) (approving an award of attorneys' fees amounting to 36% of the net common fund, or 31.8% of the total common fund, in a TCPA class action); *Jewell v. HSN, Inc.*, No. 19-cv-247-jdp, 2020 WL 4904427, at *3 (W.D. Wis. Aug. 19, 2020) ("Class Counsel's request for an award of attorneys' fees of 35 percent of the Settlement Fund, after deducting class notice and administration costs of $11,599.78, Class Counsel's reasonable litigation costs and expenses, and Plaintiff's incentive award, is approved."); *Abante Rooter & Plumbing*, 2019 WL 10248700, at *4 (awarding attorneys' fees of one-third of the $10,500,000 common fund); *Charvat*, 2019 WL 5576932, at *12 (awarding as attorneys' fees $3.15 million, or 33.99% of the net settlement fund); *Simms v. ExactTarget, LLC*, No. 14-737, 2018 WL 11416085, at *10 (S.D. Ind. Oct. 2, 2018) (Pryor, J.) (awarding as attorneys' fees $2,073,750, or 35% of the net settlement fund), *report and recommendation adopted,* No. 14-737, 2018 WL 11416084 (S.D. Ind. Oct. 19, 2018) (Lawrence, J.); *Aranda v. Caribbean Cruise Line, Inc.*, No. 12-4069, 2017 WL 1369741, at *9 (N.D. Ill. Apr. 10, 2017) (approving a sliding scale for attorneys' fees that included 36% of the first $10 million of the settlement fund), *aff'd sub nom. Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792 (7th Cir. 2018); *Capital One*, 80 F. Supp. 3d at 807 (same); *Kolinek*, 311 F.R.D. at 503 (approving attorneys' fees of $2,824,200, or 36% of the net common fund); *Martin v. Dun & Bradstreet, Inc.*, No. 12-215, 2014 WL 9913504, at *3 (N.D. Ill. Jan. 16, 2014) (approving an attorneys' fee award of $1,633,333.33, or 36.3% of the

5

settlement's quantifiable value).

Moreover, an attorneys' fee recovery like that which Class Counsel now seek also finds extensive support throughout the Seventh Circuit in similarly complex class litigation. *See, e.g.*, *Roberson v. Maestro Consulting Servs., LLC*, No. 3:20-CV-00895-NJR, 2024 WL 4785359 (S.D. Ill. Nov. 14, 2024) ("Attorneys' fees in the amount of 40% of the Gross Settlement Amount of $2,800,000.00 shall be paid by the Settlement Administrator, Analytics Consulting, LLC, to Class Counsel"); *Levey v. Concesionaria Vuela Compañía de Aviación, S.A.P.I. de C.V.*, No. 20-cv-2215 (JRB), 2024 WL 4906150, at *3 (N.D. Ill. Nov. 4, 2024) (36% of the settlement funds less notice and administration costs); *Roberts v. Graphic Packaging Int'l, LLC*, No. 3:21-cv-00750-DWD, 2024 WL 3373780, at *5 (S.D. Ill. July 11, 2024) (36% of the net settlement fund in BIPA case); *Guzman v. Nat'l Packaging Servs. Corp.*, No. 19-CV-1722-PP, 2022 WL 2657261, at *14-15 (E.D. Wis. July 8, 2022) (approving an attorneys' fee award of approximately 36% of total settlement fund in FLSA action); *Sherman v. Brandt Industries USA Ltd.*, No. 1:20-cv-01185-MMM-JEH, ECF No. 85 (C.D. Ill. Sep. 15, 2020) (awarding attorneys' fees amounting to 36% of the net common fund); *Boyce v. Triple Crown Servs. Co.*, No. 3:15-cv-0696-MJR-SCW, 2017 WL 11690154, at *3 (S.D. Ill. Jun. 1, 2017) ("As to attorney's fees, this Court assesses the request for a 40% fee with the knowledge that fees can typically range between 33 to 50%."); *McAfee v. Hubbard*, No. 14-CV-1010-NJR-RJD, 2017 WL 1479304, at *11 (S.D. Ill. Apr. 25, 2017) (approving an attorneys' fee award of approximately 36% of total settlement fund in FLSA action); *Donovan v. St. Joseph County Sheriff*, No. 3:11-CV-133-TLS, 2015 WL 7738035, at *5 (N.D. Ind. Dec. 1, 2015) (awarding 40% of the common fund in class action under 42 U.S.C. § 1983).

**C. The attorneys' fee award Class Counsel seek is consistent with awards of attorneys' fees in similar TCPA class actions nationwide.**

Comparable TCPA cases outside the Seventh Circuit similarly support Class Counsel's request as district courts assessing attorneys' fees in connection with TCPA class recoveries routinely approve awards upwards of one-third of the total common fund. *See, e.g.*, *Johnson v. Comodo Grp., Inc.*, No. 16-4469, 2026 WL 296417, at *8 (D.N.J. Feb. 4, 2026) (awarding attorneys' fees of 40% of the TCPA common fund and finding that "[a] forty percent contingent fee is routinely negotiated in the open market."); *Johnson v. United Healthcare Servs., Inc.*, No. 5:23-cv-00522-GAP-PRL, 2025 WL 1909337, at *4 (M.D. Fla. July 10, 2025) (awarding attorneys' fees of one-third of the total settlement fund); *Daugherty v. Credit Bureau Servs. Ass'n*, No: 4:23-cv-01728, 2025 WL 1618354, at *5 (S.D. Tex. June 6, 2025) (same); *Cornelius v. Deere Credit Servs., Inc.*, No.: 4:24-cv-25-RSB-CLR, 2025 WL 502089, at *3 (S.D. Ga. Feb. 13, 2025) (same); *Head v. Citibank, N.A.*, No. CV-18-08189-PCT-ROS, 2025 WL 226660, at *4 (D. Ariz. Jan. 14, 2025) (awarding attorneys' fees of one-third of the $29.5 million fund); *Boger v. Citrix Sys., Inc.*, No. 19-cv-01234-LKG, 2023 WL 3763974, at *13 (D. Md. June 1, 2023) (awarding attorneys' fees of one-third of the $2.75 million settlement fund); *Miles v. Medicredit, Inc.*, No. 20-1186, 2023 WL 1794559, at *4 (E.D. Mo. Feb. 7, 2023) (awarding as attorneys' fees one-third of total settlement fund); *Wesley v. Snap Fin. LLC*, No. 20-148, 2023 WL 1812670, at *3 (D. Utah Feb. 7, 2023) (same); *Hanley v. Tampa Bay Sports & Entm't LLC*, No. 19-550, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) (awarding "a slight increase from the one-third benchmark"); *Sheean v. Convergent Outsourcing, Inc.*, No. 18-11532, 2019 WL 6039921, at *4 (E.D. Mich. Nov. 14, 2019) (awarding as attorneys' fees one-third of TCPA and FDCPA common funds); *Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 18-20048, 2019 WL 2249941, at *6 (S.D. Fla. May 24, 2019) (awarding as attorneys' fees one-third of common fund); *Todd S. Elwert,*

*Inc., DC v. All. Healthcare Servs., Inc.*, No. 15-2673, 2018 WL 4539287, at *4 (N.D. Ohio Sept. 21, 2018) (same); *Martinez v. Medicredit, Inc.*, No. 16-1138, 2018 WL 2223681, at *5 (E.D. Mo. May 15, 2018) (same); *Prater v. Medicredit, Inc.*, No. 14-159, 2015 WL 8331602, at *4 (E.D. Mo. Dec. 7, 2015) (same); *Hageman v. AT&T Mobility LLC*, No. 13-50, ECF No. 68 (D. Mont. Feb. 11, 2015) (awarding as attorneys' fees 33% of common fund); *Vendervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (same).

### D. Plaintiff and Class Counsel entered into a contingent attorneys' fee agreement, so the risk of non-payment to Class Counsel was substantial.

Turning next to the attorneys' fee agreement between Plaintiff and Class Counsel, and the associated risk of non-payment to Class Counsel at the outset of the case, it is important to recognize that Plaintiff entered into a contingent attorneys' fee agreement with Class Counsel. *See* Declaration of Aaron D. Radbil, attached as Exhibit A, ¶¶ 43-44. The agreement permits Class Counsel to apply to this Court for an award of attorneys' fees in the event that a common fund is established for the benefit of the Settlement Class. Given as much, without any recovery, Class Counsel would have been paid nothing for their efforts, nor reimbursed for their expenditures, no matter their investment of costs and time in this matter.

And that the attorneys' fee arrangement in this case was contingent "weighs in favor of the requested attorneys' fees award, because '[s]uch a large investment of money [and time] place[s] incredible burdens upon . . . law practices and should be appropriately considered.'" *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1256 (D.N.M. 2012); *see also In re Broiler Chicken*, 2022 WL 6124787, at *3 ("A substantial award is warranted here as a proper incentive for high quality counsel to take on complex cases, requiring a massive investment of time and money, with such a high risk of non-payment.").

8

Indeed, even in ordinary cases "uncertain is the outcome," and the corresponding risk taken by counsel in connection with contingent fee arrangements—no assurance of payment—warrants a higher percentage of the fund. *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 04-3066, 2008 WL 11234103, at *3 (N.D. Ga. Mar. 4, 2008); *see also In re TikTok*, 617 F. Supp. 3d at 941 ("Larger contingency fees are generally needed to persuade lawyers to take riskier cases because there is a lower chance that they will receive anything at the end.").

And in the context of class actions, the inherent risk is multiplied:

> In undertaking to prosecute this complex case entirely on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. That risk warrants an appropriate fee. The risks are inherent in financing and prosecuting complex litigation of this type, but Class Counsel undertook representation with the knowledge that they would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts. Only the most experienced plaintiffs' litigation firms would risk the time and expense involved in bringing this Action in light of the possibility of a recovery at an uncertain date, or of no recovery at all.

*Simpson v. Citizens Bank*, No. 12-10267, 2014 WL 12738263, at *7 (E.D. Mich. Jan. 31, 2014).

Correspondingly, the attorneys' fee agreement between Plaintiff and Class Counsel, coupled with the risk that Class Counsel could have litigated this case for over a year without receiving any payment for their efforts under that agreement, strongly supports the requested attorneys' fee award.

**E. As in any TCPA class action, this case brought significant risks, including that the ultimate class-related question underlying this matter is difficult.**

In the *Capital One* litigation, Judge Holderman performed an in-depth analysis of the risks associated with TCPA litigation to determine proper awards of attorneys' fees in TCPA class cases:

> Class Counsel in this case faced a variety of serious obstacles to success in bringing the lawsuit, and faced the real prospect of recovering nothing. First, it was quite possible that the discovery may have revealed that many class members

9

acquiesced to receiving calls on their cell phones when they agreed to their cardholder agreements with Capital One. Some customers provided Capital One with their cell phone numbers as their primary contact numbers, arguably waiving any right not to receive debt-collection calls on their cell phone from Capital One. Second, at the outset of the litigation there was a serious question whether the Plaintiffs' claims could meet Rule 23's manageability requirement given that Capital One would have to review its records to determine which class members provided consent through cardholder agreements, which class members actually provided their cell phone numbers to Capital One, and whether each class member actually owned their cell phone number at the time Capital One called it using an autodialer. Third, as Capital One has noted throughout this litigation, there are presently petitions before the FCC urging the FCC to (1) revise the TCPA's definition of "automatic telephone dialing system" to exclude dialers like those used by Capital One, and (2) provide a safe harbor for all calls that Capital One inadvertently made to wrong numbers. Consequently, the longer this litigation were to continue, the longer Plaintiffs would be exposed to the possibility that the FCC would take action that might extinguish Plaintiffs' claims.

80 F. Supp. 3d at 805.

Many of these risks remain true today, and in this matter. To be sure, Plaintiff faced a number of significant hurdles in this case, some of which were difficult and novel. For example, Defendant strongly disputed that a class could be certified for litigation purposes. *See* ECF No. 39 (motion to strike class allegations, withdrawn before ruling). Worth mentioning, then, several district courts have refused to certify TCPA matters like this one. *See, e.g.*, *Revitch v. Citibank, N.A.*, No. 17-6907, 2019 WL 1903247, at *2 (C.D. Cal. Apr. 28, 2019) (denying class certification and noting that "an evasive customer may reply with 'wrong number' when he answers a call regarding his delinquent account"); *Davis v. AT&T Corp.*, No. 15-2342, 2017 WL 1155350, at *5 (S.D. Cal. Mar. 28, 2017) ("[d]efendant has come forward with evidence that a call with a 'wrong number' notation proves nothing because many customers tell callers they have reached the wrong number, though the customer's number was dialed, as a 'procrastination tool' to avoid speaking on the phone"); *Tomeo v. CitiGroup, Inc.*, No. 13-4046, 2018 WL 4627386, at *10 (N.D. Ill. Sept. 27, 2018) (following *Davis*).

In addition, there was no guarantee that Plaintiff would prevail on the merits. To that end, Defendant asserted a number of defenses. *See* ECF Nos. 17 (motion to dismiss, not ruled on) and 22 (reply in support of motion to dismiss, not ruled on).

At bottom, the ultimate result here was far from certain. And after analyzing the serious risks inherent with TCPA litigation, Judge Holderman determined that an appropriate risk-adjusted attorneys' fee for TCPA class settlements is an award of 36 percent of the net common fund, up to the first $10 million in recovery. *Capital One*, 80 F. Supp. 3d at 807. Accordingly, the requested attorneys' fee award is fair and reasonable.

**F. Class Counsel undertook substantial work to drive this case toward resolution.**

The caliber of Class Counsel's performance in completing the work necessary to achieve the Settlement here further underscores the reasonableness of the requested attorneys' fee award. As outlined in Mr. Radbil's declaration, Class Counsel have devoted over a year to litigating this case without any payment, committing significant time and resources along the way. *See* Exhibit A at ¶¶ 45-46.

Without Class Counsel's diligent efforts over the year-long period, there would be no recovery for the Settlement Class. Moreover, while Class Counsel's efforts to date in this case were substantial, significant work remains, including, for example: responding to Settlement Class member inquiries, overseeing the notice and claims administration process, preparing Plaintiff's motion for final approval of the class action settlement, responding to Settlement Class member objections, if any, preparing for and attending the final fairness hearing, and, if approved, overseeing the process of providing settlement payments to participating Settlement Class members.

**G. Class Counsel are highly experienced consumer protection class litigators who leveraged their experience to obtain an efficient, excellent result here.**

Class Counsel bring significant experience litigating class actions filed under federal consumer protection statutes, including the TCPA. *See* Exhibit A at ¶¶ 9-24; *see also* ECF No. 69-4 at 12. Indeed, Class Counsel have been appointed class counsel for dozens of class actions nationwide, and have helped to recover over $200 million for aggrieved class members over the past several years. *See id*.

Through their extensive experience, Class Counsel have earned themselves stellar reputations in this practice area. Further, counsel's knowledge of, and experience with, TCPA class actions helped to bring about the Common Fund in an efficient manner. Where "Class Counsel's knowledge and experience . . . significantly contributed to a fair and reasonable settlement, this factor supports a request for a large amount of attorneys' fees." *Lane v. Page*, 862 F. Supp. 2d 1182, 1254 (D.N.M. 2012).

Indeed, in the face of significant legal hurdles, Class Counsel and Plaintiff obtained an excellent result for Settlement Class members. To be sure, the settlement greatly exceeds, on a per-potential class member basis, many similar and recently approved TCPA class action settlements. Specifically, dividing the Settlement Fund ($1,500,000) by 453 (the number of potentially affected telephone numbers) amounts to more than $3,300 per potential Settlement Class member.

In comparison, other TCPA class actions have settled for significantly less on a per-potential class member basis. *See, e.g.*, *Wesley*, 2023 WL 1812670 ($77.10 per potentially affected telephone number); *Miles*, 2023 WL 1794559 ($6.42 per potentially affected telephone number); *Lucas*, No. 4:21-cv-70-PPS, ECF No. 47 (approximately $13 per potentially affected telephone number); *Williams v. Bluestem Brands, Inc.*, No. 17-1971, 2019 WL 1450090, at *2 (M.D. Fla.

Apr. 2, 2019) ($7 per potential class member); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 227-28 (N.D. Ill. 2016) (just over $1 per person); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) (less than $5 per person).[3]

And on a per-claimant basis, the recovery here is expected to exceed numerous, if not all other recently approved TCPA class action settlements. To be sure, Class Counsel estimates that participating Settlement Class members will each receive thousands of dollars. *Compare with Miles*, 2023 WL 1794559 (approximately $157 per claimant); *Gehrich*, 316 F.R.D. at 228 ($52.50 per claimant); *Charvat*, 2019 WL 5576932, at *16 (average of $22.17 per claim); *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 196 (N.D. Ill. 2018) ($100.81 per claim); *Wright v. Nationstar Mortg. LLC*, No. 14-10457, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) (approximately $45 per claim); *Capital One*, 80 F. Supp. 3d at 789 (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action).

Significant, then, is that the court in *Markos v. Wells Fargo Bank, N.A.* characterized a $24 per-claimant recovery in a TCPA class action—far less than the expected recovery here—as "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter." No. 15-1156, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017); *see also Johnson*, 2025 WL 1909337, at *3 ("The per-claimant recovery of over $146 provides class members with monetary relief that exceeds other approved TCPA class action settlements."); *Daugherty*, 2025 WL 1618354, at *3 ("And notwithstanding, the settlement exceeds on a per-claimant recovery basis other recently approved TCPA class action settlements. Indeed, after deducting the cost of notice

---

[3]    *See also, e.g.*, *Prather v. Wells Fargo Bank, N.A.*, No. 15-4231, 2017 WL 770132 (N.D. Ga. Feb. 24, 2017) ($4.65 per potential class member); *Luster v. Wells Fargo Dealer Servs., Inc.*, No. 15-1058, ECF No. 60 (N.D. Ga. Feb. 23, 2017) ($4.65); *James v. JPMorgan Chase Bank, N.A.*, No. 15-2424, 2016 WL 6908118 (M.D. Fla. Nov. 22, 2016) ($5.55); *Cross v. Wells Fargo Bank, N.A.*, No. 15-cv-1270, 2016 WL 5109533 (N.D. Ga. Sept. 13, 2016) ($4.75); *Markos v. Wells Fargo Bank, N.A.*, No. 15-1156, 2016 WL 4708028 (N.D. Ga. Sept. 7, 2016) ($4.95); *Picchi v. World Fin. Network Bank*, No. 11-61797 (S.D. Fla. Jan. 30, 2015) ($2.63); *Duke v. Bank of Am., N.A.*, No. 12-4009, ECF Nos. 51, 59 (N.D. Cal. Feb. 19, 2014) ($4.15).

to potential settlement class members and claims administration, litigation costs and expenses, reasonable attorneys' fees, and an incentive award to Plaintiff, participating settlement class members who submitted approved claims will receive approximately $226 each. This far surpasses comparable figures in other approved TCPA class settlements.").

Moreover, the settlement provides Settlement Class members with real monetary relief, despite the purely statutory damages at issue—damages that courts have deemed too small to incentivize individual actions. *See, e.g.*, *St. Louis Heart Cntr., Inc. v. Vein Cntrs. for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *11 (E.D. Mo. Dec. 11, 2013) (explaining that because the statutory damages available to each individual class member are small, it is unlikely that the class members have interest in individually controlling the prosecution of separate actions). Therefore, because of the Settlement, Settlement Class members will receive money they otherwise likely would have never pursued on their own. In sum, the settlement constitutes an objectively favorable result for Settlement Class members, given the real risks involved, and amply supports an award of attorneys' fees in the amount of $500,000.

## II.    This Court should approve Class Counsel's request for litigation costs and expenses in the amount of $7,274.00.

"It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses, which includes such things as expert witness costs; computerized research; court reports; travel expense; copy, phone and facsimile expenses and mediation." *Beesley v. Int'l Paper Co.*, No. 06-703, 2014 WL 375432, at *3 (S.D. Ill. Jan. 31, 2014).

Here, Class Counsel incurred $7,274.00 in litigation costs and expenses—filing fee for Plaintiff's class action complaint ($405.00); process server fee ($90.00); expert fee ($2,804); mediation fee ($2,400.00); and travel and lodging expenses ($1,575.00). *See* Exhibit A at ¶¶ 49-

50. And the categories of expenses for which Class Counsel seek reimbursement are of the type routinely charged to paying clients in the marketplace and, therefore, are properly reimbursed under Rule 23. *See, e.g.*, *Lucas*, 2023 WL 3143816, at *2 (approving reimbursement of $10,332.75 in costs and litigation expenses in a TCPA class action); *Leung*, 326 F.R.D. at 199, 203 (approving reimbursement of $52,458.90 in expenses in a TCPA class action for costs including copying, legal research, and telephone charges); *see also* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and *nontaxable* costs that are authorized by law or by the parties' agreement.").

This Court accordingly should approve reimbursement of Class Counsel's litigation costs and expenses. To date, no Settlement Class member has objected to such reimbursement.

**III.    Plaintiff's request for an incentive award in the amount of $10,000 is fair, reasonable, and supported by law.**

"Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *In re Broiler Chicken*, 2022 WL 6124787, at *4 (awarding multiple $15,000 service awards); *accord Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming a $25,000 service award); *Fellows v. Am. Campus Cmtys. Servs., Inc.*, No. 16-1611, 2018 WL 3056046, at *7 (E.D. Mo. June 20, 2018) ("Courts routinely grant service awards in connection with class action settlements to promote the public policy underlying class action litigation by encouraging individuals to vindicate rights on behalf of a others similarly situated.").

"In determining the need for an award, the court can consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Leung*, 326 F.R.D. at 205 (approving a $10,000 service award). Here, Plaintiff took pride in protecting the

15

interests of Settlement Class members, and spent considerable time pursuing their claims. From the outset, Plaintiff was dedicated to pursuing this matter as a class action rather than an individual case. The end result—over a year later—is the recovery of $1,500,000 for Settlement Class members, which will lead to truly significant cash payments to approved claimants.

Plaintiff also remained actively involved throughout this case and frequently communicated with Class Counsel. She reviewed and approved filings, participated in strategy conferences with Class Counsel, and participated in mediation-related discussions. She also assisted Class Counsel in protracted settlement negotiations with Defendant for the good of the Settlement Class before, during, and shortly after mediation. *See* Exhibit A at ¶¶ 52-55. Moreover, like other class representatives, Plaintiff was subjected to public scrutiny throughout the process.

"True, this is not a monumental effort, but it is more inconvenience than the average consumer would want to put up with in the absence of an incentive to do so. [Plaintiff's] participation benefitted the class by allowing this case to be brought, which resulted in substantial settlement payouts to the class." *Leung*, 326 F.R.D. at 205. To be sure, "[t]he requested $10,000 award is also in line with the awards generally handed out in TCPA cases." *Id.*; *see also Ossola v. Am. Express*, No. 13-4836, ECF No. 379 at ¶ 11 (N.D. Ill. Dec. 2, 2016) ($10,000 service award in a TCPA class case); *Martin v. JTH Tax, Inc.*, No. 13-6923, 2015 WL 13883998, at *3 (N.D. Ill. Sept. 16, 2015) (same).

Given the foregoing, the requested incentive award of $10,000 is reasonable and should be approved. Indeed, it is equal to or less than many others approved in comparable matters. *See, e.g.*, *Boger*, 2023 WL 3763974, at *11 ("The amount of the Service Payment to Mr. Boger—$10,000— is also on the lower end of incentive awards that courts have approved in comparable TCPA matters."); *Lucas*, 2023 WL 3143816, at *2 ("The Court finds the payment of a service award in

16

the amount of $10,000 to the Settlement Class Representative is fair and reasonable."); *Hayes v. Thor Motor Coach, Inc.*, No. 3:19-CV-375-DRL-MGG, 2022 WL 4137227, at *2 (N.D. Ind. Jan. 12, 2022) (noting $10,000 service award); *Allegretti v. Walgreen Co.*, No. 1:19-CV-05392, 2022 WL 484216, at *2 (N.D. Ill. Jan. 4, 2022) ($15,000 service awards in ERISA action where the plaintiffs "responded to document requests and interrogatories, reviewed and approved pleadings, and participated in settlement discussions"); *Charvat*, 2019 WL 5576932, at *10 ($25,000 TCPA service award for "endur[ing] several years of discovery, scrutiny, and inconvenience in pursuit of this case"); *Allen v. JPMorgan Chase Bank, N.A.*, No. 13-8285, ECF No. 93 at ¶ 18 (N.D. Ill. Oct. 21, 2015) ($25,000 TCPA service award); *Abbott v. Lockheed Martin Corp.*, No. 06-701, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015) (awards of $10,000 to $25,000 where "the Named Plaintiffs initiated the action, took on a substantial risk, and remained in contact with Class Counsel"); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-4462, 2015 WL 1399367, at *6 (N.D. Ill. Mar. 23, 2015) ($25,000 TCPA award); *Martin*, 2014 WL 9913504, at *3 ($20,000 TCPA award); *Desai v. ADT Sec. Servs., Inc.*, No. 11-1925, ECF No. 243 at ¶ 20 (N.D. Ill. Feb. 27, 2013) ($30,000 awards).

### Conclusion

Plaintiff and Class Counsel respectfully request that this Court grant their requests for (1) an award of attorneys' fees of $500,000; (2) reimbursement of litigation costs and expenses in the amount of $7,274.00; and (3) an incentive award of $10,000 for Plaintiff for her dedicated efforts to the Settlement Class. To date, there are no objections to any of the foregoing.

Dated May 11, 2026                    */s/ Aaron D. Radbil*
                                      Aaron D. Radbil
                                      Greenwald Davidson Radbil PLLC
                                      5550 Glades Road, Suite 500
                                      Boca Raton, Florida 33431
                                      Tel: (561) 826-5477
                                      aradbil@gdrlawfirm.com

                                      Anthony I. Paronich
                                      PARONICH LAW, P.C.
                                      350 Lincoln Street, Suite 2400
                                      Hingham, MA 02043
                                      Tel: (617) 485-0018
                                      Fax: (508) 318-8100
                                      anthony@paronichlaw.com

                                      *Counsel for Plaintiff and the proposed class*