# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TIFFANY LEWIS, *on behalf of herself and others similarly situated*, | ) | Case No.: 1:25-cv-00275-JPH-MJD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NEWFOLD DIGITAL, INC., REGISTER.COM, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT**

**Table of Contents**

Table of Contents ................................................................................................................. i

Table of Authorities ............................................................................................................ ii

Introduction ......................................................................................................................... 1

Summary of the Settlement .................................................................................................. 1

Claims Administration ........................................................................................................ 2

Argument ............................................................................................................................. 3

    I.     This Court's preliminary decision to certify the settlement class remains sound .............. 3

    II.    The settlement is fair, reasonable, and adequate under Rule 23(e). ................................. 4

        A.   The strengths of Ms. Lewis's case, as well as the risks inherent in continued litigation and securing class certification, favor final approval. ............................................. 4

        B.   The stage of the proceedings, and the experience and views of counsel, favor final approval. ......................................................................................................................... 5

        C.   The substantial cash relief afforded by the settlement favors final approval. ............... 6

        D.   The reaction of settlement class members, and the lack of objection from any government official, favor final approval. ............................................................................... 9

        E.   The remaining Rule 23(e)(2) factors support final approval. .................................... 10

    III.   Distribution of settlement class notice more than satisfied due process requirements. 11

Conclusion ......................................................................................................................... 12

## Table of Authorities

**Cases**

*Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*,
No. 3:16-CV-05486-JCS, 2018 WL 8949777 (N.D. Cal. Oct. 15, 2018)………..………..12

*Abboud v. Circle K Stores Inc.*,
No. 23-cv-01683-PHX-DWL, 2025 WL 2800052 (D. Ariz. Sept. 30, 2025)………..…….4

*Bayat v. Bank of the W.*,
No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015)………………….12

*Cornelius v. Deere Credit Servs., Inc.*,
No. 4:24-cv-25-RSB-CLR, 2025 WL 502089 (S.D. Ga. Feb. 13, 2025)………..…………11

*Cross v. Wells Fargo Bank, N.A.*,
No. 15-cv-1270, 2016 WL 5109533 (N.D. Ga. Sept. 13, 2016)…………….………..7

*Daugherty v. Credit Bureau Servs. Ass'n*,
No. 4:23-CV-01728, 2025 WL 1618354 (S.D. Tex. June 6, 2025)…………..…………8

*Donovan v. Estate of Fitzsimmons*,
778 F.2d 298 (7th Cir. 1985)……………………………………………….…………4

*Duke v. Bank of Am., N.A.*,
No. 12-4009, ECF Nos. 51, 59 (N.D. Cal. Feb. 19, 2014)…………….…………….…7

*Hall v. Bank of Am., N.A.*,
No. 12-22700, 2014 WL 7184039 (S.D. Fla. Dec. 17, 2014)…………….....…………….9

*Hamilton v. SunTrust Mortg., Inc.*,
No. 13-60749, 2014 WL 5419507 (S.D. Fla. Oct. 24, 2014)………………………….9

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)……………………..…………………………………6

*In re Mexico Money Transfer Litig.*,
164 F. Supp. 2d 1002 (N.D. Ill. 2000)……………………………………………9

*Jackson v. Discover Fin. Servs., Inc.*,
No. 1:21-cv-04529 (N.D. Ill. 2023)…………………………………………..7

*James v. JPMorgan Chase Bank, N.A.*,
No. 15-2424, 2016 WL 6908118 (M.D. Fla. Nov. 22, 2016)……………………7

*Johnson v. United Healthcare Servs., Inc.*,
No. 5:23-CV-00522-GAP-PRL, 2025 WL 1909337 (M.D. Fla. July 10, 2025)……...……8

*Keil v. Lopez*,
862 F.3d 685 (8th Cir. 2017)………………………………………………………..12

*Kolinek v. Walgreen Co.*,
311 F.R.D. 483 (N.D. Ill. 2015)……………………………..………………………12

*Lee v. Ocwen Loan Servicing, LLC*,
No. 14-60649, 2015 WL 5449813 (S.D. Fla. Sept. 14, 2015)……….…………………..9

*Lucas v. Synchrony Bank*,
No. 4:21-cv-70-PPS, ECF No. 47 (N.D. Ind. Nov. 18, 2022)……..…………………7

*Luster v. Wells Fargo Dealer Servs., Inc.*,
No. 15-1058, ECF No. 60 (N.D. Ga. Feb. 23, 2017)…………………………………7

*Markos v. Wells Fargo Bank, N.A.*,
No. 15-1156, 2016 WL 4708028 (N.D. Ga. Sept. 7, 2016)…………….………………7

*Markos v. Wells Fargo Bank, N.A.*,
No. 15-1156, 2017 WL 416425 (N.D. Ga. Jan. 30, 2017)…………………………….8

*Miles v. Medicredit, Inc.*,
No. 4:20-cv-1186-JAR, 2023 WL 1794559 (E.D. Mo. Feb. 7, 2023)……..……………7

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004)……………………………………….……………..10

*Patterson v. OptumRx, Inc.*,
No. 1:24-CV-00689-TWP-KMB, 2026 WL 881674 (S.D. Ind. Mar. 31, 2026)………..6, 7

*Picchi v. World Fin. Network Bank*,
No. 11-61797 (S.D. Fla. Jan. 30, 2015)………………………...…………………..7

*Prather v. Wells Fargo Bank, N.A.*,
No. 15-4231, 2017 WL 770132 (N.D. Ga. Feb. 24, 2017)………………………………7

*Revitch v. Citibank, N.A.*, No. 17-6907,
2019 WL 1903247 (N.D. Cal. Apr. 28, 2019)…………………..……………………4

*Schuchardt v. L. Off. of Rory W. Clark*,
314 F.R.D. 673 (N.D. Cal. 2016)………………………..…………………………9

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011)……………………………………………………5, 9

*Smith v. Apria Healthcare LLC*,
   No. 1:23-CV-01003-JPH-KMB, 2025 WL 3207145 (S.D. Ind. Nov. 17, 2025)…….……..5

*Swift v. Direct Buy, Inc.*,
   No. 2:11-CV-401-TLS, 2013 WL 5770633 (N.D. Ind. Oct. 24, 2013)……………………6

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
   463 F.3d 646 (7th Cir. 2006)………………………………...………………………………..4

*Vought v. Bank of Am., N.A.*,
   901 F. Supp. 2d 1071 (C.D. Ill. 2012)………………...……………………………………5

*Vu v. I Care Credit, LLC*,
   No. 17-cv-04609 RAO, 2022 WL 22871480 (C.D. Cal. Nov. 4, 2022)…………………..11

*Wesley v. Snap Fin. LLC*,
   No. 2:20-cv-00148-RJS-JCB, 2023 WL 1812670 (D. Utah Feb. 7, 2023)….…………..7

*Wilkins v. HSBC Bank Nev., N.A.*,
   No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015)…………….………………..7

*Williams v. Bluestem Brands, Inc.*,
   No. 17-1971, 2019 WL 1450090 (M.D. Fla. Apr. 2, 2019)…………….………………7

**Rules**

Fed. R. Civ. P. 23(e)……………………………………………………………………………….4

Fed. R. Civ. P. 23(e)(2)…………………………….………………………………………..10

**Statutes**

28 U.S.C. § 1715………………………………….………………………………………3

**Introduction**

On April 1, 2026, this Court preliminarily approved the parties' class action settlement. *See* ECF No. 70. The Court-appointed claims administrator—Kroll Settlement Administration, LLC ("Kroll")—then disseminated Court-approved class notice to potential settlement class members. Upon receiving notice of the settlement, settlement class members submitted, and continue to submit, approved claims for their *pro rata* share of the settlement fund. The deadline for settlement class members to submit claims—June 15, 2026—has not yet passed.

As it stands today, after deducting from the settlement fund the cost of notice to potential settlement class members and claims administration, the requested litigation costs and expenses subject to this Court's approval, the requested attorneys' fees subject to this Court's approval, and the requested incentive award to Tiffany Lewis subject to this Court's approval, each approved claimant will receive thousands of dollars. No settlement class member has excluded himself or herself from the settlement, and no settlement class member has objected to the settlement.

Considering all of this, Ms. Lewis respectfully requests that this Court finally approve the settlement, and enter a final judgment and order. Register.com, Inc. ("Register"),[1] does not oppose Ms. Lewis's request.

**Summary of the Settlement**

The parties' settlement resolves this matter on behalf of the following class:

All persons and entities throughout the United States (1) to whom Register.com, Inc. placed a call, (2) directed to a telephone number assigned to a cellular telephone service, (3) in connection with which Register.com, Inc. used an artificial or prerecorded voice, (4) from February 12, 2021 through November 24, 2025, and (5) after the cellular telephone number was permanently disconnected and made available for reassignment per the Federal Communications Commission's Reassigned Numbers Database.

---

[1]     On July 25, 2025, Register merged into Network Solutions, LLC. Network Solutions, LLC is the surviving entity.

1

To compensate settlement class members, Register, through Network Solutions LLC, created a non-reversionary, all cash settlement fund in the amount of $1,500,000. Paid from the settlement fund will be compensation to approved claimants, the cost of notice to potential settlement class members and claims administration, litigation costs and expenses subject to this Court's approval, attorneys' fees subject to this Court's approval, and an incentive award to Ms. Lewis subject to this Court's approval (together, "Fees and Costs"). *See* ECF No. 71.

Each settlement class member who submitted or submits an approved claim form will be entitled to a *pro rata* share of the non-reversionary settlement fund after deducting the Fees and Costs. As well, class members were and are able to exclude themselves from the settlement, and class members were and are able to object to the settlement.

### Claims Administration

Kroll delivered notice of the settlement to potential settlement class members. The resulting claims, lack of exclusions, and lack of objections—to date—demonstrate not only the effectiveness of the notice, but also settlement class members' satisfaction with the settlement.

*Direct Mail Notice*: Kroll caused postcard notices with detachable claim forms to be mailed to potential settlement class members that it identified, in part, by performing a reverse lookup process on telephone numbers Register provided to it. *See* Declaration of Tara Trapani, attached as Exhibit 1, ¶¶ 5, 9.

*Settlement Website*: Kroll established and maintains a dedicated settlement website— https://www.registertcpasettlement.com—which includes information pertinent to settlement class members as well as answers to frequently asked questions. See *id*., 6. Kroll made the settlement website live on May 1, 2026. *See id*.

2

*Toll-Free Hotline*: Kroll established and maintains a toll-free telephone number—(833) 477-7880—for settlement class members to obtain information about the settlement. *See id.*, ¶ 7. Kroll activated the toll-free telephone number on April 6, 2026. *See id.*

*Claims*: To date, 21 settlement class members have submitted approved claims. *See id.*, ¶ 15.[2]

*Objections*: To date, no settlement class member has objected to the settlement. *See id.*, ¶ 18.

*Exclusions*: To date, no settlement class member has excluded himself or herself from the settlement. *See id.*

*Class Action Fairness Act Notice*: Register, by way of Kroll, served the notice required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. To date, no government official, state or federal, has objected to the settlement. *See id.*, ¶ 18.

## Argument

### I.   This Court's preliminary decision to certify the settlement class remains sound.

This Court previously found "that Ms. Lewis's proposed class satisfies all of Rule 23(a)'s requirements," that "common questions of law and fact predominate," and that "a class resolution would be superior to other available methods of pursuing" Ms. Lewis's claims. ECF No. 70 at 12-13. This Court then "[c]ertifie[d] the class for settlement purposes under Rule 23(b)(3)." *Id.* at 12-13. Nothing has since changed to warrant a departure from this Court's reasoning.

---

[2]   Ms. Lewis will update this Court as to the number of settlement class members that ultimately submitted approved claims after the June 15, 2026 submission deadline passes.

**II.     The settlement is fair, reasonable, and adequate under Rule 23(e).**

The Seventh Circuit identified a number of factors used to assess whether a settlement is fundamentally fair, reasonable, and adequate: (1) the strength of the plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

Rule 23(e) also requires consideration of additional factors, including whether the class representative and class counsel have adequately represented the class, and whether the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e). Here, each relevant factor supports the conclusion that the settlement is fundamentally fair, adequate, and reasonable.

**A.  The strengths of Ms. Lewis's case, as well as the risks inherent in continued litigation and securing class certification, favor final approval.**

"[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985), *on reh'g sub nom. Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682 (7th Cir. 1986). Here, significant risks and costs laid ahead, as the parties vehemently disagreed about both the merits of the TCPA claims at issue, and the propriety of contested class certification.

Absent settlement, Register was certain to oppose the certification of any litigation class— as opposed to the settlement class now before this Court. And certification of a TCPA class over objection was not guaranteed. *See, e.g., Abboud v. Circle K Stores Inc.*, No. 23-cv-01683-PHX-DWL, 2025 WL 2800052 (D. Ariz. Sept. 30, 2025) (denying a motion for class certification in a TCPA matter); *Revitch v. Citibank, N.A.*, No. 17-6907, 2019 WL 1903247 (N.D. Cal. Apr. 28, 2019) (same). As well, Register would have opposed summary judgment for Ms. Lewis, and likely

4

sought summary judgment for itself. Potential discovery battles also loomed. Trial remained a possibility. And appeals would almost certainly have followed.

Additional litigation would therefore have been costly, time-consuming, and ultimately risky. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("The costs associated with discovery in complex class actions can be significant."). The complex issues encompassed by this action, together with the length of time and expense likely necessary to resolve this case by continued litigation, therefore weigh in favor of final approval. *See Vought v. Bank of Am., N.A.*, 901 F. Supp. 2d 1071, 1092 (C.D. Ill. 2012) ("Overall, the significant complexity of the issues this case presents, the increased length of time that would be necessary to resolve this case by continued litigation, and the corresponding dramatic increase in costs weigh in favor of approving the proposed settlement.").

**B. The stage of the proceedings, and the experience and views of counsel, favor final approval.**

During the pendency of this litigation the parties were able to assess the relative strengths and weaknesses of their respective positions, and to compare the benefits of settlement to further litigation. Among all else, Register moved to strike Ms. Lewis's class allegations, and the parties engaged in written discovery, exchanged document productions, and consulted experts. The parties ultimately negotiated the settlement with the help of an experienced class action mediator, after briefing for the mediator issues related to liability and class certification.

Pertinent, then, is that in granting final approval of a class settlement, this Court recently explained that extensive arm's-length negotiations, the involvement of a neutral mediator, contested litigation, and the risks inherent in continued litigation are all reliable indicators that a settlement reasonably reflects the merits of the case. *See Smith v. Apria Healthcare LLC*, No. 1:23-CV-01003-JPH-KMB, 2025 WL 3207145, at *6 (S.D. Ind. Nov. 17, 2025) (Hanlon, J.).

As well, both Ms. Lewis and her counsel firmly believe that the settlement is fair, reasonable, and adequate, and in the best interests of the settlement class. *See Patterson v. OptumRx, Inc.*, No. 1:24-CV-00689-TWP-KMB, 2026 WL 881674, at *3 (S.D. Ind. Mar. 31, 2026) ("GDR and Paronich Law are highly experienced in class action litigation, particularly in cases under the TCPA. And GDR and Paronich Law firmly believe that the settlement is fair, reasonable, adequate, and in the best interests of class members.").

### C. The substantial cash relief afforded by the settlement favors final approval.

In evaluating the fairness of the consideration offered in settlement, it is not the role of a court to second-guess the negotiated resolution of the parties. As the Ninth Circuit wrote:

> The court's intrusion upon what is otherwise a private, consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

And as the Northern District of Indiana explained in approving a class action settlement in *Swift v. Direct Buy, Inc.*:

> Although $20 (the expected pro rata award of the net settlement fund for each class member who filed a claim notice) is not significant in a vacuum, "a dollar today is worth a great deal more than a dollar ten years from now," *Reynolds*, 288 F.3d at 284, and a major benefit of the settlement is that class members will obtain these benefits much more quickly than had the parties not settled. The parties have informed the Court that this case, were it to proceed, would face numerous challenges such that, even if the case reached trial, the class members would not receive benefits for many years, if they received any at all. Faced with the prospect of receiving no recovery—both because DirectBuy might have succeeded in any aspect of what would have been a vigorous defense absent settlement and because DirectBuy had no unencumbered assets—Class Counsel is confident that payment of up to $20.00 per household is an excellent result in this litigation.

No. 2:11-CV-401-TLS, 2013 WL 5770633, at *5 (N.D. Ind. Oct. 24, 2013).

Here, Register created a $1,500,000 non-reversionary, all cash settlement fund to resolve this matter on behalf of an estimated 453 potentially affected cellular telephone numbers. This amounts to over $3,300 per potentially affected cellular telephone. So despite the obstacles Ms. Lewis faced, she and her counsel negotiated a settlement that far exceeds the vast majority of other approved TCPA class action settlements nationwide. *See, e.g.*, *Wesley v. Snap Fin. LLC*, No. 2:20-cv-00148-RJS-JCB, 2023 WL 1812670 (D. Utah Feb. 7, 2023) ($77.10 per potentially affected telephone number); *Jackson v. Discover Fin. Servs., Inc.*, No. 1:21-cv-04529 (N.D. Ill. 2023) (approximately $10.75 per potential settlement class member); *Miles v. Medicredit, Inc.*, No. 4:20-cv-1186-JAR, 2023 WL 1794559 (E.D. Mo. Feb. 7, 2023) ($6.42 per potentially affected telephone number); *Lucas v. Synchrony Bank*, No. 4:21-cv-70-PPS, ECF No. 47 (N.D. Ind. Nov. 18, 2022) (approximately $13 per potentially affected telephone number); *Williams v. Bluestem Brands, Inc.*, No. 17-1971, 2019 WL 1450090, at *2 (M.D. Fla. Apr. 2, 2019) ($7 per potential settlement class member); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) (less than $5 per person).[3]

And on a per-claimant basis, the settlement recovery is expected to exceed numerous, if not all, other recently approved TCPA class action settlements.[4] *See Patterson*, 2026 WL 881674, at *3 ("Despite obstacles, and with the assistance of a highly respected mediator, Plaintiff

---

[3]     *See also, e.g.*, *Prather v. Wells Fargo Bank, N.A.*, No. 15-4231, 2017 WL 770132 (N.D. Ga. Feb. 24, 2017) ($4.65 per potential settlement class member); *Luster v. Wells Fargo Dealer Servs., Inc.*, No. 15-1058, ECF No. 60 (N.D. Ga. Feb. 23, 2017) ($4.65); *James v. JPMorgan Chase Bank, N.A.*, No. 15-2424, 2016 WL 6908118 (M.D. Fla. Nov. 22, 2016) ($5.55); *Cross v. Wells Fargo Bank, N.A.*, No. 15-cv-1270, 2016 WL 5109533 (N.D. Ga. Sept. 13, 2016) ($4.75); *Markos v. Wells Fargo Bank, N.A.*, No. 15-1156, 2016 WL 4708028 (N.D. Ga. Sept. 7, 2016) ($4.95); *Picchi v. World Fin. Network Bank*, No. 11-61797 (S.D. Fla. Jan. 30, 2015) ($2.63); *Duke v. Bank of Am., N.A.*, No. 12-4009, ECF Nos. 51, 59 (N.D. Cal. Feb. 19, 2014) ($4.15).

[4]     Ms. Lewis will update this Court as to the per-claimant dollar figure after the June 15, 2026 deadline for settlement class members to submit claims.

negotiated a settlement that compares favorably to other TCPA class action settlements. To be sure, the per-claimant recovery is in line with and in some cases exceeds that of other recently approved TCPA class action settlements. The settlement provides class members with real monetary relief, despite the purely statutory damages at issue—damages that courts have deemed too small to incentivize individual actions. Therefore, because of the settlement, settlement class members will receive money they otherwise would have likely never pursued on their own. In the end, the settlement constitutes an objectively favorable result for settlement class members, and outweighs the mere possibility of future relief after protracted and expensive litigation.").

Further underscoring the excellent nature of the settlement is that the court in *Markos v. Wells Fargo Bank, N.A.* characterized a $24 per-TCPA claimant recovery—a small fraction of the expected thousands-of-dollars per-claimant recovery here—as "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter." No. 15-1156, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017); *see also Johnson v. United Healthcare Servs., Inc.*, No. 5:23-CV-00522-GAP-PRL, 2025 WL 1909337, at *3 (M.D. Fla. July 10, 2025) ("The per-claimant recovery of over $146 provides class members with monetary relief that exceeds other approved TCPA class action settlements."); *Daugherty v. Credit Bureau Servs. Ass'n*, No. 4:23-CV-01728, 2025 WL 1618354, at *3 (S.D. Tex. June 6, 2025) ("And notwithstanding, the settlement exceeds on a per-claimant recovery basis other recently approved TCPA class action settlements. Indeed, after deducting the cost of notice to potential settlement class members and claims administration, litigation costs and expenses, reasonable attorneys' fees, and an incentive award to Plaintiff, participating settlement class members who submitted approved claims will receive approximately $226 each. This far surpasses comparable figures in other approved TCPA class settlements."). The same is true here.

In the end, the settlement constitutes an objectively excellent result for settlement class members that unquestionably outweighs the possibility of future relief after protracted and expensive litigation.

**D. The reaction of settlement class members, and the lack of objection from any government official, favor final approval.**

That no settlement class member to date has excluded himself or herself from the settlement, that no settlement class member to date has objected to the settlement, and that no government official to date has objected to the settlement, strongly supports final approval. *See Schulte*, 805 F. Supp. 2d at 586 (finding that 342 exclusions and 15 objections, given the large number of claims, weighed in favor of final approval); *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000) (holding that the fact that more than "99.9% of class members have neither opted out nor filed objections * * * is strong circumstantial evidence in favor of the settlement"); *see also Schuchardt v. L. Off. of Rory W. Clark*, 314 F.R.D. 673, 686 (N.D. Cal. 2016) (the "court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it"); *Lee v. Ocwen Loan Servicing, LLC*, No. 14-60649, 2015 WL 5449813, at *5 (S.D. Fla. Sept. 14, 2015) ("Obviously, a low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable."); *Hall v. Bank of Am., N.A.*, No. 12-22700, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014) (where objections from settlement class members "equates to less than .0016% of the class" and "not a single state attorney general or regulator submitted an objection," "such facts are overwhelming support for the settlement and evidence of its reasonableness and fairness"); *Hamilton v. SunTrust Mortg., Inc.*, No. 13-60749, 2014 WL 5419507, at *4 (S.D. Fla. Oct. 24, 2014) (where "not a single state attorney general or regulator submitted an objection," combined with few objections to class

9

settlement, "such facts are overwhelming support for the settlement"); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

### E. The remaining Rule 23(e)(2) factors support final approval.

Finally, consideration of the factors set forth in Rule 23(e) likewise supports final approval. Rule 23(e)(2) requires courts to consider whether (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3);[5] and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

Most of these factors are subsumed within the above discussion of the *Synfuel Techs.* factors. Beyond that, the requested attorneys' fees are in line with Seventh Circuit precedent, and are further justified by the substantial relief afforded by the settlement. *See* ECF No. 71 at 9-21.

Moreover, the settlement treats settlement class members equitably relative to each other. All settlement class members have the same legal claims, and each approved claimant will thus receive an equal portion of the settlement fund after deducting the Fees and Costs. Additionally, the release affects each settlement class member in the same way, as everyone will release the

---

[5]    The only operative agreement between the parties is the settlement agreement. ECF No. 69-1.

same claims. As such, this factor supports final approval. *See Cornelius v. Deere Credit Servs., Inc.*, No. 4:24-cv-25-RSB-CLR, 2025 WL 502089, at *2 (S.D. Ga. Feb. 13, 2025) ("In addition, because each participating Settlement Class Member will receive the same recovery, the settlement treats class members equitably relative to one another."); *Vu v. I Care Credit, LLC*, No. 17-cv-04609 RAO, 2022 WL 22871480, at *11 (C.D. Cal. Nov. 4, 2022) ("Here, each member had to submit the same claim form to receive a distribution from the settlement fund and each member who submitted a claim form will receive an equal distribution. As the class members' TCPA claims are based on the same fax advertisements, equal distributions are fair.").

III.    **Distribution of settlement class notice more than satisfied due process requirements.**

This Court previously found that Ms. Lewis's proposed settlement class notice plan "is reasonable and the best practicable notice under the circumstances; satisfies Rule 23(h) of the Federal Rules of Civil Procedure; is reasonably calculated to apprise Class Members of the pendency of the Action, the terms of the Settlement Agreement, their right to object to and opt-out of the Settlement Agreement, the effect of the Settlement Agreement (including the releases to be provided thereunder), Class Counsel's request for attorneys' fees, reimbursement of litigation expenses and settlement administration expenses, and the requested service awards for Ms. Lewis; constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and meets the requirements of due process, the Federal Rules of Civil Procedure, and the United States Constitution." ECF No. 70 at 24. It then directed Kroll to execute the proposed notice plan. *See id*. And following this Court's instruction, Kroll did just that. *See generally* Exhibit 1.

As a result, to date 21 settlement class members have submitted approved claims. This amounts to a claims rate of about 3.15% percent of directly noticed settlement potential class members—and the claims deadline has not even passed yet—which strongly supports final

approval of the settlement. *See, e.g.*, *Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*, No. 3:16-CV-05486-JCS, 2018 WL 8949777, at *4 (N.D. Cal. Oct. 15, 2018) (collecting cases approving settlements with claims rates between 2% and 4%); *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (claims rate of 1.9% for monetary portion of settlement); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (2.5% claims rate); *accord Keil v. Lopez*, 862 F.3d 685, 696-97 (8th Cir. 2017) ("a claim rate as low as 3 percent is hardly unusual in consumer class actions and does not suggest unfairness").

### Conclusion

Ms. Lewis respectfully requests that this Court finally approve the settlement, and enter a final judgment and order in the form agreed to by the parties and submitted concurrently.

Dated June 8, 2026

*/s/ Aaron D. Radbil*
Aaron D. Radbil
Greenwald Davidson Radbil PLLC
5550 Glades Road, Suite 500
Boca Raton, Florida 33431
Tel: (561) 826-5477
aradbil@gdrlawfirm.com

Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com

*Class Counsel*