UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TIFFANY LEWIS individually and on behalf of all others similarly situated, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 1:25-cv-00275-JPH-MJD |
| REGISTER.COM, INC., *et al.*, | ) | |
| Defendants. | ) | |

**FINAL CLASS SETTLEMENT APPROVAL ORDER**

Plaintiff Tiffany Lewis brought this suit on behalf of herself and those similarly situated, alleging that Defendant Register.com, Inc.,[1] violated the Telephone Consumer Protection Act ("TCPA"), 42 U.S.C. § 227, by placing artificial or prerecorded non-emergency phone calls without prior consent. Ms. Lewis has asked the Court for final approval of the Class Action Settlement Agreement and Release ("Settlement Agreement"), dkt. 72, and to award attorneys' fees, litigation and notice expenses, and a Service Award, dkt. 71. The Court has considered the parties' arguments presented at the July 7, 2026, Fairness Hearing, and filings in support of approval, dkts. 72, 76, 77. For the reasons below, the Court **GRANTS** the Unopposed Motion for Final Approval, dkt. [72], and the Motion for Attorneys' Fees, dkt. [71], and **APPROVES** the Settlement Agreement.

[1] Register.com, Inc., merged with Network Solutions, LLC; Network Solutions, LLC, is the only surviving entity. Dkt. 69-1 at 1.

## I.
## Facts and Background

Between April 10, 2024, and May 13, 2025, Ms. Lewis received twenty-five unsolicited, prerecorded telephone calls from Register. Dkt. 69 at 3. Ms. Lewis is not a Register customer, and she never gave Register her telephone number. *Id.* Instead, these automated calls were meant for one of Register's customers who previously used Ms. Lewis's telephone number. *Id.* at 3–4.

On April 5, 2025, Ms. Lewis filed her amended class action complaint, alleging that Register violated the TCPA by using an artificial or prerecorded voice in connection with calls it placed to Plaintiff's cellular telephone number and the cellular telephone numbers of the members of the class, without consent, between February 12, 2021, and November 24, 2025. Dkt. 12 at 1; dkt. 69-1 at 3 (Settlement Agreement ¶ 2.16). Ms. Lewis further contends that Register called to non-consenting parties by using incorrect telephone numbers or telephone numbers that had been permanently disconnected and reassigned through the Federal Communication Commission's Reassigned Numbers Database. *Id.*

Register moved to dismiss Plaintiff's claims. Dkt. 17. The Court denied that motion as moot once the parties reached a settlement. Dkt. 66.

The Court preliminarily approved the Settlement Agreement, certified the settlement class action, and approved notice and the procedure for notice to potential class members. Dkt. 70 (Preliminary Approval Order).[2] The Court

[2] The Court adopts and incorporates by reference the analysis and findings set forth in the Preliminary Approval Order, dkt. 70.

also preliminarily approved Ms. Lewis as the Class Representative. *Id.* at 23. The preliminary certified class includes:

> All persons and entities throughout the United States (1) to whom Register.com, Inc. placed a call, (2) directed to a telephone number assigned to a cellular telephone service, (3) in connection with which Register.com, Inc. used an artificial or prerecorded voice, (4) from February 12, 2021 through November 24, 2025, and (5) after the cellular telephone number was permanently disconnected and made available for reassignment per the Federal Communication Commission's ("FCC") Reassigned Numbers Database ("RND").

*Id.* at 8–9. Last, the Court preliminarily approved Class Counsel. *Id.* at 23.

To settle the claims in this case, Register agreed to pay $1,500,000 into a non-reversionary common fund. Dkt. 69-1 at 7 (Settlement Agreement ¶ 11.1). Ms. Lewis proposes deducting the following from that amount: a $10,000 incentive award to Ms. Lewis; $500,000 in attorneys' fees to Class Counsel; $65,472 for the quoted costs of notice and administration; and $7,274 in litigation costs to Class Counsel. Dkt. 71 at 8; dkt. 76 at 2.

Pursuant to the Settlement Agreement, Class Members may submit a claim to receive a pro rata share of the common fund. Dkt. 69-1 at 8–9. To receive this reimbursement, Class Members must submit a Claim Form that includes a name, address, and telephone number. *Id.* at 8.

At the fairness hearing on July 7, 2026, the parties confirmed that twenty-one Class Members submitted claims (a 3.15% claims rate), no Class Members opted out, and there were no objections. Dkt. 72-1 at 5 (Trapani Decl. ¶ 15); dkt. 72 at 16–17. The Court ordered Plaintiff to supplement the motion for fees with information on the reasonableness of the requested notice

and administration costs. Dkt. 75. The Court also ordered the parties to file a revised proposed approval order. *Id.*

## II.
## Legal Standard

Class actions were designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 155 (1987) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979)); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 832 (1999) ("In drafting Rule 23(b), the Advisory Committee sought to catalogue in functional terms those recurrent life patterns which call for mass litigation through representative parties.").

Any settlement that results in the dismissal of a class action requires court approval. *See* Fed. R. Civ. P. 23(e); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002). After preliminary review and a hearing, a "district court may approve a settlement of a class action if it concludes that it is 'fair, reasonable, and adequate.'" *Kaufman v. Am. Express Travel*, 877 F.3d 276, 283 (7th Cir. 2017) (quoting Fed. R. Civ. P. 23(e)(2)). "[D]istrict courts should act as the 'fiduciary of the class,' subject to the high duty of care that the law requires of fiduciaries." *Id.*

## III.
## Analysis

### A. Class Certification

"Rule 23 gives the district courts 'broad discretion to determine whether certification of a class-action lawsuit is appropriate,'" *Arreola v. Godinez*, 546

F.3d 788, 794 (7th Cir. 2009), and "provides a one-size-fits-all formula for deciding the class-action question," *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399 (2010). "A class 'may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied,' and 'actual, not presumed, conformance with Rule 23(a) remains . . . indispensable.'" *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003); *see also Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 558 (7th Cir. 2003).

A plaintiff seeking class certification must satisfy each requirement of Rule 23(a)—numerosity, commonality, typicality and adequacy of representation—and any one subsection of Rule 23(b). *Harper v. Sheriff of Cook Cty.*, 581 F.3d 511, 513 (7th Cir. 2009); *Arreola*, 546 F.3d at 794. In addition, the class must meet two implied prerequisites of Rule 23: (1) that the class definition be sufficiently precise to enable a court to ascertain the identity of class members by reference to objective criteria; and (2) that the named representative be a member of the proposed class. *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977).

The fact that the parties have reached a settlement is relevant to the class-certification analysis. *See Smith v. Sprint Comms. Co., L.P.*, 387 F.3d 612, 614 (7th Cir. 2004); *Amchem Prods. v. Windsor*, 521 U.S. 591, 618–20 (1997). "'Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.'" *Smith*, 387

F.3d at 614. A court may not, however, "abandon the Federal Rules merely because a settlement seems fair, or even if the settlement is a 'good deal.' In some ways, the Rule 23 requirements may be even more important for settlement classes." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). "This is so because certification of a mandatory settlement class, however provisional technically, effectively concludes the proceeding save for the final fairness hearing." *Ortiz*, 527 U.S. at 849.

The Court previously analyzed these factors and gave preliminary approval to class certification. Dkt. 70. The same reasons that supported the Court's preliminary approval of class certification also support final certification of the class. *Id.* at 7–13.

**B. Appointment of Class Counsel**

After a court certifies a class pursuant to Rule 23, the court is required to appoint class counsel to represent the class members. *See* Fed. R. Civ. P. 23(g)(1). In appointing class counsel, the court must consider:

(i) the work counsel has done in identifying or investigating potential claims in the action;
(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
(iii) counsel's knowledge of the applicable law; and
(iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

The Court previously considered these factors and designated Anthony Paronich of Paronich Law, P.C., and Aaron Radbil of Greenwald Davidson Radbil, PLLC, as Class Counsel. Dkt. 70 at 13. There are no new facts that weigh against this decision.

**C. Notice**

For settlement classes, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The Preliminary Approval Order approved the content of the notice and proposed manner of notice. Dkt. 70 at 20–21. The Court now grants final approval of the notice, which adequately informed the Class members of the terms of the Settlement Agreement, the process available to obtain monetary relief, their right to request exclusion from the Class, and their opportunity to file written objections and appear to be heard at the Final Approval hearing. Dkt. 72-1 at 2–4.

The Settlement Administrator, Kroll Settlement Administration LLC, used direct mailing of notice to putative class members and established a phone number, post office box, and website to communicate and receive Class Member inquiries, which was included in the Class Notice. *Id.* at 2.

The parties have since followed the manner of notice set forth in the Settlement Agreement and the Preliminary Approval Order. *Id.* at 2–4. Kroll sent Mail Notice to 666 Class Members for whom a valid mailing address was available. *Id.* at 3. 88 Mailed Notices were returned by USPS. *Id.* at 4. Of those, Kroll found updated addresses for 46 Class Members, and 42 Notices were determined undeliverable because no updated address was available. *Id.* Kroll also initiated 654 outbound phone calls to provide reminders to the Class Members who had not filed a claim form as of June 1, 2026. *Id.* Of these, Kroll made direct contact in 29 calls and left voicemail messages in 319 calls.

*Id.* In sum, 624 individuals received direct notice, which equates to approximately 93.7% of the class. *Id.* at 4. The Court therefore approves manner of notice to class members under the requirements of Fed. R. Civ. P. Rule 23(e)(1)(B).

**D. Motion for Attorneys' Fees, Expenses, and Service Awards**

**i. Attorneys' fees**

Under Federal Rule of Civil Procedure 23(h), "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." "In assessing the reasonableness of an attorney fee award for a class action settlement, district courts should do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 832–33 (7th Cir. 2018). When considering reasonableness, district courts may consider the award either as a percentage of the fund or through the lodestar method. *Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014).

Here, Class Counsel applies the percentage of fund method and requests an attorneys' fee award of $500,000.00, which is 35.27%[3] of the net common fund. Dkt. 71 at 8.

---

[3] The "ratio that is relevant to assessing the reasonableness of the attorneys' fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received." *Redman v. RadioShack*, 768 F.3d 622, 630 (7th Cir. 2014). The value of the settlement is the amount minus the fee requested, the administration and notice costs, litigation costs, and approved service awards. *Id.* at 630. Here, to

Requests for around one-third of the settlement are within the normal rate of compensation for TCPA violation class action settlements in the Seventh Circuit. *See, e.g.*, *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("The typical contingent fee is between 33 and 40 percent."); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 502–03 (N.D. Ill. 2015) (granting 36% fee in TCPA case). The fee agreement between Ms. Lewis and Class Counsel for a contingency award further supports approving the requested fees. First, the agreement provided that Class Counsel would seek no more than "35% of any common fund established"; Counsel's request amounts to 33% of the gross common fund, so the requested fee is below the contracted fee. Dkt. 71-1 at 11 (Radbil Decl.); *In re Synthroid Marketing Litg.*, 264 F.3d 712, 721 (7th Cir. 2001) (holding that fee contracts are evidence of market rate for legal services). And second, the fee-agreement shows that Class Counsel undertook a significant risk of non-payment by accepting this case on a contingency basis. *See In re Stericycle Sec. Litig.*, 35 F.4th 555, 563 (7th Cir. 2022) (explaining that an "important factor" when evaluating fee awards "is the risk counsel take that they will be paid nothing at all").

The Court therefore approves as reasonable an attorneys' fee award of $500,000.00. Given that the attorneys' fees awarded to Class Counsel fit

---

calculate the value that will go to Class Members, take the total class value ($1,500,000.00) minus the requested fees ($500,000.00), minus litigation expenses ($7,274.00) minus the quoted costs of notice and administration ($65,472.00) minus the requested service award ($10,000.00), which equals $917,254.00 To calculate the percentile of the attorneys' fees, take the requested amount of fees ($500,000) over the total class value plus requested fee ($917,254.00 + $500,000), which equals 35.27%.

comfortably within the parameters of reasonableness under the percentage-method formula, the Court does not conduct a lodestar cross-check analysis. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011); *Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998) ("[W]e have never ordered the district judge to ensure that the lodestar result mimics that of the percentage approach.").

**ii. Litigation costs and expenses**

Class Counsel requests $7,274.00 for litigation costs such as filing, mediation, and server fees and travel and lodging expenses. Dkt. 71 at 22–23. Class Counsel may receive reimbursements for expenses and costs that the private market would permit. *Synthroid Marketing Litg.*, 264 F.3d at 722. The fees requested here are reasonable, sufficiently detailed, and are similar to other expenses recovered in TCPA suits. Dkt. 71-1 at 12–13 (Radbil decl.); *Leung v. XPO Logs., Inc.*, 326 F.R.D. 185, 199 (N.D. Ill. 2018) (approving $52,458.90 for litigation expenses in TCPA suit). The Court approves the requested $7,274.00 in litigation costs and expenses as reasonable.

**iii. Settlement Administrator Costs**

Ms. Lewis also requests an estimated $65,472.00 in costs of notice and administration. Dkt. 76 at 2. Neither Ms. Lewis's motion nor Ms. Trapani's original declaration itemized these costs, *see id.*; dkt. 72-1, so the Court ordered counsel to file a supplemental brief explaining the reasonableness of these costs, dkt. 75. Ms. Lewis filed a supplemental declaration from Ms. Trapani, which explained that Kroll has billed $39,309.36 for services and fees

as of July 14, 2026, and anticipates billing an additional $26,162.64 for a total of $65,472.00. Dkt. 76 at 2. Ms. Trapani itemized the costs:

| **Billed to Date** | |
|---|---|
| Project Setup: Develop Class List | $ 1,500.00 |
| Project Setup: Data Searches (x2) | $ 2,010.00 |
| Notification: CAFA Notice | $ 2,500.00 |
| Notification: Notice Documents Setup | $ 1,365.00 |
| Notification: Printing and Mailing Notice | $ 1,448.70 |
| Notification: Processing Undeliverable & Requests & Correspondence | $ 128.75 |
| Website: Creation & Maintenance | $ 6,475.00 |
| Contact Center: Training & Live Support | $ 2,120.70 |
| Forms Processing: Opt-Out / Objection & Claims Forms & Notifications | $ 36.45 |
| Mail Handling & Scanning | $ 258.55 |
| Data / Image Storage | $ 350.00 |
| Staff Hours: Executive Management & Senior Director | $ 1,435.00 |
| Staff Hours: Project Management | $ 17,385.00 |
| Staff Hours: Staff | $ 748.00 |
| Staff Hours: Data Entry & Technical Consulting | $ 702.00 |
| Expenses: Postage | $ 846.21 |
| **TOTAL** | $ 39,309.36 |

*Id.* And she explains that the future costs reflect the anticipated time and cost of placing reminder calls, processing claims, distributing settlement payments, and preparing tax reporting documents. *Id.*

The notice and administration costs requested here are similar to those requested and granted in other cases with similar class sizes, and otherwise appear reasonable. *See In re FedEx Ground Package Sys., Inc., Emp. Prac. Litg.*, 251 F. Supp. 3d 1225, 1247 (N.D. Ind. 2017) (approving notice costs of up to $75,000 for notification to less than 1,000 class members). The Court approves the requested $65,472.00 in notice and administration costs as reasonable.

**iv. Service Award**

Class Counsel requests a Service Award of $10,000 to the named plaintiff, Ms. Lewis. Dkt. 71 at 8. Because "a named plaintiff is an essential

ingredient of any class action . . . an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Camp Drug Store, Inc.*, 897 F.3d at 834. To determine the appropriateness of an incentive award a "court evaluates the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.*

Here, Class Counsel states that Ms. Lewis was highly involved in this litigation; she "reviewed and approved filings, participated in strategy conferences with Class Counsel, and participated in mediation-related discussions." Dkt. 71 at 23. Beyond this effort, she adequately protected the interests of the class and helped obtain a favorable settlement for Class Members. *See id.* A $10,000 service award to Ms. Lewis is reasonable. *See Chambers v. Together Credit Union,* No. 19-CV-00842-SPM, 2021 WL 1948452, at *3 (S.D. Ill. May 14, 2021) ("In the Seventh Circuit, . . . class representative service awards of $10,000 to $25,000 or more are not uncommon.").

**E. Final Settlement Approval**

The Court may approve the settlement only after finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Rule 23(e)(2) requires the Court to consider whether (1) the class representatives and class counsel have adequately represented the class, (2) the proposal was negotiated at arm's length, (3) the relief provided by the settlement is adequate, and (4) the proposal treats class members equitably relative to each other. Additionally,

the Seventh Circuit has also identified the following factors as considerations under Rule 23(e)(2): "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014).

The Court previously considered these factors in connection with granting preliminary approval to the Settlement Agreement. Dkt. 70. At the fairness hearing, the Court heard additional arguments from counsel on "the strength of the case for plaintiffs on merits, balanced against the extent of the settlement offer." *Wong*, 773 F.3d at 859. This is "[t]he most important factor relevant to the fairness of a class action settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

In balancing the strength of the plaintiffs' case against the amount offered in a proposed settlement, district courts "should begin by quantifying the net expected value of continued litigation to the class . . . [t]o do so, the court should 'estimate the range of possible outcomes and ascribe a probability to each point on the range.'" *Synfuel*, 463 F.3d at 653 (citing *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002). However, more recently, the Circuit has clarified that "the *Synfuel/Reynolds* evaluation of potential outcomes need not always be quantified, particularly where there are

other reliable indicators that the settlement reasonably reflects the merits of the case." *Kaufman,* 877 F.3d at 285. Other reliable indicators include extensive arm's-length negotiations with a third-party mediator, and the parties contentiously litigating a motion to dismiss. *Wong*, 773 F.3d at 864.

Here, considering the parties' filings and arguments at the fairness hearing, the Court is satisfied that this case bears these reliable indicators of fairness, reasonableness, and adequacy. Specifically, this Settlement Agreement was reached after extensive negotiations "with the help of an experienced class action mediator." Dkt. 72 at 10. The parties also contentiously litigated several motions. *See* dkt. 17 (Motion to Dismiss); dkt. 39 (Motion to Strike Class Action Allegations); dkt. 40 (Motion to Bifurcate Discovery); dkt. 42 (Motion to Compel Production). Plaintiffs' counsel enumerated at the fairness hearing and in their supporting briefs that they undertook a significant risk in bringing the litigation, including the risk of little to no recovery. Dkt. 72 at 11–12. Importantly, no Class Member objected to the settlement. *Id.* at 14.

So, considering the risks and the real benefits provided to the Class Members—a pro rata share of over $3,300 per potentially affected telephone number—the strength of the Plaintiff's case compared to the Defendant's proposed relief weighs in favor of fairness, reasonableness, and adequacy of the Settlement Agreement. Dkt. 71 at 19.

For these reasons, and the reasons that supported the Court's preliminary approval of class certification, dkt. 70 at 8–13, the Settlement is fair, reasonable, and adequate.

## IV.
## Conclusion

The Court **GRANTS FINAL APPROVAL** of the Class Action Settlement and Release, dkt. [72], as fair, adequate, and reasonable under Federal Rule of Civil Procedures 23(e)(2). Ms. Lewis's Motion for Attorneys' Fees, Litigation Costs, and Service Award, dkt. [71], is **GRANTED**. The Settlement Administrator shall distribute the Settlement Benefits pursuant to the terms of the Settlement Agreement.

The Court further finds, approves, and orders as follows:

1. The Class is certified pursuant to Federal Rule of Civil Procedure 23(b)(3) for settlement purposes.
2. The appointments of (a) Tiffany Lewis as Class Representative; (b) Anthony Paronich of Paronich Law, P.C., and Aaron Radbil of Greenwald Davidson Radbil, PLLC, as Class Counsel; and (c) Kroll Settlement Administration, LLC as Settlement Administrator.
3. A $10,000 service award to the Class Representative; $500,000 in attorneys' fees; $7,274 in litigation costs and expenses to Class Counsel; and $65,472 in notice and administration costs, to be paid according to the terms of the Settlement Agreement.
4. All Class Members are bound by the terms of the Settlement Agreement and fully release and discharge their claims against Defendant.

5. The Court expressly retains jurisdiction over the parties and the Settlement Agreement for the purpose of enforcing the Agreement. *See Shapo v. Engle*, 463 F.3d 641, 643 (7th Cir. 2006); *Alexander v. Chicago Park Dist.*, 927 F.2d 1014, 1023 ("In a class action, the district court has a duty to class members to see that any settlement it approves is completed.").
6. Within six months of this Order, the parties shall file a status update regarding the Settlement's administration and whether final judgment, dismissing the action with prejudice, shall enter.
7. This Final Approval Order, and all statements, documents, or proceedings relating to the Settlement Agreement shall not be construed as an admission by Defendant of any liability or wrongdoing in this or in any other proceeding.

**SO ORDERED.**

Date: 8/24/2026

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel